1  Elizabeth J. Cabraser (State Bar No. 083151)
   ecabraser@lchb.com
2  Kevin R. Budner (State Bar No. 287271)
   kbudner@lchb.com
3  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000
5  Facsimile:   (415) 956-1008

6  Jonathan D. Selbin (State Bar No. 170222)
   jselbin@lchb.com
7  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   250 Hudson Street, 8th Floor
8  New York, NY  10013
   Telephone:  (212) 355-9500
9  Facsimile:   (212) 355-9592

10  Robert Klonoff (Pro Hac Vice Anticipated)
    klonoff@usa.net
11  ROBERT H. KLONOFF, LLC
    2425 SW 76th Ave.
12  Portland, OR 97225
    Telephone:  (503) 291-1570

13
    *Attorneys for Plaintiffs, individually and on behalf of all*
14  *others similarly situated*

15
                    UNITED STATES DISTRICT COURT
16
                  NORTHERN DISTRICT OF CALIFORNIA
17
                      SAN FRANCISCO DIVISION
18

19
    KATE MCLELLAN, TERESA BLACK, and          Case No.  16-cv-36
20  DAVID URBAN, Individually and on Behalf
    of All Others Similarly Situated,          CLASS ACTION
21
                        Plaintiffs,            **CLASS ACTION COMPLAINT**
22
    v.                                         **DEMAND FOR JURY TRIAL**
23
    FITBIT, INC.,
24
                        Defendant.
25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

JURSIDICTION AND VENUE ......................................................................................... 3

INTRADISTRICT ASSIGNMENT .................................................................................. 3

PARTIES ............................................................................................................................ 3

COMMON FACTUAL ALLEGATIONS ........................................................................ 6

    I.    Fitbit Falsely Claims the PurePulse Trackers Consistently Record Accurate
        Heart Rate .................................................................................................. 6

    II.   The PurePulse Trackers Fail to Consistently Record Accurate Heart Rate As
        Promised and Warranted. ....................................................................... 11

    III.  Fitbit Attempted to Keep Class Members Out of Court Through An
        Unconscionable Post-Purchase Agreement, Which Class Members Were
        Required to Accept in Order to Render Operational the PurePulse Trackers They
        Already Purchased ................................................................................... 13

CLASS ACTION ALLEGATIONS .................................................................................. 15

CHOICE OF LAW ALLEGATIONS ............................................................................... 19

CLAIMS FOR RELIEF ..................................................................................................... 20

PRAYER FOR RELIEF ..................................................................................................... 38

DEMAND FOR JURY TRIAL ......................................................................................... 39

**INTRODUCTION**

1.     In widespread national advertising—including, for example, commercials run repeatedly during Major League Baseball's nationally-televised 2015 World Series[1]—defendant Fitbit, Inc. ("Fitbit") touted the purported ability of its wrist-based "activity trackers" to accurately record a wearer's heart rate during intense physical activity.  To perform this function, Fitbit equipped its "Charge HR"[2] and "Surge" fitness watches (the "PurePulse Trackers") with an LED-based technology called "PurePulse™".

2.     Fitbit's representation is repeated in and echoed throughout its advertising of the PurePulse Trackers, which employs such descriptive slogans as "Every Beat Counts" and "Know Your Heart."  But the representation is false.  Far from "counting every beat," the PurePulse Trackers *do not* and *cannot* consistently and accurately record wearers' heart rates during the intense physical activity for which Fitbit expressly markets them.

3.     Plaintiffs and many consumers like them have experienced—and testing confirms—that the PurePulse Trackers consistently mis-record heart rates by a very significant margin, particularly during exercise (described herein as the "Heart Rate Defect").

4.     This failure did not keep Fitbit from heavily promoting the heart rate monitoring feature of the PurePulse Trackers and from profiting handsomely from it.  In so doing, Fitbit defrauded the public and cheated its customers, including Plaintiffs.

5.     The heart rate monitoring function of the PurePulse Trackers is a material—indeed, in some cases, vital—feature of the product.  Not only are accurate heart readings important for all of those engaging in fitness, they are critical to the health and well-being of those Class members whose medical conditions require them to maintain (or not to exceed) a certain heart rate.

6.     On behalf of all those who purchased the Fitbit PurePulse Trackers, Plaintiffs Kate McLellan, Teresa Black, and David Urban bring this action on behalf of themselves and all

---

[1] Available at https://www.youtube.com/watch?v=vpdHMyvkJxw (last viewed December 1, 2015).

[2] According to reports, in March 2016, Fitbit will be replacing the Charge HR with the "Blaze" model, which employs the same PurePulse technology.

-1-

1   those similarly situated to seek redress through this proposed class action in the form of

2   injunctive relief, damages, restitution, and all other relief this Court deems equitable.

3          7.      While Fitbit purports to bind all purchasers of its products to an arbitration

4   agreement and class action ban, its method of doing so fails as a matter of law and, in itself,

5   constitutes an unfair and deceptive trade practice.

6          8.      Fitbit sells the PurePulse Trackers through its own website and through many

7   third party online and brick and mortar stores.  While Fitbit's own website requires purchasers to

8   agree to be bound by the arbitration clause and class action ban, third party websites and brick

9   and mortar stores do not require any such agreement in advance or at the time of purchase, or

10  give *any* indication that such agreement will later be required.

11         9.      Instead, Fitbit includes *inside* the box an instruction that requires purchasers

12  (post-purchase) to visit its website and register the PurePulse Tracker online.  Such registration

13  is required for the PurePulse Trackers to work.  In an affidavit submitted in other litigation,

14  Fitbit admitted that "[a] Fitbit user cannot use their [PurePulse Trackers] as intended until the

15  user has set up an [online] account.  In fact, the Charge HR cannot even be used as a watch until

16  the device is first paired to a Fitbit account, which requires the user to agree to the Terms of

17  Service."  (*Brickman v. Fitbit, Inc.*, No. 3:15-cv-2077, Doc. 41 at ¶4 (N.D. Cal. Sept. 30, 2015)).

18         10.     Remarkably, Fitbit purports to bind anyone who even visits its website to its

19  arbitration agreement, whether they purchase or register any product at all.[3]  Indeed, if the reader

20  of this Complaint visits the link provided in the footnote below, she or he is now deemed by

21  Fitbit to have agreed to arbitration and a class action ban.

22         11.     Fitbit's attempt to bind customers who bought PurePulse Trackers through third

23  party online and brick and mortar stores to an arbitration clause and class action ban post-

24  purchase when they register the product—which is required to make the product function as

---

25  [3] The Terms of Service provide: "You must accept these Terms to create a Fitbit account and to
    use the Fitbit Service. If you do not have an account, you accept these Terms by
26  visiting WWW.FITBIT.COM or using any part of the Fitbit Service. IF YOU DO NOT ACCEPT
    THESE TERMS, DO NOT CREATE AN ACCOUNT, VISIT WWW.FITBIT.COM OR USE
27  THE FITBIT SERVICE." Available at https://www.fitbit.com/au/terms (last visited December
    21, 2015). Of course, by the time one reads the Terms of Service, he or she has already visited
28  Fitbit.com and, per Fitbit, already surrendered his or her Constitutional right to a jury trial.

1  intended—is unconscionable, invalid, and unenforceable.  It is also an unfair and deceptive trade

2  practice in its own right.

3  ## JURSIDICTION AND VENUE

4  12.    Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28

5  U.S.C. § 1332(d), because many members of the proposed Plaintiff Class, including some named

6  plaintiffs, are citizens of states different from Fitbit's home states, and the aggregate amount in

7  controversy exceeds $5,000,000.00, exclusive of interest and costs.

