Elizabeth J. Cabraser (CA SBN 083151)
ecabraser@lchb.com
Kelly M. Dermody (CA SBN 171716)
kdermody@lchb.com
Kevin R. Budner (CA SBN 287271)
kbudner@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Jonathan D. Selbin (CA SBN 170222)
jselbin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Robert Klonoff (*pro hac vice*)
klonoff@usa.net
ROBERT H. KLONOFF, LLC
2425 SW 76th Ave.
Portland, OR 97225
Telephone:  (503) 291-1570

Adam C. McCall (CA SBN 302130)
amccall@zlk.com
LEVI & KORSINSKY LLP
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile:  (866) 367-6510

Lori G. Feldman (*pro hac vice*)
lfeldman@zlk.com
Andrea Clisura (*pro hac vice*)
aclisura@zlk.com
Courtney E. Maccarone (*pro hac vice*)
cmaccarone@zlk.com
LEVI & KORSINSKY LLP
30 Broad Street, 24th Floor
New York, NY 10004
Telephone:  (212) 363-7500
Facsimile:  (212) 363-7171

*Attorneys for Plaintiffs, individually and on behalf of all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KATE MCLELLAN, TERESA BLACK, DAVID URBAN, ROB DUNN, RACHEL SAITO, TODD RUBINSTEIN, RHONDA CALLAN, JAMES SCHORR, BRUCE MORGAN, and AMBER JONES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>FITBIT, INC.,<br><br>Defendant. | Case Nos. 16-cv-00036-JD; 16-cv-00777-JD<br><br>**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF BRIEF ON CONTRACT FORMATION DEFENSES AND OPPOSITION TO FITBIT, INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY OR DISMISS**<br><br>Date: March 16, 2017<br>Time: 10:00 a.m.<br>Ctrm: 11, 19th Floor<br><br>The Honorable James Donato |
| JUDITH LANDERS, LISA MARIE BURKE, and JOHN MOLENSTRA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>FITBIT, INC.,<br><br>Defendant. | |

1335278.5

PLTFS.' CONSOL. REPLY TO DEF.'S CONTRACT
FORMATION BRF. & OPP. TO MOT. TO COMPEL
CASE NOS. 16-CV-00036-JD, 16-CV-00777-JD

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT ...................................................................................................................................... 4

I.      The Terms of Service Lack the Clear and Unmistakable Evidence Necessary to Delegate the Threshold Questions of Arbitrability to an Arbitrator. .................................. 4

II.     The Arbitration Agreement is Not a Valid or Enforceable Contract Under California Law. ............................................................................................................................. 6

       A.      Fitbit Has Not Demonstrated that Plaintiffs Unambiguously Assented to the Purported Arbitration Agreement. ................................................................. 6

       B.      Plaintiffs' Purported "Agreement" to Arbitrate Lacked Adequate Consideration. ................................................................................................................. 9

       C.      Fitbit Procured the "Agreement" to Arbitrate by Fraud or Trick......................... 11

III.     Even if an Agreement Was Formed, the Terms of Service Do Not Apply to Plaintiffs' Claims. ................................................................................................................... 11

IV.     The Court Should Deny Fitbit's Motion to Stay or Dismiss Because the Claims of Opt-Out Plaintiff Rob Dunn Are Unaffected by any Potential Arbitration Involving the Non-Opt-Out Plaintiffs. ................................................................................................... 13

CONCLUSION ................................................................................................................................. 15

1335278.5

- i -

PLTFS.' CONSOL. REPLY TO DEF.'S CONTRACT
FORMATION BRF. & OPP. TO MOT. TO COMPEL
CASE NOS. 16-CV-00036-JD, 16-CV-00777-JD

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*,
885 F. Supp. 499 (S.D.N.Y. 1995) ............................................................................ 14

*Aviles v. Quik Pick Express*, LLC,
No. 15-cv-5214-MWF (AGR), 2015 WL 9810998 (C.D. Cal. Dec. 3, 2015) ............ 5

*Binder v. Aetna Life Ins. Co.*,
75 Cal. App. 4th 832, 89 Cal. Rptr. 2d 540 (Ct. App. 1999) .................................... 7

*Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*,
402 U.S. 313 (1971 .................................................................................................. 14

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016) ................................................................................. 13

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ................................................................................... 4

*Burch v. Premier Homes, LLC*,
199 Cal. App. 4th 730 (2011) .................................................................................... 7

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*,
816 F.3d 1208 (9th Cir. 2016) ................................................................................... 7

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002) ................................................................................... 9

*Concepcion AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .................................................................................................. 3

*Congdon v. Uber Techs., Inc.*,
No. 16-CV-02499-YGR, 2016 WL 7157854 (N.D. Cal. Dec. 8, 2016) ............... 14, 15

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ................................................................................................ 14

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) .................................................................................................. 4

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) ................................................................................................ 13

*Hill v. G.E. Power Sys., Inc.*,
282 F.3d 343 (5th Cir. 2002) ................................................................................... 15

*In re Orange, S.A.*,
818 F.3d 956 (9th Cir. 2016) ................................................................................... 13

*Kassbaum v. Steppenwolf Prods., Inc.*,
236 F.3d 487 (9th Cir. 2000) ................................................................................... 12

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ..................................................................................... 7

*Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*,
No. 15-cv-04718-WHO, 2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) ..................... 4

**TABLE OF AUTHORITIES**
(continued)

Page

*Malhotra v. Copa de Ora Realty, LLC*,
No. 14-56241, 2016 WL 7228845 (9th Cir. Dec. 14, 2016) ..................................... 13

*Meadows v. Dicky's Barbecue Restaurants Inc.*,
144 F. Supp. 3d 1069 (N.D. Cal. 2015) ......................................................... 5

*Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
No. 16-CV-01864-EMC, 2016 WL 5407898 (N.D. Cal. Sept. 28, 2016) ................ 12

