UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATE MCLELLAN, et al., | Case No. 3:16-cv-00036-JD |
| Plaintiffs, | |
| v. | **ORDER RE ARBITRATION AND STAY OR DISMISSAL** |
| FITBIT, INC., | Re: Dkt. No. 88 |
| Defendant. | |

In this putative class action, 13 named plaintiffs contend that defendant Fitbit, Inc. ("Fitbit") misled consumers about the accuracy and reliability of the heart rate monitoring functionality in Fitbit's wearable devices. Fitbit has moved to compel arbitration for 12 of the named plaintiffs who signed a terms of service agreement ("ToS") containing an arbitration provision. Fitbit also moves to stay or dismiss the claims of the remaining plaintiff, Robb Dunn, who opted out of the arbitration provision.

## BACKGROUND

After plaintiffs filed an amended consolidated complaint, the parties submitted a joint statement indicating that Fitbit intended to move to compel arbitration and proposing a briefing schedule. Dkt. No. 44. The question arose of whether the Court or an arbitrator should decide the arbitrability of plaintiffs' claims, and the Court directed the parties to address that threshold issue first. Dkt. No. 53. During oral argument on the arbitrability question, plaintiffs raised contract formation concerns, and the Court directed the parties to address these issues in another round of briefs. Dkt. No. 78. Fitbit subsequently filed a motion to compel arbitration, which the Court took under submission without a hearing. Dkt. No. 95. While these briefs were under review, the Court allowed each side to file sur-replies and supplemental briefs, which for the most part

1   discussed new decisions that one side or the other thought germane to the arbitration questions.

2   *See, e.g.*, Dkt. Nos. 99, 100, 102, 103, 105, 107-110, 113.

3       All of the briefing is now complete.  This order resolves the issue of who decides the

4   arbitrability of plaintiffs' claims, and sets a course of action on Fitbit's request to stay or dismiss

5   any claims not subject to arbitration.

6                                **DISCUSSION**

7       Plaintiffs acknowledge the arbitration clause in Fitbit's ToS but challenge whether and to

8   what extent it applies to their claims.  This raises the threshold issue of whether the Court or an

9   arbitrator should decide arbitrability.

10      Parties may delegate "gateway" questions of arbitrability to an arbitrator.  A delegation

11  clause is enforceable when it manifests a clear and unmistakable agreement to arbitrate

12  arbitrability, and is not invalid as a matter of contract law.  *Brennan v. Opus Bank*, 796 F.3d 1125,

13  1130 (9th Cir. 2015).  Challenges to the validity of a delegation clause are of two types.  The first

14  type is specific to the validity of the delegation clause itself, while the second goes to the validity

15  of the agreement to arbitrate or to the contract as a whole.  *See Buckeye Check Cashing, Inc. v.*

16  *Cardegna*, 546 U.S. 440, 444 (2006).  Challenges of the first type may be considered by courts,

17  but challenges of the second type must go to the arbitrator pursuant to the delegation clause.  *Rent-*

18  *A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *Brennan*, 796 F.3d at 1132-33.  This is

19  because as a matter of substantive federal arbitration law, arbitration provisions -- including

20  delegation clauses -- are severable and separately enforceable from the remainder of a contract.

21  *Rent-A-Center*, 561 U.S. at 70-72.

22      The language of the parties' agreement is the primary evidence of whether they intended to

23  delegate arbitrability.  In this case, the parties agree that Fitbit's ToS is the center of gravity for

24  this question.  All Fitbit users must access and accept the ToS online before their devices are fully

25  operational.  The ToS states in the "Dispute Resolution" section:

26          You agree that any dispute between you and Fitbit arising out of or relating to
            these Terms of Service, the Fitbit Service, or any other Fitbit products or services
27          (collectively, "Disputes"), will be governed by the arbitration procedure outlined
            below. . . .
28

2

United States District Court
Northern District of California

> We Both Agree to Arbitrate: You and Fitbit agree to resolve any Disputes through final and binding arbitration, except as set forth under Exceptions to Agreement to Arbitrate below.
>
> Opt-out of Agreement to Arbitrate: You can decline this agreement to arbitrate by contacting legal@fitbit.com within 30 days of first accepting these Terms of Service and stating that you (include your first and last name) decline this arbitration agreement.
>
> Arbitration Procedures: The American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes. The arbitration will be held in the United States county where you live or work, San Francisco, California, or any other location we agree to.

