UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATE MCLELLAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FITBIT, INC.,<br><br>    Defendant. | Case No. 3:16-cv-00036-JD<br><br>**ORDER RE MOTION FOR RECONSIDERATION OF ARBITRATION RULING**<br><br>Re: Dkt. No. 115 |

In an order that sent 12 of the 13 named plaintiffs to arbitration, the Court found that Fitbit's terms of service ("ToS") delegated threshold questions of arbitrability to the arbitrator, and that plaintiffs' challenges to the validity of the ToS and the agreement to arbitrate should be decided by the arbitrator. Dkt. No. 114. Plaintiffs have suggested that further discussion of contract formation issues would be helpful, and have requested leave to file a motion for partial reconsideration on that topic. Dkt. No. 115. Plaintiffs contend that (1) they did not unequivocally assent to the ToS, and (2) they did not receive adequate consideration to create a binding agreement. Dkt. No. 115-1 at 5. The Court allowed the motion, Dkt. No. 116, and called for a response from Fitbit. Dkt. No. 118.

It is certainly true that contract formation disputes are for the Court to decide, but the ones plaintiffs have raised do not disturb the order compelling arbitration. The starting point for this conclusion is the plain language of the Federal Arbitration Act, which states that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In analyzing the enforceability of agreements to arbitrate under Section 2, the Supreme Court has consistently distinguished between formation challenges and validity challenges. In

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-46 (2006), for example, the Court discussed the different types of validity challenges under Section 2 and held that validity challenges going to the contract as a whole are considered by the arbitrator in the first instance. The Court was careful to emphasize that issues of contract validity differ from issues of "whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to . . . [whether] it is for courts to decide whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent." *Id.* at 444 n.1 (citations omitted). The topics left unaddressed are all classic examples of contract formation issues. This distinction between formation and validity challenges was reiterated in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010) ("The issue of the agreement's 'validity,' is different from the issue whether any agreement between the parties 'was ever concluded,' and, as in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), we address only the former").

Under these precedents, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original). It follows that when formation disputes are present, the courts decide those questions even if an agreement to arbitrate delegates gateway issues of jurisdiction to the arbitrator. To that point, the Ninth Circuit recently held that an arbitration agreement could not be enforced because it was contained in a "sham" contract to which the parties never intended to bind themselves. The existence *vel non* of the arbitration agreement was for the court to decide even though the agreement provided that the "arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement." *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1214 (9th Cir. 2016).

2

Here, plaintiffs raise formation challenges that go to "the threshold issue of the *existence* of an agreement to arbitrate." *Three Valley Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991) (emphasis in original). These questions are entrusted to the Court for resolution under California law. Dkt. No. 60-1 at 4 ("The Terms of Service . . . shall be governed by and construed in accordance with the laws of the State of California").

Plaintiffs' first challenge is that they did not manifest unequivocal assent to the ToS. This position is strained given that plaintiffs acknowledge they "each clicked a box next to a hyperlinked terms of service (or took equivalent action on a mobile platform)" that stated, "I agree to the Fitbit Terms of Service and Privacy Policy." Dkt. No. 93 at 7; Dkt. No. 87 at 5. Fitbit's ToS is a classic "clickwrap" agreement, a type of agreement that courts routinely find valid and enforceable because the user must affirmatively acknowledge receipt of the terms of the contract. *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

Plaintiffs nevertheless argue that they did not manifest assent because the ToS included a "browsewrap" clause informing the user that by visiting the Fitbit website or using any part of the Fitbit service, he or she had already agreed to the terms. Dkt. No. 93 at 7. Plaintiffs each state that they now understand the browsewrap clause to mean that even before checking the "I agree" box, they were "deemed by Fitbit to already have agreed to [the Terms of Service]." *See, e.g.*, Dkt. No. 93-1 ¶ 7. But none of the plaintiffs have tendered any evidence showing that they had in fact actually read the browsewrap clause before clicking "I agree." The browsewrap clause could not have influenced anyone's decision to check the "I agree" box, and so correlatively cannot undermine each plaintiff's decision to manifest acceptance by clicking in the affirmative. Because each plaintiff affirmatively accepted the ToS independent of the browsewrap statement, any ambiguity was negated. Plaintiffs point to no evidence or case law suggesting a different conclusion.

