UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATE MCLELLAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>FITBIT, INC.,<br><br>　　　　Defendant. | Case No. 3:16-cv-00036-JD<br><br>**ORDER RE MOTION TO DISMISS**<br><br>Re: Dkt. No. 128 |

In this putative class action, named plaintiff Rob Dunn alleges that defendant Fitbit, Inc. misled consumers about the ability of Fitbit's wristband devices to track user heart rate. Dkt. No. 127-1. Specifically, Dunn alleges that although Fitbit marketed its "PurePulse" technology as providing accurate, real-time heart monitoring, particularly during exercise, user experience and independent research show that PurePulse-equipped devices are grossly inaccurate and frequently fail to record any heart rate at all. Dunn sues under the California Consumer Legal Remedies Act ("CLRA"), the California False Advertising Law ("FAL"), the California Unfair Competition Law ("UCL"), common-law fraud, fraud in the inducement, unjust enrichment, breach of express warranty, breach of implied warranties under the Magnuson-Moss Warranty Act, and the Arizona Consumer Fraud Act. Fitbit moves to dismiss the complaint for lack of particularity under Rule 9(b) and Rule 8. The Court dismisses the unjust enrichment claim. The motion to dismiss is otherwise denied, subject to Dunn's representation that he will amend the complaint to include product packaging statements and allegations of reliance.[1]

---

[1] At the hearing on the motion to dismiss, plaintiff agreed to withdraw his claims under the Song-Beverly Consumer Warranty Act and revocation of acceptance. Dkt. No. 143 at 22.

**LEGAL STANDARD**

Straightforward standards govern the application of Rule 12(b)(6). To meet the pleading requirements of Rule 8(a) and to survive a Rule 12(b)(6) motion to dismiss, a claim must provide "a short and plain statement . . . showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), including "enough facts to state a claim . . . that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if, accepting all factual allegations as true and construing them in the light most favorable to the plaintiff, the Court can reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility analysis is "context-specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened specificity standards apply to Dunn's consumer fraud and deception claims, because Dunn alleges false and misleading product representations that sound in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). The touchstone of Rule 9(b) is notice. "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Generally, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted). Conclusory allegations with no "particularized supporting detail" do not suffice, but 9(b) "does not require absolute particularity or a recital of the evidence . . . . [A] complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)) (other citations omitted).

As Fitbit recognizes in its motion, Rule 9(b) does not govern Dunn's express or implied warranty claims, because those claims are based not on fraudulent representations but on Fitbit's failure to deliver devices that track heart rate as promised by device packaging and promotional

materials. *Kearns*, 567 F.3d at 1124 (Rule 9(b) only applies to claims where fraud is an essential element).

## DISCUSSION

### I.   Rule 9(b)

A good starting point for the Rule 9(b) analysis is the Court's order in a conceptually related case, *Brickman v. Fitbit, Inc.*, No. 15-CV-02077-JD, 2016 WL 3844327 (N.D. Cal. July 15, 2016). The *Brickman* plaintiffs sued Fitbit under fraud and consumer deception laws in connection with Fitbit devices' ability to track sleep as advertised. The Court found that the *Brickman* plaintiffs satisfied Rule 9(b) because the complaint (1) identified product packaging statements that the devices would "TRACK YOUR NIGHT" and "TRACK SLEEP," including "Hours slept," "Times woken up," and "Sleep quality," (2) alleged pre-purchase notice and reliance on those statements, and (3) cited to "specific documents" as well as "personal experience" indicating that the devices track motion only and not sleep. 2016 WL 3844327 at *2.

At the hearing on the motion to dismiss, Fitbit said the Court should distinguish this case from *Brickman* because Dunn did not include product packaging statements or specifically allege that he relied on those statements before making a purchase. Dkt. No. 143 at 23-24. Plaintiff represented that the complaint would be amended to include packaging statements and allegations of reliance, and shared with the Court and the parties an image of the package for Dunn's device. The box states, "chargeHR/ Heart Rate + Activity Wristband/EVERY BEAT COUNTS," advertises "CONTINUOUS HEART RATE," and describes the "PUREPULSE™ CONTINUOUS HEART RATE" as featuring "Automatic, 24/7 wrist-based heart rate/Continuous workout heart rate." These packaging statements and allegations of reliance, once incorporated into the complaint, will fully address Fitbit's 9(b) objections.

### II.   Actionable representations and omissions

Fitbit raises a variety of other objections to the plausibility of the fraud and deception claims, none of which are well taken. Fitbit argues that some of the representations identified in the complaint, like the slogan "Every Beat Counts," are inactionable puffery. Even if that particular slogan when viewed in isolation is inactionable, the complaint is replete with examples

3

of actionable "misdescriptions of specific or absolute characteristics of a product." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (internal quotations omitted). The complaint identifies statements like, "Continuous, automatic heart rate tracking," "Check real time heart rate to ensure you're working out at the right intensity," and "Check heart rate at a glance to gauge your effort and adjust workouts on the spot." *See* Dkt. No. 127-1 at 5-11. Promotional materials include images of people exercising next to heart rate displays and graphs. *Id.* at 7-8. These are "particularized statements that can be sued on because they make measurable claims about a product's characteristics and functionality." *Brickman*, 2016 WL 3844327, at *3; *see also Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1029 (N.D. Cal. 2016) (statements like "continuous, automatic heart rate tracking all day, all night and during workouts" actionable under federal securities law). Fitbit says these statements have "nothing to do with accuracy," Dkt. No. 128 at 7, but that cannot be reconciled with the plain meaning of its own marketing words.