8  13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (1) the only

9  defendant in this action resides in this District and (2) a substantial part of the events and

10  omissions giving rise to Plaintiffs' claims occurred in this District—specifically, Fitbit designed

11  and marketed its product from its headquarters in San Francisco, California, and some Class

12  members reside in and purchased their PurePulse Trackers in this District.

13  ## INTRADISTRICT ASSIGNMENT

14  Pursuant to Local Rule 3-2(c), this civil action should be assigned to the San Francisco

15  Division, because a substantial part of the events or omissions giving rise to the claim occurred in

16  the county of San Francisco, where Fitbit is headquartered.

17  ## PARTIES

18  *Plaintiffs*

19  14.    Plaintiff KATE MCLELLAN is a California citizen and resident domiciled in

20  Murrieta, California.  She holds a PhD in rehabilitation science and currently performs research

21  for a clinical research group.  In early 2015, Plaintiff McLellan was in the market for a heart rate

22  monitor to help her track her fitness goals.  At that time, she saw Fitbit's advertisements on

23  Hulu, which depicted users receiving consistent, real-time, accurate heart rate readings from

24  their PurePulse Trackers.  Relying on those representations, Plaintiff McLellan purchased a

25  Charge HR at Sports Chalet in Temecula, California on February 27, 2015, for $161.94 after tax.

26  At no point before or during the purchase of her Charge HR was Plaintiff McLellan provided

27  with or required to agree to an arbitration clause or class action ban, nor was she put on notice

28  that she would be required to agree to an arbitration clause or class action ban for her Charge HR

to function as intended.  Shortly after purchasing her PurePulse Tracker, she noticed that it was not consistently delivering accurate heart rate readings, particularly during exercise.  She confirmed this by comparing the real time heart rate readings from her Charge HR with those on stationary cardiovascular exercise machines.  After re-reviewing the product manuals, Plaintiff McLellan called Fitbit and was directed to reboot her Charge HR.  She did so to no avail.  When her Charge HR continued to deliver inaccurate heart readings, Plaintiff McLellan initiated an online chat with a Fitbit representative, who denied her a refund on her defective PurePulse Tracker.  Had Fitbit disclosed that the PurePulse Trackers cannot consistently deliver accurate heart rate readings, even during exercise, Plaintiff McLellan would not have purchased her Charge HR or would have paid significantly less for it.  Plaintiff McLellan is now stuck with a PurePulse Tracker that cannot perform the precise task for which she purchased it and which does not function as Fitbit expressly promised and warranted.

15.     Plaintiff TERESA BLACK is Colorado citizen and resident domiciled in Grand Junction, Colorado.  Plaintiff Black saw Fitbit's advertisements touting the heart rate functionality of the PurePulse Trackers.  Relying on those representations, she told her husband that she wanted a Charge HR, and her husband bought one for her from REI.com on May 25, 2015.  At no point before or during the purchase of her Charge HR was Plaintiff Black provided with or required to agree to an arbitration clause or class action ban, nor was she put on notice that she would be required to agree to an arbitration clause or class action ban for her Charge HR to function as intended.  Shortly after that purchase, Plaintiff Black noticed that her Charge HR was not consistently delivering accurate heart rate readings, particularly during exercise.  At an intense part of a personal training session in mid-June 2015, Plaintiff Black's personal trainer manually recorded her heart rate, which was 160 beats per minute ("bpm").  In stark contrast, her Charge HR indicated her heart rate was only 82 bpm.  Plaintiff Black was approaching the maximum recommended heart rate for her age, and if she had continued to rely on her inaccurate PurePulse Tracker, she may well have exceeded it, thereby jeopardizing her health and safety.  Had Fitbit disclosed that the PurePulse Trackers cannot consistently deliver accurate heart rate readings, even during exercise, Plaintiff Black would not have purchased her Charge HR or

1   would have paid significantly less for it.  Plaintiff Black is now stuck with a PurePulse Tracker

2   that cannot perform the precise task for which she purchased it and which does not function as

3   Fitbit expressly promised and warranted.

4         16.     Plaintiff DAVID URBAN is a Wisconsin citizen and resident domiciled in

5   Hudson, Wisconsin.  Plaintiff Urban is a fitness enthusiast who signed up for his first marathon

6   in mid-2015.  Given his father's history with heart disease, Plaintiff Urban's doctor

7   recommended that he keep his heart rate from exceeding approximately 160 bpm.  As a result,

8   Plaintiff Urban sought an accurate heart rate monitor for his exercise and training.  At the

9   recommendation of his friends, Plaintiff Urban purchased a Surge at a Target store in Hudson,

10  Wisconsin on October 9, 2015, for $248.82.[4]  At no point before or during the purchase of his

11  Surge was Plaintiff Urban provided with or required to agree to an arbitration clause or class

12  action ban, nor was he put on notice that he would be required to agree to an arbitration clause or

13  class action ban for his Surge to function as intended.  Soon after purchasing the Surge, Plaintiff

14  Urban noticed the heart rate function did not work.  Even at high intensities it never displayed a

15  reading over 125 bpm.  Plaintiff Urban then cross referenced his Surge against his chest strap-

16  based triathlon monitor and found that the PurePulse Tracker consistently under recorded his

17  heart rate at high intensities, often by as much as 15-25 bpm.  In order to train effectively and

18  safely, Plaintiff Urban needs to accurately record his heart rate during exercise so that he can

19  reach, but not exceed, certain intensity levels.  He cannot trust his Surge to deliver those accurate

20  readings.  Had Fitbit disclosed that the PurePulse Trackers cannot consistently deliver accurate

21  heart rate readings, even during exercise, Plaintiff Urban would not have purchased his Surge or

22  would have paid significantly less for it.  Plaintiff Urban is now stuck with a PurePulse Tracker

23  that cannot perform the precise task for which he purchased it and which does not function as

24  Fitbit expressly promised and warranted.

25

26

27

28

---

[4] Plaintiff Urban later exchanged the Surge he purchased in Hudson, Wisconsin, for a larger version of the same model at another Target store in Madison, Wisconsin.

*Defendant*

17.      Defendant Fitbit, Inc. is a corporation doing business in all 50 states.  Fitbit designs, manufactures, promotes, and sells the PurePulse Trackers described herein.  Fitbit is organized and incorporated under the laws of Delaware, and its principal place of business is in San Francisco, California.  It is therefore a citizen of Delaware and California.  *See* 28 U.S.C. § 1332(c)(1).

## COMMON FACTUAL ALLEGATIONS

18.      Fitbit is manufacturer of activity trackers founded in 2007 and headquartered in San Francisco, California.  Its products' functions have included, among other things, step counting, distance calculating, calorie calculating, and sleep monitoring.

19.      In October 2014, Fitbit announced a new feature: wrist-based heart rate monitoring.  The two products equipped with this technology, dubbed PurePulse, are the Charge HR and the Surge, which typically retail at approximately $150[5] and $250 respectively.  Those products are shown below:



I.      **Fitbit Falsely Claims the PurePulse Trackers Consistently Record Accurate Heart Rate.**

20.      Heart rate monitoring is an important feature for exercisers.  Among other things, it can help users achieve and maintain proper intensity, measure effort, track progress, and stay

---

[5] In contrast, the Charge model without a heart rate monitor originally retailed for $130 and now sells for approximately $100.

motivated.  And for those with certain health conditions, monitoring one's heart rate can be essential to staying safe.  Traditionally, however, accurate heart rate monitoring required a chest strap, which can be uncomfortable, distracting, difficult to clean, and may not work with dry skin.

21.     Fitbit attempted to circumvent these problems with its wrist-based PurePulse technology, which it expressly contrasts with "uncomfortable" chest straps.