*Mikhak v. Univ. of Phoenix*,
No. C16-00901 CRB, 2016 WL 3401763 (N.D. Cal. June 21, 2016) ....................... 5

*Mohamed v. Uber Technologies, Inc.*,
No. 15-16178, 2016 WL 7470557 (9th Cir. Dec. 21, 2016) ................................. 4

*Money Mailer, LLC v. Brewer*,
No. C15-1215RSL, 2016 WL 1393492 (W.D. Wash. Apr. 8, 2016) ........................ 5

*Mortensen v. Bresnan Commc'ns, LLC*,
722 F.3d 1151 (9th Cir. 2013) ................................................................... 9

*Murphy v. DIRECTV, Inc.*,
No. 2:07-CV-06465-JHN, 2011 WL 3319574, (C.D. Cal. Aug. 2, 2011),
*aff'd*, 724 F.3d 1218 (9th Cir. 2013) ......................................................... 10

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ................................................................... 8

*Norcia v. Samsung Telecommunications Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) ................................................................... 7

*Norcia v. Samsung Telecommunications Am., LLC*,
No. 14-CV-00582-JD, 2014 WL 4652332, (N.D. Cal. Sept. 18, 2014),
*aff'd*, 845 F.3d 1279 (9th Cir. 2017) ......................................................... 10

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) ............................................................... 4, 6

*Royal Air Properties, Inc. v. Smith*,
333 F.2d 568 (9th Cir. 1964) ................................................................... 6

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ................................................................... 13

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) ...................................................................... 8

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991) ................................................................... 7

*Tompkins v. 23andMe, Inc.*,
No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ................ 9

*Vargas v. Delivery Outsourcing, LLC*,
No. 15-cv-03408-JST, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ....................... 4

**STATUTES**

Cal. Civ. Code § 1550 ............................................................................. 10

Cal. Civ. Code § 1641 ............................................................................. 14

- ii -

## TABLE OF AUTHORITIES
### (continued)

<u>**Page**</u>

Cal. Civ. Code § 1648 ........................................................................................................ 14

Cal. Civ. Code § 1650 ........................................................................................................ 14

Cal. Civ. Code § 1654 .......................................................................................................... 4

## OTHER AUTHORITIES

Restatement (Second) of Contracts § 17 (1981) ................................................................. 8

1335278.5

- iii -

PLTFS.' CONSOL. REPLY TO DEF.'S CONTRACT
FORMATION BRF. & OPP. TO MOT. TO COMPEL
CASE NOS. 16-CV-00036-JD, 16-CV-00777-JD

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

2       Plaintiffs are consumers who purchased heart-rate-monitoring fitness trackers (the "Heart

3   Rate Monitors," "Devices," or "products"[1]) sold by Defendant Fitbit, Inc. ("Fitbit").[2]  They allege

4   in the Amended Consolidated Master Class Action Complaint ("Complaint") that Fitbit

5   deceptively marketed the Heart Rate Monitors, which cannot provide accurate heart rate data

6   when worn during the very exercise for which they were expressly marketed.  Dkt. 42.  A number

7   of thorough, independent tests confirm these allegations.  *See, e.g.*, Dkt. 42, ¶¶ 53-67; Dkt. 86-2.

8       Fitbit nevertheless argues that these consumers cannot pursue their claims in court and are

9   bound to individual arbitration.  In prior briefing, Plaintiffs demonstrated that the purported

10   arbitration agreement does not clearly and unmistakably delegate the threshold question of

11   arbitrability to an arbitrator.  Dkt. 60 ("Plaintiffs' *Brennan* Brief").  In subsequent briefing,

12   Plaintiffs explained why that arbitration agreement was never properly formed in the first place.

13   Dkt. 86 ("Plaintiffs' Contract Formation Brief").  On the same day that Fitbit responded to

14   Plaintiffs' Contract Formation Brief, it moved to compel arbitration based on the *Brennan* and

15   Contract Formation briefing, and also moved to stay[3] the claims of the opt-out Plaintiff Rob Dunn

16   ("Motion to Compel").  Plaintiffs sought leave to consolidate their Contract Formation reply brief

17   with their opposition to the Motion to Compel, which the Court granted.  Dkt. 92.

18       The facts relevant to this dispute are detailed in Plaintiffs' *Brennan* Brief and Contract

19   Formation Brief, which Plaintiffs incorporate fully herein, and summarize here and below.  To

20   recap, when Plaintiffs purchased their Devices, they were not told or in any way informed by the

21   product packaging that in order to render the Devices operational they would first need to pair

22   them with an online account.  Only after purchasing the products, and later unwrapping and

23

---

24   [1] There are three models of Heart Rate Monitors implicated here:  the Charge HR, the Surge, and the Blaze.

25   [2] Of the thirteen Plaintiffs, twelve purchased their Devices through third-party retailers ("indirect purchasers Plaintiffs") and one, Amber Jones, purchased directly from Fitbit ("direct purchaser

26   Plaintiff").  Moreover, twelve of the Plaintiffs did not opt out of the arbitration agreement in Fitbit's Terms of Service ("non-opt-out Plaintiffs"), and one, Rob Dunn, did opt out of the

27   arbitration agreement ("opt-out Plaintiff").

[3] Although Fitbit's motion is styled as a Motion to Compel Arbitration and to Stay or Dismiss,

28   Fitbit does not seek dismissal in the body of its motion or memorandum.

- 1 -

1   attempting to use them, did Plaintiffs first learn that in order to obtain the products they already

2   bought they would first need to create an account and, critically, agree to Fitbit's unilaterally-

3   imposed post-purchase Terms of Service (sometimes referred to as the "Terms").