Dkt. No. 60-1 at 4.

In essential part, then, the ToS anticipates that "any dispute . . . arising out of . . . the Fitbit Service, or any other Fitbit products or services" will be resolved through arbitration pursuant to AAA rules. Rule 7(a) of AAA's Commercial Arbitration Rules provides, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." A consumer who, like plaintiff Dunn, wants to opt out of arbitration altogether can do that simply by advising Fitbit of the election through the email link embedded in the ToS.

## I.     The Delegation Clause and "Unsophisticated" Consumers

In our circuit, "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130; *see also Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("[v]irtually every circuit" has found that incorporation of AAA rules indicates that the parties agreed to delegate arbitrability). That would seem to be the end of the matter here, but *Brennan* limited its holding to the "sophisticated" parties involved -- a former law firm partner and a bank. *Brennan*, 796 F.3d at 1131. Parties opposing delegation of arbitrability have latched on to that aspect of *Brennan* to argue that incorporation cannot be clear and unmistakable when one of the parties is unsophisticated in some respect. *See, e.g.*, *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *3 (N.D. Cal. 2016); *Aviles v. Quik Pick Express, LLC*, No. CV-15-5214-MWF (AGR), 2015 WL 9810998, at *6 (C.D. Cal. 2015).

United States District Court
Northern District of California

3

Plaintiffs say that the delegation clause here is unenforceable for this reason but the contention is not well taken.  The "greater weight of authority has concluded that the holding of *Opus Bank* applies similarly to non-sophisticated parties."  *Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *5 (C.D. Cal. 2016); *see also Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) (same).  This is for good reason. *Brennan* expressly cautioned that its holding should not be understood to "foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts.  Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts."  *Brennan*, 796 F.3d at 1130-31; *see also Fruth v. AGCS Marine Ins. Co.*, No. 15-CV-03311-JD, 2016 WL 6806368, at *3 (N.D. Cal. 2016) (*Brennan* does not impose a sophisticated party requirement).  After *Brennan*, our circuit upheld a delegation clause in an agreement with no discussion of or attention to the parties' level of sophistication.  *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1207-09 (9th Cir. 2016).  It is true that delegation was specifically spelled out in that agreement, *id.* at 1207-08, but *Brennan* teaches that incorporation, rather than an express statement, does not make an agreement to delegate arbitrability ineffective.

Plaintiffs' position is doubtful under state law as well.  California law, which governs the ToS and plaintiffs' consumer claims, does not make a categorical distinction between "sophisticated" and "unsophisticated" parties for purposes of enforcing an incorporated delegation clause.  *See, e.g.*, *Rodriguez v. American Technologies, Inc.*, 136 Cal. App. 4th 1110, 1123 (Cal. Ct. App. 2006) (enforcing incorporated AAA delegation clause against a homeowner who contracted for repair services with a repair/construction company).  More generally, California courts enforce incorporated contract terms against a party regardless of his or her sophistication.  It is well-established under California law that a "contract may validly include the provisions of a document not physically a part of the basic contract" so long as the reference is "clear and unequivocal," "called to the attention of the other party and he must consent thereto," and the terms are "known or easily available to the contracting parties."  *Wolschlager v. Fid. Nat. Title Ins.*

*Co.*, 111 Cal. App. 4th 784, 790 (Cal. Ct. App. 2003) (insurance purchaser who did not know about incorporated arbitration clause was nonetheless bound because the document was easily available).  *See also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) ("incorporation by reference, without more, does not affect the finding of procedural unconscionability").  While a party's lack of sophistication may at times be relevant to whether a document was properly incorporated, it is not an independent basis for refusing to enforce the terms of an incorporated document.  *Williams Const. Co. v. Standard-Pac. Corp.*, 254 Cal. App. 2d 442, 454 (Cal. Ct. App. 1967) ("utterly unrealistic to accept the proposition that a failure to know what was in the [incorporated document] was anyone's responsibility and fault but" contracting party's, where "most certainly the [incorporated document] was readily available").

Plaintiffs highlight their status as consumers, but that in no way leads to a different result.  *Cordas* and *Miller* were also consumer cases, and courts do not presume that consumers are categorically naïve or gullible contracting parties.  *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (Cal. Ct. App. 2003).