Consequently, plaintiffs' current perspective on the browsewrap clause, and their suggestion that the clause would have influenced their understanding of assent to the ToS had they

3

1 read it, is of no moment to the formation analysis. *See, e.g.*, *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989-90 (N.D. Cal. 2017) (consumer as a matter of law was bound by arbitration provision in Uber's clickwrap policy where consumer presented no evidence that Uber failed to put him on notice).

Plaintiffs also argue that they had no meaningful opportunity to withhold assent because agreement to the ToS was required for device functionality, and Fitbit did not disclose the ToS until after the sales transaction. Dkt. No. 93 at 8-9. To the extent that this raises a contract of adhesion argument that may be considered as a formation issue, it does not defeat contract formation. As an initial matter, contracts of adhesion are not per se invalid, and the California Supreme Court has enforced them and their attendant arbitration clauses in consumer cases over similar objections to the ones plaintiffs make here. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (Cal. 2015). Plaintiffs make no showing of unconscionability that would warrant a departure from this holding. In addition, the devices here are wearable fitness monitors, which are purely items of personal choice and interest, and not necessities of life. Plaintiffs were perfectly free to reject the ToS and return the device for a refund; they have not shown any barriers to exercising that option. Finally, common experience undermines plaintiffs' protest that they could not have foreseen the possibility of an additional terms of service. For decades, technology companies have routinely required consumers to sign post-purchase agreements in order to use a product. *See, e.g.*, *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996) ("Transactions in which the exchange of money precedes the communication of detailed terms are common," and discussing software warranties and license restrictions in particular). Plaintiffs have not pointed to any packaging claims or marketing practices suggesting that their devices were somehow an exception to that well-established rule. *See* Dkt. No. 87 at 8 (Fitbit packaging discussed Fitbit app and dashboard, listed computers and smart phones that were device-compatible).

Plaintiffs' second formation challenge goes to the adequacy of consideration. This is a slender reed indeed, as the Ninth Circuit has found. *Pope v. Sav. Bank of Puget Sound*, 850 F.2d 1345, 1356 (9th Cir. 1988) ("the first lesson in contracts [is] the peppercorn theory -- that courts

4

will not inquire into the adequacy of consideration, so long as it was true and valuable."); *see also* Restatement (Second) of Contracts § 79 (1981) ("Ordinarily . . . courts do not inquire into the adequacy of consideration"). Under California law, "[a]ny benefit conferred, or agreed to be conferred . . . or any prejudice suffered, or agreed to be suffered, . . . as an inducement to the promisor, is a good consideration for a promise," Cal. Civ. Code § 1605, and a "written instrument is presumptive evidence of a consideration," Cal. Civ. Code § 1614. It is well-established that a party's reciprocal agreement to arbitrate claims is adequate consideration for a contract. *See, e.g.*, *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (employer's "promise to submit to arbitration and to forego the option of a judicial forum for a specified class of claims constitutes sufficient consideration" under California law); *Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *8 (N.D. Cal. Mar. 18, 2016) (same). Plaintiffs argue that *Circuit City* should not be read to apply to post-purchase consumer agreements but cites no authority to that effect.

Consequently, while plaintiffs properly note that contract formation issues are for the Court to decide, neither of plaintiffs' formation challenges disrupts their agreement to arbitrate. The record shows that plaintiffs manifested their objective assent to the ToS by checking the "I agree" box, and for that agreement they received adequate consideration. The order compelling arbitration remains in full force and effect.

**IT IS SO ORDERED.**

Dated: January 24, 2018

_____
JAMES DONATO
United States District Judge