  The complaint also alleges enough to state a claim based on omissions. An omission is actionable if it is "contrary to a representation actually made by the defendant, or [is] an omission of a fact that the defendant was obliged to disclose." *Daugherty v. American Honda Motor Co. Inc.*, 144 Cal. App. 4th 824, 835 (Cal. Ct. App. 2006). The complaint says that Fitbit knew or should have known of PurePulse's inability to track heart rate, since Fitbit conducted a substantial amount of internal research to test its performance. *See* Dkt. No. 127-1 at 16-17. On the face of the complaint, that alleged omission is contrary to Fitbit's marketing representations. It is also an omission that Fitbit was obliged to disclose. Given the magnitude of the aberrant heart rate readings and multiple allegations that the devices under-report heart rate, Dunn has plausibly alleged an "unreasonable safety hazard" that may arise when users rely on Fitbit heart rate readings during exercise. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017); Dkt. No. 127-1 at 12, 13, 15, 25. While the Ninth Circuit has found that safety risks may not be unreasonable if the defendant "expressly warns consumers" or if the risk is "primarily one of accelerated timing rather than the manifestation of a wholly abnormal condition," those factors do not weigh in Fitbit's favor here. *Williams*, 851 F.3d at 1029.

4

### III. Notice

Fitbit urges dismissal of the CLRA and warranty claims for lack of pre-suit notice, as well as dismissal of the UCL claim to the extent that it hinges on an alleged CLRA violation. The CLRA states that a consumer may not commence an action for damages unless the defendant has received notice at least 30 days beforehand. Cal. Civ. Code § 1782(a). California law also requires pre-suit notice for warranty claims. *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (Cal. Ct. App. 2008) (citing Cal. Com. Code § 2607).

But Fitbit received pre-suit notice in November 2015, when plaintiff's counsel sent Fitbit a letter on behalf of Kate McLellan, another named plaintiff in this case, and a proposed class of consumers who had purchased Fitbit's PurePulse Devices. Dkt. No. 127-1 Exh. 2. That notice was sufficient under California law and gave Fitbit the opportunity to cure that the CLRA contemplates. *See, e.g.*, *Sanchez v. Wal-Mart Stores, Inc.*, No. CIVS06CV2573DFLKJM, 2007 WL 1345706, at *3 (E.D. Cal. May 8, 2007); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010). The November 2015 letter also advised Fitbit that plaintiffs intended to pursue claims for breach of implied and express warranty, so notice requirements for the warranty claims have also been satisfied.

### IV. Warranty claims

An express warranty is created by "any affirmation of fact or promise relating to the subject matter of a contract for the sale of goods, which is made part of the basis of the parties' bargain." *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) (citing Cal. Com.Code § 2313(1)(a)). Whether a seller's statement is an "affirmation of fact or promise" that may give rise to an express warranty (as opposed to "merely the seller's opinion or commendation of the goods") depends on factors including "(1) a lack of specificity in the statement made, (2) a statement that is made in an equivocal manner, or (3) a statement which reveals that the goods are experimental in nature. . . . It is clear that statements made by a manufacturer or retailer in an advertising brochure which is disseminated to the consuming public

in order to induce sales can create express warranties." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 19-21 (Ct. App. 1985) (internal citations omitted).

Dunn adequately alleges that Fitbit made an express warranty about the ability of PurePulse devices to accurately track heart rate throughout the day and during exercise. Dunn's express warranty claim cites a number of Fitbit's representations, including that PurePulse would provide "continuous, automatic . . . heart rate monitoring" allowing users to "maintain intensity" during exercise, and that the devices "track[] your heart rate all day and during exercise." Dkt. No. 127-1 at 34-35. These statements are not "vague" or "equivocal." Rather, they specifically promise that the devices are capable of giving real-time feedback on heart rate that can be used to adjust workout intensity.

Dunn also adequately pleads a claim under the Magnuson-Moss Act for breach of implied warranty under California Code Section 2314(1). Under that provision, "implied warranty 'provides for a minimum level of quality.' A breach of the warranty of merchantability occurs if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (Cal. Ct. App. 1995) and *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (Cal. Ct. App. 2003)). According to the complaint, the ability to record heart rate in real time and during physical activity is marketed as a key feature of the PurePulse devices, yet in reality the products frequently fail to record any heart rate at all or provide highly inaccurate readings, with discrepancies of up to 75 bpm. Those facts indicate that the devices lack even a basic degree of fitness for use as exercise or activity monitors.

**V.   Unjust enrichment**

The unjust enrichment claim is dismissed with prejudice, since unjust enrichment is a remedy and not an independent claim. *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015).

**CONCLUSION**

The unjust enrichment claim is dismissed with prejudice. Provided that Dunn revises his complaint to include product packaging statements and allegations of reliance, Dunn may proceed

6

with his claims under the CLRA, FAL, UCL, common-law fraud, fraud in the inducement, breach of express warranty, breach of implied warranties under the Magnuson-Moss Warranty Act, and the Arizona Consumer Fraud Act.

**IT IS SO ORDERED.**

Dated:  June 5, 2018

JAMES DONATO
United States District Judge