22.     Per Fitbit's promotional materials, PurePulse uses LED lights to detect changes in capillary blood volume.  It then applies "finely tuned algorithms" to "measure heart rate automatically and continuously" and allow users to "accurately track workout intensity."[6]

23.     Unsurprisingly, the feature is the centerpiece of Fitbit's promotional efforts.  The widely-circulated advertisements include slogans like: "The Difference Between Good and Great…Is Heart"; "For Better Fitness, Start with Heart"; "Get More Benefits with Every Beat—Without An Uncomfortable Chest Strap"; "Every Beat Counts"; and "Know Your Heart."

24.     These representations feature in an extensive and widespread advertising campaign.  As noted, the "Know Your Heart" commercial, for example, appeared prominently throughout Major League Baseball's nationally-televised 2015 World Series, which averaged 14.7 million viewers per game.

25.     Importantly, these advertisements and product descriptions do not state or even remotely suggest that the PurePulse technology works only at low or resting heart rates.  To the contrary, Fitbit expressly markets the PurePulse Trackers for activity and fitness, and depicts them in use during high-intensity workouts.

26.     The following advertisement, for example, depicts a user wearing a Charge HR and jumping rope.  That, combined with the elevated heart rate shown on the featured device— 135 beats per minute—and the tag line's promise that "Every beat counts," indicates that the product accurately records every beat, even during high intensity exercise.

---

[6] http://help.fitbit.com/articles/en_US/Help_article/Heart-rate-FAQs#How.

1278585.6                                        CLASS ACTION COMPLAINT; NO. 16-CV-36

1
2
3
4
5
6
7
8
9
10
11
12
13



14

27.      Similarly, the following commercial screenshots purport to show the PurePulse

15      Trackers delivering real time, elevated heart rate readings during strenuous activity:

16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9



10     28.     In addition, the following promotional materials tote the PurePulse Trackers'

11  ability to monitor "real time heart rate" at intensity, and to "track[] your heart rate all day and

12  during exercise."

13



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Surge 101

### Heart rate

Surge tracks your heart rate all day and during exercise.

See your heart rate on display. When you exercise, the heart icon shows which zone you are in.

♥ In Peak zone

♥ In Cardio zone

♥ In Fat Burn zone

29.     Fitbit's representations are also present at many points of sale. Some Best Buy locations, for example, maintain a full comparative display with an interactive touchscreen and video feature, as shown below.

 

30.     Some Target sites feature a similar, though lower tech, display:

1278585.6                                          CLASS ACTION COMPLAINT; NO. 16-CV-36



31.     In sum, Fitbit's representations regarding the ability of the PurePulse Trackers to consistently record accurate heart rates, even during exercise, are unambiguous and widespread.

**II.     The PurePulse Trackers Fail to Consistently Record Accurate Heart Rate As Promised and Warranted.**

32.     Unfortunately, the PurePulse Trackers do not work, and their heart rate readings are wildly inaccurate.

33.     Plaintiff Black, for example, observed that her Charge HR under recorded her heart rate while exercising with her personal trainer.  Shortly after a high-intensity routine, they compared her Charge HR's heart reading with a manual heart rate test, and found the PurePulse Tracker significantly under recorded her heart rate.

34.     Plaintiff McLellan had the same problem.  She cross referenced the heart rate readings from her Charge HR with the readings from a stationary cardiovascular machine.  Again, the readings from her PurePulse Tracker were too low.

35.     Plaintiff Urban had the same problem, which he verified by checking his Surge against his chest strap heart rate monitor.

36.     Scores of customer complaints confirm these are not isolated incidents.  The following, for example, is a non-exhaustive sampling of complaints about the PurePulse Trackers drawn from user reviews on Amazon.com:

- "The HR technology is not accurate. It's close enough below 100bpm. But 100+ and it's consistently off by 30-50%. I tested this multiple times against my chest strap and other monitors in the gym."

- "The FitBit is regularly lower than the Polar [chest strap monitor] or cannot capture a reading at all."

- "Workouts I know I've kept my heart rate in the 140-170 range, Fitbit says an average of 100 bpm and a max of 120. I've measure it against a chest strap as well as machines at the gym. It's just not accurate, simple as that. Huge disappointment. Not to mention it randomly stops tracking heart rate during the workout…"

- "I checked the HR accuracy of the new fitbit Charge by using it along with my Zephyr HRM which is worn on the chest and I have used for several years now. The accuracy of the fitbit swung wildly even when I switched the HR controls of the Charge from 'auto' to 'on'. It could be off by as much as 20 BPM! That's fricken robbing me of my workout!"

- "I followed all the directions very closely as far as placement, etc, but there is a 30 beat/min difference between the fitbit and my Timex HR chest strap HR monitor with the discrepancy increasing as my heart rate increased."

- "[A]s soon as my HR got above 120 [the Charge HR] either shuts down or just sits on 120. On a couple different occasions I wore my Polar at the same time. Polar had my highest heart rate at 160 BPM while the charge hr had me resting at 75."

- "Paid extra money for HR function and it's useless….If accuracy is important to you, this isn't for you."

- "If you are buying the HR version you are essentially just buying a more expensive Charge that has two green lights on the back and has a nicer strap because the heart rate function is useless."

- "While working out, the heart rate jumps around for no reason. I have tried many different positions and modified the tightness. Nothing seems to help….What good is tracking your heart rate when it's mostly wrong[?]"

- "I am a 82 year old with a resting heart rate of 50 BPM just trying to stay in good basic shape using a stationary bike and rowing machine. I do 30-60 minute sessions at about 100-110 BPM…When I am working the exercise machines the reading is far short of my actual heart rate. I have tried all the suggestions here and on the Fitbit site. No luck. I am

reminded of the proverbial broken clock which is 100% accurate twice a day."

37.     Expert analysis has further corroborated the inability of the PurePulse Trackers to perform as promised and warranted.  A board-certified cardiologist tested the PurePulse Trackers against an electrocardiogram ("ECG"), the gold standard of heart rate monitoring, on a number of subjects at various exercising intensities.

38.     The results were as expected: the PurePulse Trackers consistently mis-recorded the heart rates by a significant degree.  At intensities over 110 bpm, the Heart Rate Trackers often failed to record any heart rate at all.  And even when they did record heart rates, the Heart Rate Trackers were inaccurate by an average of 24.34 bpm, with some readings off by as much as 75 bpm.  With those margins of error, the Heart Rate Trackers are effectively worthless as heart rate monitoring devices.

39.     Interestingly, Fitbit even *admitted* informally to some Class members that the monitor is inaccurate during high-intensity workouts.

40.     As such, the PurePulse Trackers fail to perform the precise task for which they are expressly marketed, and Class members are deprived of the clear benefit of the bargain.

**III.    Fitbit Attempted to Keep Class Members Out of Court Through An Unconscionable Post-Purchase Agreement, Which Class Members Were Required to Accept in Order to Render Operational the PurePulse Trackers They Already Purchased.**

41.     Plaintiffs and Class members did not sacrifice their constitutional rights to a jury trial, their right to join a class action, or any substantive statutory rights when they purchased their PurePulse Trackers.  No agreement to so limit their rights was requested by anyone or represented to be necessary to complete the purchase transactions, nor was there any indication at the point of sale or on the product packaging that such an agreement would be necessary to render their PurePulse Trackers operational.

42.     Only *after* purchasing their PurePulse Trackers were Plaintiffs and Class members informed that in order to render their PurePulse Trackers functional, they must first register and create an online account through Fitbit.com and, in doing so, purportedly bind themselves to an adhesive arbitration clause and class action ban.