4        In the first section of those Terms, Fitbit explained that the Terms cover consumers' "use"

5   of the Devices.  In that same section, Fitbit advised consumers that they had already assented to—

6   and were bound by—the Terms simply by virtue of visiting Fitbit's website or using its mobile

7   application.  Near the end of the Terms, Fitbit included a class action waiver and arbitration

8   clause.  That clause invokes the AAA rules of arbitration.  Later, however, the Terms contemplate

9   that a "court of competent jurisdiction" may find unenforceable any of the Terms' provisions.

10       It is undisputed—all discovery to date confirms—that nothing on the product packaging

11   or point of sale materials informed purchasers that they would need to set up an online account in

12   order to render basic features of their devices operational, or to make them function in any

13   capacity at all, or that signing up for an account would require them to agree to additional, post-

14   purchase terms.  Selbin Decl. to Plaintiffs' Contract Formation Brief ("Selbin Decl."), Ex. 2-4.[4]

15   Furthermore, each non-opt-out Plaintiff has declared under penalty of perjury that, among other

16   things: (1) nothing on the product packaging informed them that they would need to set up an

17   online account in order to render basic features of their devices operational, or to make them

18   function in any capacity at all, or that signing up for an account would require them to agree to

19   additional, post-purchase terms; (2) they understand the first section of the Terms of Service to

20   mean that they were bound by the Terms by virtue of having visited the Fitbit website or using

21   the mobile application, and that they had no meaningful option to decline the Terms, and (3) they

22   did not review the arbitration clause prior to purchase or in any way intend to sacrifice their rights

23   to file a lawsuit or bring a class action.  *See* Plaintiffs' Declarations, Exhibits A–L.

24       Based on these facts, Fitbit has not demonstrated that the parties clearly and unmistakably

25

26   [4] Although the product packaging directs consumers to the Fitbit website to review a list of Fitbit
    devices (www.fitbit.com/devices), and on the Fitbit website, users can theoretically find their

27   ways to the Terms of Service, *see* Def.'s Contract Formation Brief, Dkt. 87 at 10, Fitbit does not
    direct consumers to the website for the purpose of reviewing the Terms of Service nor does it

28   otherwise highlight how to find them.

- 2 -

1    intended for an arbitrator and not a court to determine the "gateway" issues of arbitrability.  Nor

2    has Fitbit met its burden of establishing that the underlying arbitration agreement—which

3    includes the delegation provision—is a valid contract, as it lacks mutual assent and consideration,

4    and was procured by fraud and trickery.

5         These facts take Fitbit's arbitration provision well outside the ambit of the Supreme

6    Court's holding in *Concepcion AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011).  It is

7    one thing to accept the legal fiction that consumers knowingly and expressly waive their

8    constitutional right to a jury trial by purchasing goods or services subject to contracts with buried

9    arbitration clauses, all because of a 1925 statute that sought to protect arbitration between

10   sophisticated commercial parties from a now long-extinct judicial hostility to arbitration.  It is

11   quite another to add yet another layer of legal fiction by pretending those consumers agreed to

12   contractual terms that do not meet even the most basic contractual principles of offer and assent,

13   principles that apply with no less force simply because they relate to arbitration.  For all the

14   deference to arbitration the Federal Arbitration Act ("FAA") requires, it does not displace the

15   basic rules of contract formation.  Even where an arbitration clause is at issue, courts must still

16   determine whether a contract exists in the first place.  Indeed, in providing the fifth vote for the

17   majority in the Supreme Court's decision in *Concepcion*, Justice Thomas reiterated the continued

18   importance and vitality of state common law defenses to contract formation, writing: "the FAA

19   requires that an agreement to arbitrate be enforced unless a party successfully challenges the

20   formation of the arbitration agreement, such as by proving fraud or duress," that is, shows that

21   there are "defects in the making of an agreement."  563 U.S. at 353 (Thomas, J., concurring).

22        Simply put, on this record Fitbit has not met its burden of establishing the existence of a

23   properly formed contract to arbitrate.  If the Court finds otherwise, that still does not end the case,

24   for two reasons.  First, by their own terms, the Terms of Service do not cover Plaintiffs' claims,

25   which means those claims cannot be compelled to arbitration even if an otherwise valid

26   agreement exists.  Notably, this is not an argument advanced or considered in the *Brickman* case.

27   Second, even if the Court sends some claims to arbitration, the motion to stay the claims of the

28   opt-out Plaintiff should be denied.  Judicial economy is not served by delaying Mr. Dunn's

- 3 -

claims, as a court in this District recently concluded under nearly identical circumstances.

## **ARGUMENT**

### I.  **The Terms of Service Lack the Clear and Unmistakable Evidence Necessary to Delegate the Threshold Questions of Arbitrability to an Arbitrator.**

There is a long-standing presumption that courts decide threshold issues of arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).  To overcome this presumption, an agreement must include "clear and unmistakable" evidence that the parties intended to delegate the gateway issue.  *See First Options*, 514 U.S. at 944.  In some circumstances, that burden is met by incorporating the AAA rules of arbitration which, in turn, provide that an arbitrator will decide the threshold arbitrability issues.  *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015).

Those circumstances are not met here.  Far from clearly delegating the threshold issues to an arbitrator, Fitbit's Terms of Service contemplate that a "*court* of competent jurisdiction" will determine the validity and enforceability of "*any* provision" in the agreement, including the arbitration provision.[5]  Dkt. 86-10 at 5.  At the very least, this stands in tension with the so-called delegation provision incorporated indirectly by invoking the AAA rules.  This is especially true since, to the extent there is a reasonable disagreement, potentially ambiguous terms are construed against the drafter, here Fitbit.  *See* Cal. Civ. Code § 1654.  As a number of judges in this District have already concluded, therefore, language like this renders a delegation clause ambiguous and, therefore, invalid.  *See, e.g.*, Plaintiffs' *Brennan* Brief, Dkt. 60 at 4 (quoting *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, No. 15-cv-04718-WHO, 2016 WL 1365946, at *7–8 (N.D. Cal. Apr. 6, 2016) (Orrick, J.); *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 WL 946112, *6 (N.D. Cal. Mar. 14, 2016) (Tigar, J.)).