Plaintiffs' position also makes little practical sense.  The factors that might make someone "sophisticated" are poorly suited to a standard definition that parties can rely upon to avoid uncertainty or surprise in the meaning of the instrument they signed.  A party-by-party assessment of sophistication under some loose amalgam of personal education, line of work, professional knowledge, and so on would undermine contract expectations in potentially random and inconsistent ways.  Applying such an individualized inquiry in the class action context would likely raise additional problems.

It is also worth noting that Fitbit's ToS is presented in a plain and clear style, and visibly incorporates AAA's rules.  The ToS spans only five printed pages, and under a bolded sub-heading labeled "Dispute Resolution," the agreement reads, "The American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes."  Dkt. No. 60-1 at 4.  The AAA's Commercial Arbitration Rules are easy to locate through any internet search engine, and "Jurisdiction" is one of the first topics listed in the table of contents.  Any Fitbit consumer uneasy about the arbitration

5

United States District Court
Northern District of California

1  clause or unwilling to go to the AAA rules could opt out while activating her device simply by

2  pressing the email link and saying so.  Plaintiffs have not shown that they lacked the ability to

3  locate the incorporated arbitration terms or the delegation provision within those arbitration terms,

4  or the ability to reject arbitration with the click of a mouse.

5        Consequently, the Court finds that plaintiffs agreed to a delegation clause.  *Brennan*

6  compels arbitration of arbitrability in this case.

7  **II.**        **Other Delegation Clause Issues**

8        Plaintiffs' other challenges are also unpersuasive.  Plaintiffs say delegation was not clear

9  and unmistakable because the ToS states under "General Terms" that "[i]f for any reason a court of

10  competent jurisdiction finds any provision of these Terms invalid or unenforceable, that provision

11  will be enforced to the maximum extent permissible and the other provisions of these Terms will

12  remain in full force and effect" (the "severability statement").  Dkt. No. 93 at 4.  In plaintiffs'

13  view, the severability statement creates an ambiguity about delegation that undermines its

14  effectiveness.

15        The point is not compelling.  The severability statement is entirely consistent with the

16  ToS's express recognition that some disputes may end up in court.  For example, the ToS allows

17  individuals to opt out of the arbitration agreement altogether.  Dkt. No. 60-1 at 4.  The arbitration

18  agreement also has carve-outs.  The parties may bring lawsuits for injunctive relief "to stop

19  unauthorized use or abuse of the Fitbit products or Fitbit Service, or infringement of intellectual

20  property rights" without having to arbitrate.  *Id.* And the ToS acknowledges that some disputes

21  may lie outside the scope of the agreement to arbitrate.  "In the event that the agreement to

22  arbitrate is found not to apply to you or your claim," the ToS provides, "you and Fitbit agree that

23  any judicial proceeding (other than small claims actions) will be brought in the federal or state

24  courts of San Francisco County, California."  Dkt. No. 60-1 at 4.  This condition would apply here

25  if an arbitrator agrees with plaintiffs' argument that the arbitration provision does not extend to

26  their claims, Dkt. No. 86 at 13-15.

27        Consequently, the severability statement does not make ambiguous the parties' delegation

28  of gateway issues.  *See Mohamed*, 848 F.3d at 1209 (venue provisions and arbitration carve-outs

did not change enforceability of delegation clause); *Awuah v. Coverall North America, Inc.*, 554

F.3d 7, 11 (1st Cir. 2009) (severability clause referencing "court of competent jurisdiction" did not

create ambiguity as to delegation where AAA rules were incorporated); *Miller*, 2016 WL 7471302,

at *5 (similar provisions not in conflict with incorporation of AAA rules).

As another challenge, plaintiffs contend that Fitbit waived delegation by failing to preserve

the issue.  Dkt. No. 60 at 10-11.  "A party seeking to prove waiver of a right to arbitration must

demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with

that existing right; and (3) prejudice to the party opposing arbitration resulting from such

inconsistent acts."  *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

"[W]aiver of the right to arbitration is disfavored because it is a contractual right, and thus any

party arguing waiver of arbitration bears a heavy burden of proof."  *Van Ness Townhouses v. Mar

Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988).

Plaintiffs have not carried their burden on waiver.  They do not show how Fitbit took

actions meaningfully inconsistent with its right to compel arbitration as to gateway issues.