43.     Fitbit's Vice President for Customer Support, Jay Kershner, recently conceded under oath that because the PurePulse Trackers are "wireless-enabled wearable devices . . . [a] Fitbit user cannot use their [PurePulse Trackers] as intended until the user has set up an [online] account.  In fact, the Charge HR cannot even be used as a watch until the device is first paired to a Fitbit account, which requires the user to agree to the Terms of Service."  (*Brickman v. Fitbit, Inc.*, No. 3:15-cv-2077, Doc. 41 at ¶4 (N.D. Cal. Sept. 30, 2015)).[7]

44.     Agreeing to those Terms of Service, in turn, comes at a high and hidden cost. The Terms of Service contain a section entitled "Dispute Resolution" which, among other things, purports to:

a.      eliminate the consumer's constitutional rights to a jury trial by designating binding arbitration as the only forum for dispute resolution (with a one-sided exception allowing Fitbit to utilize the courts to prosecute intellectual property claims);

b.      prohibit class actions; and

c.      impose an extra-judicial, one-year statute of limitations on every one of the Class members' potential causes of action relating to use of the PurePulse Trackers.

45.     Notably, the Terms of Service purport to govern not just the services offered through the online account, but also any conceivable grievance that might arise from use of the PurePulse Trackers themselves, regardless of whether that use implicates the wireless service.

46.     Even more remarkably, Fitbit claims that the Terms of Service bind anyone who so much as visits Fitbit's website, even if they do not register for an account.

47.     This unilateral and unconscionable attempt to curtail Class members' constitutional and statutory rights is buried near the end of a long document and, unlike the preceding section, is not highlighted or emphasized in any way.

48.     Moreover, while the Dispute Resolution section contains an inconspicuous provision outlining a limited procedure for opting out of the arbitration agreement, no such opt-

---

[7] As defined below, the proposed Class definition excludes those who purchased their PurePulse Trackers directly from Fitbit.com.  Upon information and belief, those consumers were the only ones even informed of Fitbit's Terms of Service prior to finalizing their PurePulse Tracker purchases.

out possibility exists for the class action waiver, the one-year statute of limitation, or the clauses governing selection of law and forum.

49.     To reiterate, there is no mention on the product packaging or anywhere else at the point of sale that the PurePulse Trackers will work as intended only after setting up an online account or, critically, that such an account will be governed by Terms of Service including the unconscionable provisions detailed above.

50.     Those post-purchase clauses are therefore invalid and unenforceable as a matter of law to Plaintiffs and Class members.

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and/or (b)(1), (b)(2), and/or (c)(4).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

52.     The proposed Classes are defined as:

### Nationwide Class

All persons or entities in the United States who purchased a Fitbit PurePulse Tracker, as defined herein, excluding those who purchased their PurePulse Trackers directly from Fitbit on Fitbit.com and who did not opt out of the arbitration agreement.

### California Subclass

All persons or entities in the California who purchased a Fitbit Heart Rate Fitness Watch, as defined herein, excluding those who purchased their PurePulse Trackers directly from Fitbit on Fitbit.com and who did not opt out of the arbitration agreement.

### Colorado Subclass

All persons or entities in the Colorado who purchased a Fitbit Heart Rate Fitness Watch, as defined herein, excluding those who purchased their PurePulse Trackers directly from Fitbit on Fitbit.com and who did not opt out of the arbitration agreement.

### Wisconsin Subclass

All persons or entities in the Wisconsin who purchased a Fitbit Heart Rate Fitness Watch, as defined herein, excluding those who

purchased their PurePulse Trackers directly from Fitbit on
Fitbit.com and who did not opt out of the arbitration agreement.

53.    Excluded from the Nationwide Class and Subclasses (the "Classes") are:

(A) Fitbit, any entity or division in which Fitbit has a controlling interest, and their legal

representatives, officers, directors, assigns, and successors; (B) the Judge to whom this case is

assigned and the Judge's staff; (C) governmental entities; and (D) those persons who have

suffered personal injuries or emotional distress as a result of the facts alleged herein.  Plaintiffs

reserve the right to amend the Class definitions if discovery and further investigation reveal that

any Class should be expanded, divided into additional subclasses, or modified in any other way.

### Numerosity and Ascertainability

54.    Although the exact number of Class members is uncertain, the size of the Classes

can be estimated with reasonable precision, and the number is great enough that joinder is

impracticable.

55.    Fitbit sold 3,866,000 units in the first quarter of 2015.[8]  Analysts suggest that

most of these sales were generated by the Charge HR,[9] and Fitbit attributes 78% of its first

quarter revenue to the Charge HR and Surge together.  The number of Class members is

therefore likely in the millions, and the disposition the Class members' claims in a single action

will provide substantial benefits to all parties and to the Court.  Class members are readily

identifiable from information and records in possession, custody, or control of Fitbit, the Class

members, and the PurePulse Tracker retailers.

### Typicality

56.    The claims of the representative Plaintiffs are typical of the claims of the Classes

in that the representative Plaintiffs, like all Class members, purchased a PurePulse Tracker

designed, manufactured, and distributed by Fitbit.  The representative Plaintiffs, like all Class

members, were damaged by Fitbit's misconduct in that they have suffered actual damages as a

result of their purchase of the PurePulse Trackers.  Furthermore, the factual bases of Fitbit's

---

[8] https://www.sec.gov/Archives/edgar/data/1447599/000119312515209758/d875679ds1a.htm.
[9] http://venturebeat.com/2015/08/05/fitbits-first-earnings-since-ipo-reveals-400m-in-revenue-and-4-5m-wearables-sold-in-q2/

misconduct are common to all Plaintiffs and represent a common thread of misconduct resulting in injury to all Class members.

**Adequate Representation**

57.     Plaintiffs are members of the Classes and will fairly and adequately represent and protect the interests of the Classes.  Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

58.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

**Predominance of Common Issues**

59.     There are numerous issues of law and fact common to Plaintiffs and Class members that predominate over any issue affecting only individual Class members.  Resolving these common issues will advance resolution of the litigation as to all Class members.  These common legal and factual issues include:

a.      whether the PurePulse Trackers fail to consistently deliver accurate heart rate monitoring, as advertised and warranted;

b.      whether Fitbit knew or should have known that the PurePulse Trackers do not consistently deliver accurate heart rate monitoring;

c.      whether the inability of the PurePulse Trackers to consistently record accurate heart rates constitutes a material fact that reasonable consumers would have considered important in deciding whether to purchase a PurePulse Tracker or pay an increased price for them;

d.      whether Fitbit's concealment of the Heart Rate Defect in the PurePulse Trackers induced reasonable consumers to act to their detriment by purchasing a PurePulse Tracker;

e.      whether Fitbit made material misrepresentations regarding PurePulse Trackers;

f.      whether Fitbit had a duty to disclose the true nature of the PurePulse Trackers to Plaintiffs and Class members;

g.      whether Fitbit omitted and failed to disclose material facts about the PurePulse Trackers;

h.      whether Plaintiffs and Class members are entitled to a declaratory judgment;

i.      whether Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction, and /or rescission;

j.      whether Plaintiffs and Class members are entitled to restitution and/or disgorgement and the amount of such;

k.      whether Plaintiffs and Class members are entitled to actual damages and the amount of such; and

l.      whether Plaintiffs and Class members are entitled to punitive or exemplary damages and the amount of such.

**Superiority**

60.     Plaintiffs and Class members all suffered—and will continue to suffer—harm and damages as a result of Fitbit's uniformly unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

61.     Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy at law.  Because of the relatively small size of the individual Class members' claims, it is likely that few, if any, Class members could afford to seek legal redress for Fitbit's misconduct.  Absent a class action, Class members' damages will go uncompensated, and Fitbit's misconduct will continue without remedy.