These cases are no less persuasive after the Ninth Circuit reversed a pre-*Brennan* decision in *Mohamed v. Uber Technologies, Inc.*, No. 15-16178, 2016 WL 7470557, at *4 (9th Cir. Dec. 21, 2016).  In *Mohamed*, the court found that a clear and express delegation provision was

---

[5] The fact that this clause appears under the "General Terms" section as opposed to the "Dispute Resolution" section is immaterial.  By its own terms, the clause speaks to "***any provision*** of these Terms" of Service, regardless of which section that provision falls under.

not rendered ambiguous by a venue clause providing that "any disputes" arising from the

agreement would be heard in San Francisco.  As the Ninth Circuit explained, this language was

easy to reconcile with the express delegation provision given that ancillary court actions to

enforce arbitration agreements or to obtain a judgment are common.  The conflicting provision in

Fitbit's Terms of Service, in contrast, cannot be explained away—if a "court" can find "*any*

provision of the[] Terms invalid or unenforceable*,*" including the arbitration provision, it is

difficult to understand how an arbitrator would unmistakably have the exclusive authority to

determine the validity and enforceability of that very same arbitration provision.  Moreover, any

resulting ambiguity is compounded by the fact that Fitbit's Terms of Service, unlike the

agreement at issue in *Mohamed*, do not contain an express delegation provision.  There simply is

no way to reconcile the provisions here as there was in *Mohamed*.

While perhaps not itself dispositive, the fact that Plaintiffs are not sophisticated

commercial parties casts further doubt on the clarity of an incorporated delegation provision that

arguably conflicts with an express provision.  For, when assessing whether a provision is clear

and unmistakable, one must ask:  clear and unmistakable to whom?  As Judge Tigar explained,

"whether the language of a delegation clause is 'clear and unmistakable' should be viewed from

the perspective of the particular parties to the specific contract at issue.  What might be clear to

sophisticated counterparties is not necessarily clear to less sophisticated employees or

consumers."  *Meadows v. Dicky's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078-79

(N.D. Cal. 2015).  For this precise reason, many courts in this District and elsewhere within this

Circuit have declined to extend *Brennan* to bind unsophisticated consumers, like Plaintiffs here.

*See, e.g.*, *Mikhak v. Univ. of Phoenix*, No. C16-00901 CRB, 2016 WL 3401763, at *5 (N.D. Cal.

June 21, 2016) (Breyer, J.); *Aviles v. Quik Pick Express*, LLC, No. 15-cv-5214-MWF (AGR),

2015 WL 9810998, at *5–6 (C.D. Cal. Dec. 3, 2015); *Money Mailer, LLC v. Brewer*, No. C15-

1215RSL, 2016 WL 1393492, at *2 (W.D. Wash. Apr. 8, 2016).

Even if the delegation argument has merit, Fitbit waived it.  Although Fitbit now claims

the delegation issue is "not even a close question," Motion to Compel, Dkt. 88 at 5, it failed to

raise the argument for many months and through many court filings, and adopted the argument

1    only after the Court raised the issue *sua sponte*.  Indeed, as detailed further in Plaintiffs' *Brennan*

2    Brief, Fitbit *repeatedly* stated to Plaintiffs and the Court that "the Court . . . [would] decid[e]

3    whether Plaintiffs are bound by their agreement to arbitrate."  Dkt. 47 at 7.  Notably, Fitbit argued

4    that Plaintiffs would not need any opportunity for discovery after Fitbit moved to compel

5    arbitration, because "Plaintiffs have already seen the arguments Fitbit raised in its recent motion

6    to compel arbitration in the related *Brickman* matter."  Dkt. 44 at 4 n.4.  Of course, Fitbit's

7    motion to compel in *Brickman*, which was based on the same Terms of Service at issue here, does

8    not mention *Brennan* or in any way raise the delegation issue.  Not once.

9        Fitbit's rebuttal consists of an extremely strained reading of its statement in a Joint Letter

10   to the Court.  There, Fitbit stated that "[p]ermitting discovery on these additional topics, in effect,

11   permits Plaintiffs to prematurely delve into the merits of their claims, and deprives Fitbit of its

12   right under the FAA to have an arbitrator decide these questions."  Dkt. 47 at 4.  Contrary to

13   Fitbit's *post-hoc* interpretation (*see* Dkt. 62 at 8-9), the "questions" that it claimed were for the

14   arbitrator were the scope of discovery and the merits of the case—*not* the threshold issue of

15   arbitrability, which was never raised.  Fitbit further claims that it would have invoked *Brennan* in

16   that same filing but for the Court's three-page limit on letter briefs.  But in that filing, the parties

17   explained that they were exceeding the limitation given that it was a joint submission, and

18   regardless, Fitbit's portion of the brief was well over three pages.  Page limit considerations could

19   not plausibly have prevented them from citing what Fitbit now claims is the single controlling

20   case relevant to this issue.  These actions demonstrate that even Fitbit, the drafter of the Terms of

21   Service, did not clearly and unmistakably intend for an arbitrator to decide arbitrability, and also

22   constitute waiver of the defense.  *See Oracle*, 724 F.3d at 1072 (presumption is that courts

23   determine arbitrability); *Royal Air Properties, Inc. v. Smith*, 333 F.2d 568, 571 (9th Cir. 1964)

24   ("[N]o detriment to a third party is required for waiver.").

25   **II.   The Arbitration Agreement is Not a Valid or Enforceable Contract Under California**
     **Law.**

26

27       **A.    Fitbit Has Not Demonstrated that Plaintiffs Unambiguously Assented to the**
          **Purported Arbitration Agreement.**

28   "[M]anifestation of mutual assent is necessary" to form a binding contract.  *Binder v.*

1   *Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850, 89 Cal. Rptr. 2d 540 (Ct. App. 1999); *see also*

2   *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1212 (9th Cir. 2016) ("[T]he

3   formation of a contract requires a bargain in which there is a manifestation of mutual assent to the

4   exchange and a consideration.") (quoting Restatement (Second) of Contracts § 17 (1981)).