Plaintiffs point to events in a separate case involving different allegations against Fitbit, *Brickman,

et al. v. Fitbit, Inc.*, No. 15-cv-2077-JD, Dkt. No. 60 at 9-10.  That independent conduct is not

determinative of contract waiver here.  Plaintiffs also cite two statements made by Fitbit in a

discovery letter here that refer to the Court's determination of gateway issues.  Dkt. No. 60 at 10.

These passing references are too slender a reed on which to find the waiver of a contract right.

As a final point, plaintiffs did not bring a specific challenge to the validity of the delegation

clause itself that would warrant judicial as opposed to arbitral review.  As discussed, *Rent-A-

Center* and *Brennan* are clear on this issue.  If plaintiffs raise a challenge specific to the validity of

the delegation clause, the Court must consider it.  Other challenges go to the arbitrator.  The Court

looks to the arguments made by plaintiffs in their pleadings opposing Fitbit's motion to compel

arbitration to determine if any of their objections are specific to the delegation clause, rather than

going to the arbitration provisions or to the agreement as a whole.  *See Brennan*, 796 F.3d at 1132-

33 (party must specifically challenge delegation clause); *Bridge Fund Capital Corp. v. Fastbucks

Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010).

United States District Court
Northern District of California

The plaintiffs were cautioned at the hearing of November 10, 2016 to offer contract defenses going to the validity of the arbitration provision being challenged, not the validity of the entire ToS. Dkt. No. 84 at 3-5. Plaintiffs have raised several challenges to the validity of the agreement to arbitrate, but none specifically to the delegation clause. They argue that (1) the plaintiffs did not unambiguously assent to the arbitration agreement, (2) the arbitration agreement lacked adequate consideration, (3) Fitbit procured the agreement to arbitrate by fraud, and (4) the arbitration provision is unenforceable as applied to the plaintiffs' claims for public injunctive relief under California consumer protection laws. Dkt. No. 86 at 6-19; Dkt. No. 93 at 6-11; Dkt. No. 100 at 1. Arguments (1) and (2) go to the validity of the ToS as a whole, and arguments (3) and (4) go to the agreement to arbitrate as a whole. Consequently, these arguments must be considered by the AAA arbitrator in the first instance. *See also DeVries v. Experian Information Solutions*, No. 16-cv-02953-WHO, 2017 WL 2377777, at *2-3 (N.D. Cal. 2017); *Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 897 (Cal. Ct. App. 2017).

**III.     The Stay Request**

Fitbit has moved to stay or dismiss the claims of plaintiff Dunn, the only plaintiff in this action who opted out of the arbitration provision. Dkt. No. 88 at 5. Fitbit says that, because Dunn and the other plaintiffs have identical claims, a stay would "mitigate the risk of conflicting rulings on common issues." *Id.* at 8. Whether to stay the litigation of non-arbitrating parties pending arbitration is entrusted to the Court's discretion. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983).

Arbitration is a matter of contract. Dunn opted out of arbitration in order to have access to courts. Requiring Dunn to stay his claims while the remaining plaintiffs proceed with arbitration would undermine the effect of the opt-out provision and improperly extend the arbitration agreement made by the other plaintiffs. Delayed enforcement of an opt-out right, just like belated enforcement of an arbitration provision, is "a less substantial interference than a refusal to enforce it at all, [but] nonetheless significantly disappoints the expectations of the parties and frustrates the clear purpose of their agreement." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 225 (1985) (White, J., concurring).

1    Parallel proceedings may raise the risk of inconsistency, but the FAA contemplates

2  "*requir[ing]* piecemeal resolution when necessary to give effect to an arbitration agreement."

3  *Moses H. Cone*, 460 U.S. at 20 (emphasis in original).  Moreover, inconsistency is possible even if

4  the Court were to grant a stay: Fitbit has not shown that the outcome of the arbitration proceedings

5  will have any effect on this Court's consideration of Dunn's claims.

6                                   **CONCLUSION**

7    Fitbit's motion to compel arbitration is granted for the plaintiffs who did not opt out.  The

8  arbitrator will resolve those plaintiffs' challenges to the scope and enforceability of the arbitration

9  clause.  Fitbit's motion to stay or dismiss plaintiff Dunn's claims is denied.

10   **IT IS SO ORDERED.**

11 Dated: October 11, 2017

14 JAMES DONATO
United States District Judge