62.     Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

63.     Fitbit has acted in a uniform manner with respect to the Plaintiffs and Class members.

64.     Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Fitbit has acted on grounds that apply generally to the class, and inconsistent adjudications with respect to the Fitbit's liability would establish incompatible standards and substantially impair or impede the ability of Class members to protect their interests.  Classwide relief assures fair, consistent, and equitable treatment and protection of all Class members, and uniformity and consistency in Fitbit's discharge of their duties to perform corrective action regarding the PurePulse Trackers.

## CHOICE OF LAW ALLEGATIONS

65.     Because this Complaint is brought in California, California's choice of law regime governs the state law allegations in this Complaint.

66.     Under California's governmental interest/comparative impairment choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

67.     Because Fitbit is headquartered—and made all decisions relevant to these claims—in California, California has a substantial connection to, and materially greater interest in, this the rights, interests, and policies involved in this action than any other state.

68.     Nor would application of California law to Fitbit and the claims of all Class members be arbitrary or unfair.  Indeed, in its Terms of Service, Fitbit declares that, regardless of any state's conflict of law principles, "the resolution of any Disputes shall be governed by and construed in accordance with the laws of the State of California."  Although the Terms of Service are void and unenforceable as to Plaintiffs and Class members in other respects, this provision demonstrates Fitbit's awareness and agreement that California law should apply to the claims in this Complaint, and Fitbit is estopped from contending otherwise.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
#### Violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

69.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

70.    This claim is brought on behalf of the Nationwide Class and California Subclass to seek injunctive  relief as well as monetary damages against Fitbit under California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

71.    Fitbit is a "person" as defined by the CLRA.  Cal. Civ. Code § 1761(c).

72.    Plaintiffs and Class members are "consumers" within the meaning of the CLRA, as defined by Cal. Civ. Code § 1761(d), who purchased one or more PurePulse Trackers.

73.    The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]"  Cal. Civ. Code § 1770(a).

74.    Fitbit engaged in unfair or deceptive trade practices that violated Cal. Civ. Code § 1770(a), as described above and below, by, among other things, failing to disclose the defective nature of the PurePulse Trackers, representing that the PurePulse Trackers had characteristics and benefits that they do not have (e.g., the ability to consistently record accurate heart rates, even during high-intensity exercise), representing that the PurePulse Trackers were of a particular standard, quality, or grade when they were of another, and advertising PurePulse Trackers with the intent not to sell them as advertised.  *See* Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9).

75.    Fitbit knew, should have known, or was reckless in not knowing that its products did not have the qualities, characteristics, and functions it represented, warranted, and advertised them to have.

76.    Fitbit's unfair and deceptive acts or practices occurred repeatedly in Fitbit's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and imposed a safety risk to Plaintiffs and Class members.

77.     Fitbit was under a duty to Plaintiffs and Class members to disclose the deceptive and defective nature of the PurePulse Trackers because:

a.     The defect in the PurePulse Trackers presents a safety hazard because Class members' could jeopardize their health by relying on the inaccurate heart rate readings and potentially achieving dangerous heart rates;

b.     Fitbit was in a superior position to know the true state of facts about the Heart Rate Defect in the PurePulse Trackers;

c.     Plaintiffs and Class members could not reasonably have been expected to learn or discover that the PurePulse Trackers contained the Heart Rate Defect; and

d.     Fitbit knew that Plaintiffs and Class members could not reasonably have been expected to learn or discover the defect in the PurePulse Trackers.

78.     In failing to disclose the defective nature of the PurePulse Trackers, Fitbit knowingly and intentionally concealed material facts and breached its duty not to do so.

79.     The facts that were misrepresented, concealed or not disclosed by Fitbit to Plaintiffs and Class members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase a PurePulse Tracker.  Had Plaintiffs and other Class members known about the true nature and quality of the PurePulse Trackers, they would not have purchased a PurePulse Tracker or would have paid significantly less than they did for their PurePulse Trackers.

80.     Plaintiffs and Class members are reasonable consumers who expect that their PurePulse Trackers will consistently record accurate heart rates, as represented.

81.     As a result of Fitbit's conduct and unfair or deceptive acts or practices, Plaintiffs and Class members suffered actual damages in that the PurePulse Trackers do not function as represented and are not worth the amount paid and Fitbit has deprived Plaintiffs and Class members the benefit of the bargain.

82.     Plaintiffs and the Class seek an order enjoining Defendant's unfair or deceptive acts or practices, equitable relief, an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

83.     In addition, many Class members are senior citizens or disabled persons, as defined by Cal. Civ. Code §§ 1761(f) and (g), who suffered substantial economic damage resulting from the Fitbit's fraudulent representations regarding the PurePulse Trackers.  Each of those Class members is entitled to up to an additional $5,000.  Cal. Civ. Code § 1780(b).

84.     In accordance with section 1782(a) of the CLRA, on November 16, 2015, Plaintiffs' counsel served Fitbit with notice of its alleged violations of Cal. Civ. Code § 1770(a) relating to the Heart Rate Defect in the PurePulse Trackers purchased by Plaintiffs and Class members.  Plaintiffs' letter is attached to this Complaint as Exhibit A, for reference.  Fitbit did not correct or agree to correct the actions described in the letter and in this Complaint within thirty (30) days of the notice.  Fitbit's response is attached as Exhibit B.  Plaintiffs and Class members thus seek an award of compensatory, monetary, and punitive damages based on the conduct described herein, as well as any other relief the Court deems proper.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq. – Based On the Heart Rate Defect***

85.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

86.     Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Class and California Subclass.

87.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Fitbit's conduct related to the Heart Rate Defect violated each of this statute's three prongs.

88.     Fitbit committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by their violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, as set forth above, by the acts and practices set forth in this Complaint.

89.     Fitbit committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it represented that the PurePulse Trackers could consistently

record accurate heart rate, even during exercise, when in fact they cannot. The Heart Rate Defect also presents a safety hazard as it can jeopardize the health and safety of users who rely on the inaccurate heart rate readings and unknowingly achieve dangerous heart rates.

90.     Fitbit committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it affirmatively and knowingly misrepresented that the PurePulse Trackers consistently record accurate heart rates, even during high-intensity exercise, when in fact they do not. Fitbit's representations and concealment of the Heart Rate Defect are likely to mislead the public with regard to the true defective nature of the PurePulse Trackers.

91.     Fitbit also disseminated unfair, deceptive, untrue and/or misleading advertising in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* and § 17500, *et seq.* when it distributed advertisements falsely representing that the PurePulse Trackers consistently record accurate heart rates, even at high intensity, when in fact they do not.

92.     Fitbit's unfair or deceptive acts or practices occurred repeatedly in the course of Fitbit's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

93.     As a direct and proximate result of Fitbit's unfair and deceptive practices, Plaintiffs and Class members suffered and will continue to suffer actual damages.

94.     As a result of its unfair and deceptive conduct, Fitbit has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

95.     Plaintiffs and the Class further seek an order enjoining Fitbit's unfair or deceptive acts or practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

### THIRD CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq.* – Based On the Post-Purchase *"Terms of Service"***

96.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

97.     Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Class and California Subclass.

98.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

99.     Fitbit's conduct related to the post-purchase Terms of Service—unilaterally imposing Terms of Service in a post-purchase agreement that included an arbitration clause with a one-sided exception, forum selection clause, choice of law provision, class action ban, and claim period limitation—constitutes an additional violation of the statute's unfair and fraudulent prongs.

100.    Specifically, Fitbit committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by concealing and failing to alert Plaintiffs and Class members at the point of sale either expressly, or by reference to the Terms of Service, that in order to make full use of the PurePulse Trackers—and, indeed, even to render them operable—they would be required to register for an online account, and that the account would be accompanied by click wrap terms of service which purport to significantly curtail the Class members' legal rights.