5   Arbitration being a creature of contract, "mutual assent is [also] required for there to be an

6   enforceable agreement to arbitrate disputes." *Burch v. Premier Homes, LLC*, 199 Cal. App. 4th

7   730, 745–46 (2011).  The party seeking to compel arbitration bears the burden of showing an

8   unambiguous agreement to arbitrate.  *Norcia v. Samsung Telecommunications Am., LLC*, 845

9   F.3d 1279, 1283 (9th Cir. 2017); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565, 569 (9th

10   Cir. 2014).  In deciding contract formation, the party opposing arbitration is given "the benefit of

11   all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F.*

12   *Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).

13         It is not in dispute that each Plaintiff clicked a box next to a hyperlinked terms of service

14   (or took equivalent action on a mobile platform) in order to complete the post-purchase account

15   creation process.  And Plaintiffs do not contend that this kind of "clickwrap" process can *never*

16   create valid agreements.  Nor do Plaintiffs argue a company must necessarily "call out" an

17   arbitration clause.  These are all straw men.  Def.'s Contract Brf., Dkt. 87 at 4-7.  Instead, what

18   Plaintiffs argue, and what the case law supports, is that in order to create a binding agreement,

19   Fitbit was required to make the material terms clear, intelligible, and apparent, and to create a

20   process through which consumers could manifest unambiguous assent.  For a number of reasons

21   taken together, it did not do so.

22         Fitbit's process for "agreeing" to the arbitration is truly extraordinary, in several ways.

23   Indeed, Plaintiffs have located no factual circumstances on all fours.

24         First, Fitbit tricked Plaintiffs into believing that they had no ability to reject the Terms.

25   The opening paragraph of the Terms confusingly (and incorrectly) informs consumers that they

26   *already* agreed to the Terms simply "by visiting www.fitbit.com (https://www.fitbit.com) or using

27   any part of the Fitbit Service."  *See* Dkt. 86-10.  At this point in the transaction, consumers

28   necessarily had already visited the Fitbit website or used part of the Fitbit Service (which includes

the Fitbit app)—as this is the only way to access the Terms in the first place.  Reasonable

consumers, including all of the Plaintiffs here, understand this to mean that they were already

bound, and thus had no meaningful option to decline Fitbit's Terms of Service.  *See* Plaintiffs'

Declarations, Exhibits A-L.  If there is no meaningful option to decline the Terms, there can be no

meaningful and unambiguous option to accept them.

Fitbit does not offer any serious rebuttal to this point, because there is none.  Fitbit argues

instead that Fitbit is not attempting to enforce the browsewrap provision here.  Of course not—

that provision is not even arguably enforceable.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171,

1178–79 (9th Cir. 2014); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 34-35 (2d Cir. 2002);

November 10, 2016, Hr'g. Tr. 14:15–19.  But that is not the point.  The point is that by *telling*

consumers at the outset that they are already bound no matter what they do, Fitbit renders

meaningless any subsequent purported manifestation of assent.  Put more generally, you cannot

tell someone that it does not matter whether they agree to your terms or not because they are

already bound regardless, and then claim to divine any meaning from their subsequent

"agreement" to be bound.  Fitbit has cited no case enforcing an arbitration clause under anything

like these facts.

Second, this same trickery acts to conceal the arbitration clause by dissuading consumers

from reading it: what is the point of closely examining the Terms if you are bound by them

anyway?  In this context, Fitbit's failure to call any attention to the arbitration provision, buried in

a dense document consumers have no incentive to read, is significant.  Indeed, the "Dispute

Resolution" section is the 28th section of the Terms (out of 31 sections, total), and the arbitration

clause does not appear until the 39th paragraph of the document.  Moreover, unlike the preceding

section on "Limitation of Liability," the arbitration provision is not capitalized or in any way set

apart from the remainder of the text.  *See* Selbin Decl. Ex. 9, Dkt. 86-10.  Unsurprisingly, all the

non-opt-out Plaintiffs state that they had no idea they had purportedly agreed to an arbitration

clause until they decided to bring a lawsuit.  Plaintiffs' Declarations, Exhibit A-L.

Third, Fitbit presented the Terms of Service only *after* the sales transaction, and made it a

necessary and undisclosed (and not reasonably foreseeable) step to acquire the functioning

- 8 -

devices consumers already paid for.  In other words, not until they completed their sales transactions, unwrapped their Devices, and tried to use them, did Plaintiffs learn that the Devices either do not work at all (Surge and Blaze) or have very limited functionality (Charge HR) until the consumer agrees to *additional* Terms of Service, creates an online account, and pairs the Device with that account.  *See* Plaintiffs' Declarations, Exhibits A-L; Plaintiffs' Contract Formation Brief at 4 (detailing the Devices' limited, or non-existent, pre-registration functionalities).  This post-purchase ambush deprived Plaintiffs of *any* meaningful opportunity to withhold their assent.

Taken together, these facts demonstrate that Plaintiffs did not and could not manifest unambiguous assent to Fitbit's arbitration agreement.  Companies that actually want to obtain meaningful assent to arbitration clauses know how to do so—there are many examples of online notice and assent mechanisms that courts accept as valid as a matter of law.  There is no reason Fitbit could not have employed one of these mechanisms.  But it did not do so.