101.    Fitbit further advanced this unfair and fraudulent business act and practice by attempting to compel arbitration and preclude class action litigation based on the unconscionable post-purchase agreement. Indeed, in this case, Fitbit instructed Plaintiffs' counsel that "Ms. McLellan cannot litigate her claim and cannot represent a class," despite the fact that she never was presented with or agreed to any such "agreement" prior to purchasing her PurePulse Tracker.

102.    Fitbit's unfair or deceptive acts or practices occurred repeatedly in the course of Fitbit's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

103.    As a direct and proximate result of Fitbit's unfair and deceptive practices, Plaintiffs and Class members suffered and will continue to suffer actual damages.

104.    As a result of its unfair and deceptive conduct, Fitbit has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

105.    Plaintiffs and the Class further seek an order enjoining Fitbit's unfair or deceptive acts or practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

**FOURTH CLAIM FOR RELIEF**
**Common Law Fraud**

106.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

107.    Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Class and all the Subclasses.

108.    Fitbit engaged in both speaking and silent fraud, and in fraudulent and deceptive conduct.  As described above, Fitbit's conduct defrauded Plaintiffs and Class members, by intentionally leading them to believe, through affirmative misrepresentations, omissions, suppressions, and concealments of material fact, that the PurePulse Trackers possessed important characteristics that they in fact do not possess—namely that they could consistently record accurate heart rate, even during high-intensity exercise—and inducing their purchases.

109.    Fitbit's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the PurePulse Trackers consistently record accurate heart rates.

110.    The foregoing misrepresentations were uniform across all Class members.  The same extensive and widespread advertising campaign was promoted nationwide, and all of the promotional materials contained the same material representations regarding the PurePulse Trackers' ability consistently record accurate heart rates.

111.    These representations were false, as detailed herein.  Fitbit knew the representations were false when it made them and intended to defraud purchasers thereby.

112.    Fitbit also had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Heart Rate Defect because:

a.    Fitbit had exclusive knowledge of the Heart Rate Defect in the PurePulse Trackers and concealment thereof;

b.    The details regarding the Heart Rate Defect in the PurePulse Trackers and concealment thereof were known and/or accessible only to Fitbit;

c.    Fitbit knew Plaintiffs and Class members did not know about the Heart Rate Defect in the PurePulse Trackers and concealment thereof; and

d.    Fitbit made general representations about the qualities of the PurePulse Trackers, including statements about their performance and abilities that were misleading, deceptive, and incomplete without the disclosure of the fact that the PurePulse Trackers could not consistently record accurate heart rates, particularly during exercise.

113.    Fitbit's actions constitute "actual fraud" within the meaning of Cal. Civ. Code § 1572 because Fitbit did the following with the intent to deceive Plaintiffs and Class member and to induce them to enter into their contracts:

a.    Suggested that the PurePulse Trackers can consistently record accurate heart rates, even at high intensities, even though it knew this to be not true;

b.    Positively asserted that the PurePulse Trackers can consistently record accurate heart rates, even at high intensities, in a manner not warranted by the information available to Fitbit;

c.    Suppressed the true nature of the Heart Rate Defect from Plaintiffs and Class members; and

d.    Promised it would deliver PurePulse Trackers that consistently record accurate heart rates, even at high intensities, with no intention of so doing.

114.    Fitbit's actions, listed above, also constituted "deceit" as defined by Cal. Civ. Code § 1710 because Fitbit willfully deceived Plaintiffs and Class members with intent to induce them to alter their positions to their detriment by purchasing defective PurePulse Trackers.

115.    Fitbit's fraud and concealment was also uniform across all Class members; Fitbit concealed from everyone the true nature of the Heart Rate Defect in the PurePulse Trackers.

116.    Fitbit's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase a PurePulse Tracker.  Consumers paid a premium for the PurePulse Trackers precisely because they purportedly offered continuous, accurate heart rate readings.

117.    Fitbit's intentionally deceptive conduct induced Plaintiffs and Class members to purchase the PurePulse Trackers and resulted in harm and damage to them.

118.    Plaintiffs believed and relied upon Fitbit's misrepresentations and concealment of the true facts.  Class members are presumed to have believed and relied upon Fitbit's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase the PurePulse Trackers.

119.    As a result of Fitbit's inducements, Plaintiffs and Class members sustained actual damages including but not limited to receiving a product that performs as promised and not receiving the benefit of the bargain of their PurePulse Tracker purchases.  If Plaintiffs and Class members had known about the Heart Rate Defect, they would not have purchased the PurePulse Trackers or would have paid significantly less for them.  Fitbit is therefore liable to Plaintiffs and Class members in an amount to be proven at trial.

120.    Fitbit's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class members' rights and interests.  Fitbit's conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## FIFTH CLAIM FOR RELIEF
### Fraud in the Inducement

121.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

122.    Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Class and all the Subclasses.

123.    Fitbit's fraud and false affirmations of fact, described herein, induced Plaintiffs and Class members to purchase the PurePulse Trackers and thereby enter into a contract with Fitbit.

124.    As described above, Fitbit had a duty to disclose the Heart Rate Defect in the PurePulse Trackers to Plaintiffs and Class members.

125.    As described above, Fitbit's actions constituted actual fraud and deceit as defined by Cal. Civ. Code §§ 1572 and 1710.

126.    Plaintiffs justifiably relied to their detriment on the truth and completeness of Fitbit's material representations regarding the PurePulse Trackers. Class members are presumed to have relied upon Fitbit's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase the PurePulse Trackers.

127.    Fitbit's fraud and concealment was also uniform across all Class members; Fitbit concealed from everyone the true nature of the Heart Rate Defect in the PurePulse Trackers.

128.    Plaintiffs and Class members would not have agreed to purchase their PurePulse Trackers, or would have paid less for them, if they had not been deceived by Fitbit.

129.    As a result of Fitbit's inducements, Plaintiffs and Class members sustained actual damages including but not limited to not receiving a product that performs as promised and not receiving the benefit of the bargain of their PurePulse Tracker purchases.

130.    Fitbit's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class members' rights and interests.  Fitbit's conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

**SIXTH CLAIM FOR RELIEF**
**Unjust Enrichment**

131.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

132.    Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Class and all the Subclasses.

133.    Fitbit has been unjustly enriched in that it sold the PurePulse Trackers with defective heart rate monitors that do not consistently record accurate heart rates as represented.

134.    When purchasing their PurePulse Trackers, Plaintiffs and Class members reasonably believed that the PurePulse Trackers would perform as advertised and as warranted and would consistently record accurate heart rates, even during high-intensity exercise.

135.    Plaintiffs and Class members received less than what they paid for in that the PurePulse Trackers do not consistently record accurate heart rates as represented and therefore do not deliver as promised.

136.    Plaintiffs and Class members conferred a benefit on Fitbit by purchasing, and paying a premium for, the PurePulse Trackers.  Had Plaintiffs and Class members known about the Heart Rate Defect, they would not have purchased the PurePulse Trackers or would have paid significantly less for them.

137.    Fitbit should therefore be required to disgorge all profits, benefits, and other such compensation it obtained through its wrongful conduct.

**SEVENTH CLAIM FOR RELIEF**
**Revocation of Acceptance**
**Cal. Com. Code § 2608**

138.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

139.    Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Class and the California Subclass.

140.    Plaintiffs and Class members revoke their acceptance of the PurePulse Trackers.

141.     Plaintiffs and Class members had no knowledge of the Heart Rate Defect when they purchased their PurePulse Trackers, and their acceptance of the goods was reasonably induced by the difficulty of discovering the Heart Rate Defect and Fitbit's false representations that the PurePulse Trackers could consistently record accurate heart rates, and therefore were not defective.