## B.   Plaintiffs' Purported "Agreement" to Arbitrate Lacked Adequate Consideration.

Consideration is a fundamental element of contract formation; without it, no contract exists.  Cal. Civ. Code § 1550.  There is no valid consideration here.  Fitbit did not perform its end of the purchase contracts with Plaintiffs.  Plaintiffs had an absolute right to use the Devices they purchased as they were represented, and Fitbit was under a contractual obligation to provide those working Devices.  Fitbit's attempt to extract additional, post-purchase concessions from Plaintiffs for what they already purchased was fundamentally "unfair," *see Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, *7 (N.D. Cal. June 25, 2014), and Plaintiffs received no consideration for those forced concessions, including the agreement to arbitrate.

Fitbit's argument to the contrary is a mere regurgitation of its position in *Brickman*, and rests largely on two cases: *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002) and *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151 (9th Cir. 2013).  That reliance is misplaced, as Plaintiffs explained thoroughly in their Contract Formation Brief.  Dkt. 86 at 12-13. Fitbit cites *Circuit City* for the sweeping proposition that a reciprocal promise to submit to

- 9 -

1   arbitration always constitutes sufficient consideration in an arbitration agreement.  Dkt. 87 at 9-

2   10.  But *Circuit City* stands merely for the point that when two parties enter freely into a contract

3   with an arbitration agreement, one party's agreement to be bound by arbitration is sufficient

4   consideration for another party's agreement to arbitrate.  *Circuit City* does not address the facts

5   here, where one party to the contract withholds something owed to another party under that

6   contract (here, the most important thing contracted for, a functioning product) until that other

7   party capitulates to additional demands (here, an agreement to give up a constitutional right to a

8   jury trial).  The defendant in *Circuit City* had the right to impose conditions on its employees and

9   to establish terms for their continued employment.  Fitbit did not have the right to extract

10  additional concessions from Plaintiffs after they already bought their Devices—and in that

11  context, Fitbit provided no valid consideration for those additional concessions.

12          Fitbit invokes *Mortenson* to support its position that post-purchase arbitration agreements

13  are enforceable.  But, again, in *Mortenson*, the Court did not consider an argument that the

14  consideration for the arbitration agreement was illusory—likely because, unlike here, the

15  arbitration clause was introduced and agreed to *before* the underlying transaction was complete

16  and, therefore, was a legitimate part of the service agreement.  722 F. 3d at 1161.  As this Court

17  already observed, in *Mortensen*, "the issue was not contract formation, but rather the preemptive

18  effect of the FAA on a public policy defense available under Montana state law."  *Norcia v.*

19  *Samsung Telecommunications Am., LLC*, No. 14-CV-00582-JD, 2014 WL 4652332, at *8 (N.D.

20  Cal. Sept. 18, 2014) (Donato, J.), *aff'd*, 845 F.3d 1279 (9th Cir. 2017).  Likewise, in *Murphy v.*

21  *DIRECTV, Inc.*, No. 2:07-CV-06465-JHN, 2011 WL 3319574, at *2 (C.D. Cal. Aug. 2, 2011),

22  *aff'd*, 724 F.3d 1218 (9th Cir. 2013), the court did not consider a consideration-based challenge,

23  and plaintiffs received notice of the arbitration provision at multiple steps in their transaction with

24  the defendant, including at the point of sale.

25          Finally, Fitbit argues that it offered additional consideration in the form of the online

26  "dashboard."  This logic ignores the fact that Plaintiffs needed to register their Devices to enable

27  them do the basic functions advertised in the first place, and for the Blaze and Surge, to do

28  anything *at all*.  Consider the following hypothetical: a shopper selects $50 worth of groceries at a

1    grocery store.  The cashier rings him up, and the customer hands the cashier $50.  Only then, the

2    cashier refuses to hand over the groceries and demands an additional $10.  The customer,

3    frustrated, pays the extra $10, and the cashier hands him the groceries and throws in a "free"

4    mint.  The customer has not received consideration for the extra $10 dollars paid to get the

5    groceries he already bought just because the grocer tossed in a mint.  Likewise, Fitbit cannot

6    claim that the additional benefit of the "dashboard" was consideration for the post-purchase

7    concession it required Plaintiffs to give in order to receive the devices they already purchased.

8              C.     **Fitbit Procured the "Agreement" to Arbitrate by Fraud or Trick.**

9              Plaintiffs have already outlined their fraud arguments in detail.  *See* Plaintiffs' Contract

10   Formation Brief, Dkt. 86 at 12-13.  Fitbit responds by mischaracterizing the argument as a

11   "merits" defense that challenges the "entire agreement," or the "underlying sale of the devices."

12   Def.'s Contract Formation Brief, Dkt. 87 at 11.  Not so.  Plaintiffs' brief makes clear that the

13   fraud alleged is the fraudulent statements intended to "induce an agreement to arbitrate their

14   claims."   Plaintiffs' Contract Formation Brief, Dkt. 86 at 12.  These are not "merits" arguments

15   that must be passed along to an arbitrator, but legitimate defenses to Fitbit's attempt to enforce an

16   arbitration agreement it secured through trickery and deceit.

17             Plaintiffs also incorporate here their arguments in section II.A above regarding the timing

18   and context of Fitbit's introduction of the Terms of Service during purchase, the lack of any pre-

19   purchase disclosure of the requirement to agree to arbitrate to even use the Devices, and the

20   document's confusing and misleading structure and introductory language.  Whether

21   characterized as "trickery" or "fraud," the facts and results are the same: Fitbit induced Plaintiffs

22   to agree to arbitrate through false pretenses.

23   **III.    Even if an Agreement Was Formed, the Terms of Service Do Not Apply to Plaintiffs'**
     **Claims.**

24
     Plaintiffs' claims are not covered by the Terms of Service or, necessarily, by the

25   arbitration agreement contained within it.  This is not an argument this Court already considered

26   in *Brickman*, because it was not advanced there.

27             The opening paragraph of the Terms explains that they cover only the "*use*" of the Fitbit

28

1    products and services.  In contrast, Fitbit designed separate "Terms of Sale" (which also includes

2    an arbitration agreement) for those who purchased directly from Fitbit.  Those Terms of Sale do

3    not even arguably bind the indirect purchaser Plaintiffs, but they do highlight the fact that the

4    Terms of *Service* at issue here do not govern the Plaintiffs' sales transactions or any defective or

5    misrepresented features inherent in the products regardless of where, how, or when they are used.