142.     The Heart Rate Defect substantially impairs the value of the PurePulse Trackers to Plaintiffs and Class members.

143.     There has been no substantial change in the condition of the PurePulse Trackers not caused by the Heart Rate Defect.

144.     As described herein, Plaintiffs notified Fitbit of the Heart Rate Defect.

145.     Consequently, Plaintiffs and Class members are entitled to revoke their acceptances, receive all payments made to Fitbit, and to all incidental and consequential damages, and all other damages allowable under law, all in amounts to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### Breach of Express Warranty

146.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

147.     Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Class and all the Subclasses.

148.     By advertising the heart rate function of the PurePulse Trackers, Fitbit expressly warranted to Plaintiffs and Class members that the PurePulse Trackers would record heart rate accurately, even during exercise.

149.     By way of non-exhaustive example, Fitbit represented that

a.      the PurePulse Trackers provide "continuous, automatic . . . heat rate" monitoring which allows users to "maintain intensity";

b.      "Surge tracks your heart rate all day and ***during exercise***" (emphasis added); and

c.      Charge HR "is an advanced heart rate and activity-tracking wristband, built for all-day activity, **workouts** and beyond." (emphasis added).

150.     Such statements became the basis of the bargain for Plaintiffs and other Class members because such statements are among the facts a reasonable consumer would consider material in the purchase of a heart rate monitoring fitness product.

151.     Fitbit breached this express warranty by delivering PurePulse Trackers that do not deliver as promised and fail to consistently record accurate heart rates, especially during exercise.

152.     As a result of the foregoing breaches of express warranty, Plaintiffs and other Class members have been damaged in that they purchased PurePulse Trackers that could not perform as warranted and did not receive the benefit of the bargain of their PurePulse Tracker purchases.

153.     Plaintiffs and Class members seek all damages permitted by law in an amount to be proven at trial.

### NINTH CLAIM FOR RELIEF
**Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq. – Implied Warranty**

154.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

155.     Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Class and all the Subclasses.

156.     The PurePulse Trackers are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

157.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3), because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

158.     Fitbit is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

159.    Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

160.    Fitbit provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of the PurePulse Trackers is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).   As a part of the implied warranty of merchantability, Fitbit warranted that the PurePulse Trackers would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

161.    Fitbit breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).

162.    Any efforts to limit the implied warranties in a manner that would exclude coverage of the PurePulse Trackers is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the PurePulse Trackers is null and void.

163.    Plaintiffs and the other Class members have had sufficient direct dealings with either Fitbit or its agents to establish privity of contract.

164.    Nonetheless, privity is not required here because Plaintiffs and other Class members are intended third-party beneficiaries of contracts between Fitbit and its retailers, and specifically, of the implied warranties.  The retailers were not intended to be the ultimate consumers of the PurePulse Trackers and have no rights under the warranty agreements provided with the PurePulse Trackers; the warranty agreements were designed for and intended to benefit consumers.

165.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Fitbit notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

166.    Furthermore, to the extent such notice is required, it has been provided through the letter sent to Fitbit by Plaintiffs' counsel on November 16, 2015 (Ex. A), described herein, as

1   well as through complaints lodged by Plaintiff McLellan and other Class members.  Fitbit

2   refused to remedy its wrongs after receiving these notifications and any further notice would be

3   futile.

4        167.    Plaintiffs' individual claims place into controversy an amount equal to or

5   exceeding $25.00.  The amount in controversy of this entire action exceeds the sum of

6   $50,000.00, exclusive of interest and costs, computed on the basis of all claims to be determined

7   in this lawsuit.  Plaintiffs, individually and on behalf of the other Class members, seek all

8   damages permitted by law, including diminution in value of their vehicles, in an amount to be

9   proven at trial.

10        168.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class

11   members are entitled to recover a sum equal to the aggregate amount of costs and expenses

12   (including attorneys' fees based on actual time expended) determined by the Court to have

13   reasonably been incurred by Plaintiffs and the other Class members in connection with the

14   commencement and prosecution of this action.

15        169.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15

16   U.S.C. § 2310(d)(1).

17   
**TENTH CLAIM FOR RELIEF**
18   **Violation of the Song-Beverly Consumer Warranty Act for Breach of the Implied Warranty of Merchantability**
19   **Cal. Civ. Code §§ 1791.1 & 1792**

20        170.    Plaintiffs hereby incorporate by reference the allegations contained in the

21   preceding paragraphs of this Complaint.

22        171.    Plaintiffs bring this cause of action for themselves and on behalf of the

23   Nationwide Class and the California Subclass.

24        172.    Plaintiffs and members of the Class are "buyers" within the meaning of Cal. Civ.

25   Code § 1791(b).

26        173.    The PurePulse Trackers are "consumer goods" within the meaning of Cal. Civ.

27   Code § 1791(a).

28

174.    Fitbit is a "manufacturer" of the PurePulse Trackers within the meaning Cal. Civ. Code § 1791(j).

175.    Fitbit impliedly warranted to Plaintiffs and Class members that its PurePulse Trackers were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, the PurePulse Trackers do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

176.    Cal. Civ. Code § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> (1)    Pass without objection in the trade under the contract description.
>
> (2)    Are fit for the ordinary purposes for which such goods are used.
>
> (3)    Are adequately contained, packaged, and labeled.
>
> (4)    Conform to the promises or affirmations of fact made on the container or label.

177.    The PurePulse Trackers would not pass without objection in the trade because they do not perform as warranted because they do not provide consistent, accurate heart rate readings, even during exercise.

178.    Similarly, the PurePulse Trackers' inability to consistently record accurate heart rates renders them unfit for the ordinary purpose of a heart rate monitor.

179.    The PurePulse Trackers are not adequately labeled because the labeling represents that they consistently record accurate heart rates, which they do not do.

180.    For the same reason, the PurePulse Trackers do not conform to the promises or affirmations of fact made on the container or label.

181.    Fitbit thus breached the implied warranty of merchantability.

182.    As a direct and proximate result of Fitbit's breach of the implied warranty of merchantability, Plaintiffs and the other Class members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Plaintiffs and

1    Class members.  Plaintiffs and Class members were damaged as a result of the defect in the

2    PurePulse Trackers, the products' malfunctioning, and the nonuse of their PurePulse Trackers.

3        183.    Notice of breach is not required because Plaintiffs and the other Class members

4    did not purchase their PurePulse Trackers directly from Fitbit.

5        184.    Nevertheless, Plaintiffs notified Fitbit of its breach via a November 16, 2015,

6    letter to its general counsel.

7        185.    Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and Class members

8    are entitled to damages and other legal and equitable relief including, at their election, the

9    purchase price of their PurePulse Trackers or the overpayment or diminution in value of their

10   PurePulse Trackers.

11       186.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are

12   entitled to costs and attorneys' fees.

13

**ELEVENTH CLAIM FOR RELIEF**
**Violation of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. §§ 6-1-101, *et. seq.***

14

15       187.    Plaintiff Black hereby incorporates by reference the allegations contained in the

16   preceding paragraphs of this Complaint.

17       188.    As described above, California law applies to the claims of all Plaintiffs and Class

18   members.  In the alternative, Plaintiff Black brings this cause of action for herself and on behalf

19   of the Colorado Subclass.

20       189.    Colorado's Consumer Protection Act (the "CCPA") prohibits a person from

21   engaging in a "deceptive trade practice," which includes knowingly making "a false

22   representation as to the source, sponsorship, approval, or certification of goods," or "a false

23   representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of

24   goods." Colo. Rev. Stat. § 6-1-105(1)(b),(e). The CCPA further prohibits "represent[ing] that

25   goods … are of a particular standard, quality, or grade … if he knows or should know that they

26   are of another," and "advertis[ing] goods … with intent not to sell them as advertised." Colo.