6         As detailed in Plaintiffs' Contract Formation Brief, Plaintiffs' claims do not arise from

7    their use of the products or services; they arise from Fitbit's misrepresentations and from the sale

8    of defective devices that could not do what Fitbit said they could.  Each of the elements of

9    Plaintiffs' causes of action—wrongdoing, causation, and harm—was satisfied, and Plaintiffs'

10   claims accrued, at the moment they purchased their Devices, and were not dependent on or related to

11   Plaintiffs' subsequent *use* of those Devices.  Put differently, these are *point of sale* claims. *See,*

12   *e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593–94 (9th Cir. 2012).

13        But for a one-line throwaway on the last page of its brief, Fitbit does not seriously argue—

14   here or in *Brickman*—that Plaintiffs' claims arise from their "use" of the Devices, and effectively

15   concedes that they fall outside the scope set forth in the Terms' opening section.  *See* Def.'s

16   Contract Formation Brief at 15; *Brickman* Motion to Compel, Dkt. 39 at 8-9.  Fitbit instead

17   attempts to work around this clear contractual limitation by arguing that the part (the arbitration

18   clause) is broader than the whole (the Terms of Service).  But subordinate provisions of a contract

19   extend "only [to] those things which it appears the parties intended to contract." *Kassbaum v.*

20   *Steppenwolf Prods., Inc.*, 236 F.3d 487, 491–92 (9th Cir. 2000); *see also Mike Rose's Auto Body,*

21   *Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 16-CV-01864-EMC, 2016

22   WL 5407898, at *5 (N.D. Cal. Sept. 28, 2016); Cal. Civ. Code §§ 1641, 1648, 1650.  Here, the

23   parties intended the scope of the entire Terms of Service—including the arbitration provision—to

24   cover no more than Plaintiffs' *use* of the products.  To hold that the parties intended a subordinate

25   provision, buried at the end of the contract, to expand the scope outlined at the beginning would

26   be particularly perverse where, as here, Fitbit told Plaintiffs from the start that they were *already*

27   bound by the Terms and thus eliminated any incentive to actually read the Terms or the

28   arbitration provision.  Both of Fitbit's ploys are designed to deter consumers from reading the

Terms of Service, the very antithesis of contract formation.  Nothing in *Concepcion* or its progeny supports that sort of gamesmanship.

Even if the arbitration clause's "relating to" language could properly expand the scope of the agreement as a whole, it still would not cover Plaintiffs' claims.  Fitbit relies on *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999), for the proposition that Plaintiffs' factual allegations "need only 'touch matters' covered by the contract" to make them arbitrable.  Def.'s Contract Formation Brief, Dkt. 87 at 14.  But this standard does not empower a party to shoehorn any and all claims into arbitration.  Indeed, in *In re Orange, S.A.*, the Ninth Circuit denied a motion to compel arbitration and noted that even in *Simula* the court had carefully reviewed each claim to determine if it involved any facts that "required [it] to interpret the underlying contract." *In re Orange, S.A.*, 818 F.3d 956, 962–63 (9th Cir. 2016); *see also Malhotra v. Copa de Ora Realty, LLC*, No. 14-56241, 2016 WL 7228845, at *1 (9th Cir. Dec. 14, 2016) (denial of motion to compel arbitration appropriate where "[t]he claims asserted do not require an interpretation of the contract's terms, do not arise from a failure to perform under the contract, and do not relate to conduct that could not have occurred but for the contract").

Here, Plaintiffs' claims are wholly independent of the Terms of Service.  They do not have their origin or roots in the Terms, they do not require an interpretation of the Terms, they do not arise from a failure to perform under the Terms, and they do not relate to conduct that could not have occurred but for the Terms.  Nor did the Terms give rise to the relationship between the parties.  Even where an arbitration provision is broadly worded, it is confined by the principle that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original); *see also Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1019 (9th Cir. 2016).  Here, if there was an agreement to arbitrate any dispute, that agreement extended only to those disputes arising out of Plaintiffs' use of the products.

**IV.  The Court Should Deny Fitbit's Motion to Stay or Dismiss Because the Claims of Opt-Out Plaintiff Rob Dunn Are Unaffected by any Potential Arbitration Involving the Non-Opt-Out Plaintiffs.**

It is beyond dispute that "Plaintiff Rob Dunn timely opted out of arbitration" and thus is

1   not bound by the agreement to arbitrate.  Motion to Compel, Dkt. 88 at 5.  Fitbit nevertheless asks

2   the Court to exercise its discretion to stay his claims principally because doing so, Fitbit argues,

3   would "avoid[] inconsistent outcomes."  Fitbit is wrong, and its request is unsupported by the

4   facts or law.  Of course, the Court need not reach this point because none of the Plaintiffs' claims

5   are subject to arbitration.  Even if the Court directs the non-opt-out Plaintiffs to arbitration,

6   however, Mr. Dunn's claims should proceed without delay.

7       "A motion to stay . . . must be granted as to all matters within the scope of the arbitration

8   agreement.  It is, however, within a district court's discretion whether to stay, for 'considerations

9   of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration."

10  *Congdon v. Uber Techs., Inc.*, No. 16-CV-02499-YGR, 2016 WL 7157854, at *5 (N.D. Cal. Dec.

11  8, 2016) (Gonzalez-Rodgers, J.).  Compelling reasons may exist to stay the non-arbitrable claims

12  if (1) "there are issues common to the arbitration and the court proceeding," and (2) "those issues

13  will be finally determined by the arbitration."  *Am. Shipping Line, Inc. v. Massan Shipping Indus.,*

14  *Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995).