27   Rev. Stat. § 6-1-105(1)(g), (i).

28

190.    Fitbit is a "person" as defined by § 6-1-102(6) of the CCPA. Col. Rev. Stat. § 6-1-101, *et seq.*

191.    Plaintiff Black and Colorado Subclass members are "consumers" under the CCPA.

192.    In the course of business, Fitbit wilfully misrepresented and failed to disclose the Heart Rate Defect in the PurePulse Trackers.  Fitbit therefore engaged in unlawful trade practices proscribed by the CCPA, including representing that the PurePulse Trackers have characteristics, uses, benefits, and qualities which they do not have; representing that PurePulse Trackers are of a particular standard and quality when they are not; advertising the PurePulse Trackers with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

193.    Plaintiff Black and Colorado Subclass members were deceived by Fitbit's failure to disclose the Heart Rate Defect in the PurePulse Trackers.

194.    Plaintiff Black and Colorado Subclass members reasonably relied upon Fitbit's false and misleading misrepresentations and had no way of knowing that the representations were false and misleading before purchasing their PurePulse Trackers.

195.    Fitbit intentionally and knowing misrepresented material facts regarding the Heart Rate Defect in the PurePulse Trackers with an intent to mislead Plaintiff Black and Colorado Subclass members.

196.    Fitbit knew, should have known, or was reckless in not knowing that its products did not have the qualities, characteristics, and functions it represented, warranted, and advertised them to have.

197.    Fitbit's actions as set forth above occurred in the conduct of trade or commerce.

198.    Fitbit's conduct proximately caused injuries to Plaintiff Black and Colorado Subclass members

199.    Plaintiff Black and Colorado Subclass members were injured as a direct and natural consequence result of Fitbit's conduct in that they purchased PurePulse Trackers they

1   would have not otherwise purchased, or would have paid significantly less for, and did not

2   receive the benefit of their bargain.

3         200.    Pursuant to Col. Rev. Stat. § 6-1-113, Plaintiff Black and the Colorado Subclass

4   seek monetary relief against Fitbit measured as the greater of (a) actual damages in an amount to

5   be determined at trial and the discretionary trebling of such damages, or (b) statutory damages in

6   the amount of $500 for each Colorado Subclass member.

7         201.    Plaintiff Black and Colorado Subclass members also seek an order enjoining

8   Fitbit's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any

9   other just and proper relief available under the CCPA.

10                **TWELFTH CLAIM FOR RELIEF**
**Violation of the Wisconsin Deceptive Trade Practices Act**

11                      **Wis. Stat. § 110.18**

12         202.    Plaintiff Urban hereby incorporates by reference the allegations contained in the

13   preceding paragraphs of this Complaint.

14         203.    As described above, California law applies to the claims of all Plaintiffs and Class

15   members.  In the alternative, Plaintiff Urban brings this cause of action for himself and on behalf

16   of the Wisconsin Subclass.

17         204.    The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a

18   "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat.

19   § 100.18(1).

20         205.    Fitbit is a "person, firm, corporation or association" within the meaning of the

21   Wisconsin DTPA.  Wis. Stat. § 100.18(1).

22         206.    Plaintiff Urban and the Wisconsin Subclass members, or their spouses, purchased

23   PurePulse Trackers and are members of "the public" within the meaning of the Wisconsin

24   DTPA. Wis. Stat. § 100.18(1).

25         207.    In the course of its business, Fitbit engaged in unfair and deceptive acts and

26   practices that violated the Wisconsin DTPA, including misrepresenting the nature of the

27   PurePulse Trackers and concealing and suppressing information about the Heart Rate Defect in

28

the PurePulse Trackers with intent that others rely upon such concealment, suppression, or omission, in connection with their PurePulse Tracker purchases.

208.    Fitbit intentionally and knowingly misrepresented material facts regarding the Heart Rate Defect in the PurePulse Trackers with an intent to mislead Plaintiff Urban and Wisconsin Subclass members.

209.    Fitbit's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Urban, and are presumed to have deceived Wisconsin Subclass members.

210.    Fitbit knew, should have known, or was reckless in not knowing that its products did not have the qualities, characteristics, and functions it represented, warranted, and advertised them to have.

211.    Fitbit had an ongoing duty to refrain from unfair and deceptive trade practices.

212.    Fitbit's violations affect the public interest and present a continuing risk to Plaintiff Urban, Wisconsin Subclass members, and the public.

213.    Plaintiff Urban and the Wisconsin Subclass suffered ascertainable loss caused by Fitbit's misrepresentations and its concealment of and failure to disclose material information regarding the Heart Rate Defect in the PurePulse Trackers.

214.    Plaintiff Urban and Wisconsin Subclass members were injured as a direct and proximate result of Fitbit's conduct in that they purchased PurePulse Trackers they would have not otherwise purchased, or would have paid significantly less for, and did not receive the benefit of their bargain.

215.    Plaintiff Urban and the Wisconsin Subclass seek monetary relief and other relief provide for under Wis. Stat. § 100.18(11)(b)(2), including treble damages, because Fitbit committed its deceptive and unfair practices knowingly and/or intentionally.

216.    Plaintiff Urban and the Wisconsin Subclass also seek court costs and attorneys' fees under Wis. Stat. § 100.18(11)(b)(2).

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, request the Court to

1    enter judgment against Fitbit, as follows:

2          A.      an order certifying an appropriate Class and/or Subclasses, designating Plaintiffs

3    as Class Representatives, and designating their counsel of record jointly as Class Counsel;

4          B.      an order enjoining Fitbit from engaging in further deceptive distribution and sales

5    practices with respect to the PurePulse Trackers;

6          C.      a declaration that Fitbit is financially responsible for notifying all Class members

7    about the true nature of the PurePulse Trackers;

8          D.      an order requiring Fitbit to notify the Class that the PurePulse Trackers are

9    defective and cannot consistently record accurate heart rates;

10          E.      an order permitting Plaintiffs and Class members to elect to affirm their contracts

11    or alternatively demand rescission and seek damages;

12          F.      a declaration that the Fitbit must disgorge, for the benefit of Plaintiffs and Class

13    members, all or part of the ill-gotten profits received from the sale or lease of the PurePulse

14    Trackers, and make full restitution to Plaintiffs and Class members;

15          G.      Restitution in the amount of monies paid by Plaintiffs and Class members for the

16    PurePulse Trackers;

17          H.      an award to Plaintiffs and Class members of compensatory, exemplary, punitive,

18    and statutory penalties and damages as allowed by law, including interest, in an amount to be

19    proven at trial;

20          I.      an award of attorneys' fees and costs, as allowed by law;

21          J.      an award of pre-judgment and post-judgment interest, as provided by law;

22          K.      leave to amend this Complaint to conform to the evidence produced at trial; and

23          L.      such other relief as may be appropriate under the circumstances.

24                              **DEMAND FOR JURY TRIAL**

25          Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs, individual and on behalf of

26    the Class, demand a trial by jury of any and all issues in this action so triable of right.

27

28

Dated:  January 5, 2015

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:  _____
        Jonathan Selbin

Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Elizabeth J. Cabraser (SBN 083151)
Kevin R. Budner (SBN 287271)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
Email: ecabraser@lchb.com
Email: pgnguyen@lchb.com
Email: kbudner@lchb.com

Robert Klonoff (Pro Hac Vice Anticipated)
ROBERT H. KLONOFF, LLC
2425 SW 76th Ave.
Portland, OR 97225
Telephone:  (503) 291-1570

*Attorneys for Plaintiffs*