15      No such compelling reason exists here.  It is true that Mr. Dunn's claims against Fitbit

16  raise similar issues as the non-opt-out Plaintiffs' claims against Fitbit.  Fitbit cannot argue,

17  however, that the arbitrator's decisions regarding the non-opt-out Plaintiffs' individual claims

18  would have any effect, binding or otherwise, on this Court's independent determination on the

19  merits of Mr. Dunn's claims.  Nor, consequently, can Fitbit explain how a stay would minimize

20  "inconsistent outcomes."  It is not entirely clear that collateral estoppel applies *at all* in the

21  arbitration context.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 222–23 (1985) ("The full-

22  faith-and-credit statute requires that federal courts give the same preclusive effect to a State's

23  judicial proceedings as would the courts of the State rendering the judgment, and since arbitration

24  is not a judicial proceeding, we held that the statute does not apply to arbitration awards.").  It is

25  entirely clear, however, that Fitbit would be prevented from using the results of one plaintiff's

26  proceeding in the proceeding of another plaintiff.  *See Blonder-Tongue Labs., Inc. v. Univ. of*

27  *Illinois Found.*, 402 U.S. 313, 329 (1971) (Litigants who did not appear in a prior action "may not

28  be collaterally estopped" because "[t]hey have never had a chance to present their evidence and

1    arguments on the claim.  Due process prohibits estopping them despite one or more existing

2    adjudications of the identical issue which stand squarely against their position.").  In other words,

3    no matter what the arbitrator decides on any single issue, that decision will not bind this Court or

4    deprive this Court of its obligation to independently review Mr. Dunn's claims—and *vice versa*.

5         Fitbit cites a number of cases in which courts exercised their discretion to stay non-

6    arbitrable claims that were intertwined with arbitrable claims or issues that would be binding in

7    the court proceeding, or non-arbitrable claims brought by parties who also had arbitrable claims.

8    *See* Motion to Compel, Dkt. 88 at 6-7.  For the reasons explained above, those cases are

9    distinguishable.  There is at least one recent case from this District, however, that is

10   indistinguishable—Fitbit simply failed to cite it.

11        In *Congdon v. Uber Techs., Inc.*, Judge Gonzalez-Rodgers addressed the very question at

12   issue here (if the Court compels arbitration): whether to stay the claims of opt-out plaintiffs

13   pending arbitration of non-opt-out plaintiffs' claims.  2016 WL 7157854, at *5.  The court was

14   unpersuaded by Uber's arguments and cited cases—including *Hill v. G.E. Power Sys., Inc.*, 282

15   F.3d 343, 347-48 (5th Cir. 2002), which Fitbit relies on heavily here—and instead agreed with the

16   plaintiffs that "although the claims of the Non–Opt–Out Plaintiffs and the Opt–Out Plaintiffs

17   involve the same operative facts—i.e. the interpretation of the agreements and whether Uber

18   breached such agreements—the resolution of such claims in the arbitral proceedings have no

19   bearing on the resolution of such claims in court."  *Congdon*, 2016 WL 7157854, at *5.  The

20   court observed that the defendant could not "have its cake and eat it, too" by "on the one hand,

21   argu[ing] that the parties intended individualized adjudication of each plaintiff's claims, and in

22   the same breath, argu[ing] that certain individual's actions should be impacted by parallel

23   litigation."  *Id.* at *6.  The court therefore concluded that "proceeding with the litigation as to the

24   Opt–Out Plaintiffs in this case would not result in a waste of judicial resources" and denied the

25   motion to stay.  *Id.*  For all these reasons, this Court should do the same.

26                                   **CONCLUSION**

27        Plaintiffs respectfully request that the Court deny Fitbit's Motion to Compel Arbitration

28   and to Stay or Dismiss.

1

2

3     Dated:  February 13, 2017

4

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Jonathan D. Selbin*
          Jonathan D. Selbin

5     Jonathan D. Selbin (CA SBN 170222)
      jselbin@lchb.com
6     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
      250 Hudson Street, 8th Floor
7     New York, NY  10013
      Telephone:  (212) 355-9500
8     Facsimile:   (212) 355-9592

9     Elizabeth J. Cabraser (CA SBN 083151)
      ecabraser@lchb.com
10    Kelly M. Dermody (CA SBN 171716)
      kdermody@lchb.com
11    Kevin R. Budner (CA SBN 287271)
      kbudner@lchb.com
12    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
      275 Battery Street, 29th Floor
13    San Francisco, CA  94111-3339
      Telephone:  (415) 956-1000
14    Facsimile:   (415) 956-1008

15    Robert Klonoff (*pro hac vice*)
      klonoff@usa.net
16    ROBERT H. KLONOFF, LLC
      2425 SW 76th Ave.
17    Portland, OR 97225
      Telephone:  (503) 291-1570

18    Adam C. McCall (CA SBN 302130)
      amccall@zlk.com
19    LEVI & KORSINSKY LLP
      445 South Figueroa Street, 31st Floor
20    Los Angeles, CA  90071
      Telephone:  (213) 985-7290
21    Facsimile:   (866) 367-6510

22    Lori G. Feldman (*pro hac vice*)
      lfeldman@zlk.com
23    Andrea Clisura (*pro hac vice*)
      aclisura@zlk.com
24    Courtney E. Maccarone (*pro hac vice*)
      cmaccarone@zlk.com
25    LEVI & KORSINSKY LLP
      30 Broad Street, 24th Floor
26    New York, NY 10004
      Telephone:  (212) 363-7500
27    Facsimile:   (212) 363-7171

      *Attorneys for Plaintiffs, individually and behalf of all others*
28    *similarly situated*

1335278.5

- 16 -

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that, on February 13, 2017, service of this document was accomplished

3  pursuant to the Court's electronic filing procedures by filing this document through the ECF

4  system.

5                                */s/ Jonathan D. Selbin*
                                 Jonathan D. Selbin
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28