# EXHIBIT A

Elizabeth J. Cabraser (CA SBN 083151)
ecabraser@lchb.com
Kelly M. Dermody (CA SBN 171716)
kdermody@lchb.com
Kevin R. Budner (CA SBN 287271)
kbudner@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Jonathan D. Selbin (CA SBN 170222)
jselbin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Robert Klonoff (*pro hac vice*)
klonoff@usa.net
ROBERT H. KLONOFF, LLC
2425 SW 76th Ave.
Portland, OR 97225
Telephone:  (503) 291-1570

Rosemary M. Rivas (CA SBN 209147)
rrivas@zlk.com
Adam C. McCall (CA SBN 302130)
amccall@zlk.com
LEVI & KORSINSKY LLP
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (866) 367-6510

Andrea Clisura (*pro hac vice*)
aclisura@zlk.com
Courtney E. Maccarone (*pro hac vice*)
cmaccarone@zlk.com
LEVI & KORSINSKY LLP
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Plaintiffs, individually and on behalf of all others similarly situated*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| KATE MCLELLAN, TERESA BLACK, DAVID URBAN, ROB DUNN, RACHEL SAITO, TODD RUBINSTEIN, RHONDA CALLAN, JAMES SCHORR, BRUCE MORGAN, and AMBER JONES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> FITBIT, INC., <br><br> Defendant. | Case Nos. 16-cv-00036-JD; 16-cv-00777-JD <br><br> **DECLARATION OF JONATHAN D. SELBIN IN SUPPORT OF PLAINTIFFS' STATEMENT ON THE STATUS OF ARBITRATION PROCEEDINGS** <br><br> Date: TBD <br> Time: TBD <br> Ctrm:  11, 19th Floor <br><br> The Honorable James D. Donato |
| JUDITH LANDERS, LISA MARIE BURKE, and JOHN MOLENSTRA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> FITBIT, INC., <br><br> Defendant. | |

- 1 -

I, Jonathan D. Selbin, declare as follows:

1. I am a partner at the law firm Lieff Cabraser Heimann & Bernstein, LLP. I am a member in good standing of the bars of the States of California and New York, and the bar of the District of Columbia, and I am admitted to practice in this District. I respectfully submit this declaration in support of Plaintiffs' Statement on the Status of Arbitration Proceedings.

2. Following the Court's order regarding Plaintiffs' Motion for Partial Reconsideration (Dkt. 126), Plaintiff Kate McLellan indicated that she wished to pursue arbitration to seek a determination on her challenges to the arbitration clause. Attorneys working under my direction prepared and filed the demand and submitted the $750 filing fee required under AAA's commercial arbitration rules.

3. On May 14, 2018, I participated on a call that included my partner Kevin R. Budner, a paralegal from my office, Max Blaisdell, and Fitbit's counsel, William L. Stern and Kai S. Bartolomeo. I understand that Mr. Budner requested in advance that Mr. Blaisdell take contemporaneous and detailed notes of that telephone call. I have reviewed the notes that Mr. Blaisdell circulated later that day (and which are attached to Mr. Blaisdell's declaration without any alteration or amendment).

4. Mr. Blaisdell's notes confirm my independent recollection that on that call (a) Plaintiffs' counsel expressly and clearly communicated to Fitbit's counsel Ms. McLellan's intention to have an arbitrator rule on her challenges to the scope and enforceability of the arbitration clause (arbitrability), and (b) Fitbit's counsel—Mr. Stern—stated that Fitbit had no intention of allowing Ms. McLellan to test arbitrability with the arbitrator, and that they believed the matter was concluded.

5. Attached hereto as **Attachment 1** is a true and correct copy of Kate McLellan's arbitration demand, submitted to AAA on April 3, 2018. For efficiency, the exhibits to the demand—which consist of the Complaint, two of this Court's orders, and Fitbit's Terms of Service—are not included herein.

6. Attached hereto as **Attachment 2** is a true and correct copy of Fitbit's Terms of Service, produced by Fitbit with the bates range FITBIT_HR_000012-16.

- 2 -

7.      Attached hereto as **Attachment 3** is a true and correct copy of a letter sent on April 25, 2018, by AAA's consumer filing team setting a May 9, 2018, deadline for Fitbit to submit its portion of the arbitration fees.

8.      Attached hereto as **Attachment 4** is a true and correct copy of a letter e-mailed on May 3, 2018, by Fitbit's counsel and addressed to Plaintiffs' counsel, setting forth Fitbit's settlement offer to Ms. McLellan.

9.      Attached hereto as **Attachment 5** is a true and correct copy of a letter e-mailed to Plaintiff's counsel on May 3, 2018, by Fitbit's counsel and addressed to Ms. McLellan, setting forth Fitbit's settlement offer to Ms. McLellan

10.      Attached hereto as **Attachment 6** is a true and correct copy of a letter sent by Plaintiffs' counsel to Fitbit's counsel on May 14, 2018, confirming that Ms. McLellan rejected Fitbit's settlement offer and reiterating her intention to "have an arbitrator determine . . . whether the arbitration clause and class action waiver are enforceable and/or applicable to her claims."

11.      Attached hereto as **Attachment 7** is a true and correct copy of a letter sent by Fitbit's counsel to AAA on May 16, 2018, informing AAA that Ms. McLellan had rejected Fitbit's settlement offer and that Fitbit "regard[ed] this matter as concluded."  The attachments to this letter, which are also attached separately to this declaration, are omitted for efficiency.

12.      Attached hereto as **Attachment 8** is a true and correct copy of a letter sent by Fitbit's counsel to Plaintiffs' counsel on June 1, 2018, alleging that Fitbit had previously misunderstood Ms. McLellan's intentions.

13.      Attached hereto as **Attachment 9** is a true and correct copy of a letter sent by Plaintiffs' counsel to Fitbit's counsel on June 4, 2018, responding to Fitbit's June 1, 2018, letter (Attachment 8).

14.      Attached hereto as **Attachment 10** is a true and correct copy of a letter sent by AAA to the parties on June 11, 2018, stating that Fitbit had submitted its fees.

15.      Attached hereto as **Attachment 11** is a true and correct copy of a letter sent by Plaintiffs' counsel to AAA on June 13, 2018, updating AAA of recent events in the case.  The

1  attachments to this letter, which include the transcript of the May 31, 2018, hearing and other

2  documents attached separately to this declaration, are omitted for efficiency.

3       16.     On June 13, 2018, a representative from AAA sent an email to the parties

4  confirming receipt of the Plaintiffs' June 13, 2018, letter and stating that "AAA will place this

5  case into a 30 day stay pending the outcome of the court resolution."

6       I declare under penalty of perjury under the laws of the United States that the foregoing is

7  true and correct, to the best of my knowledge and belief, and that the foregoing was executed on

8  June 14, 2018, in New York, New York.

9                               By: */s/ Jonathan D. Selbin*
10                                    Jonathan D. Selbin

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT 1

**AMERICAN ARBITRATION ASSOCIATION®**   INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit **www.adr.org** for appropriate forms.*

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| | |
|---|---|
| Name of Respondent: Fitbit, Inc. | Name of Representative (if known): William Stern |
| Address: **199 Fremont Street, 14th Floor** | Name of Firm (if applicable): Morrison Foerster |
| | Representative's Address: 425 Market Street |

| City: San Francisco | State: CA | Zip Code: 94105 | City: San Francisco | State: CA | Zip Code: 94105 |
|---|---|---|---|---|---|
| Phone No.: (877) 623-4997 | Fax No.: | | Phone No.: 415-268-7637 | | Fax No.: (415) 268-7522 |
| Email Address: | | | Email Address: wstern@mofo.com | | |

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:
Consumer fraud claims regarding Fitbit's alleged deceptive marketing of its activity trackers, as set forth in the complaint filed in the United States District Court, Northern District of California (Exhibit 1; class claims not pursued in arbitration).  Exhibits 2 and 3 reflect court orders enforcing a "delegation clause" in the arbitration provision. The arbitration provision is found in Exhibit 4.

| Dollar Amount of Claim: $ 161.94 | Other Relief Sought: |
|---|---|
| | ☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs |
| | ☑ Punitive/ Exemplary ☑ Other |

| Amount enclosed: $ 750 | In accordance with Fee Schedule: ☐ Flexible Fee Schedule ☑ Standard Fee Schedule |
|---|---|

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

Claimant submits that a qualified arbitrator shall have experience evaluating consumer claims contesting the scope and enforceability of the arbitration agreement.

Hearing locale: San Francisco, CA          *(check one)* ☐ Requested by Claimant ☑ Locale provision included in the contract

| Estimated time needed for hearings overall: hours or          2          days | Type of Business: Claimant: Individual |
|---|---|
| | Respondent: Wearable Device Manufacturer |

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other?  No.

| Signature (may be signed by a representative): | Date: 4/3/2018 |
|---|---|
| Name of Claimant: Kate McLellan | Name of Representative: Jonathan D. Selbin |
| Address (to be used in connection with this case): **36883 Pictor Avenue** | Name of Firm (if applicable): Lieff Cabraser Heimann & Bernstein, LLP |
| | Representative's Address: 250 Hudson Street, 8th Floor |

| City: Murrieta | State: CA | Zip Code: 92563 | City: New York | State: NY | Zip Code: 10013 |
|---|---|---|---|---|---|
| Phone No.: (619) 727-0373 | Fax No.: | | Phone No.: 212-355-9500 | | Fax No.: 212-355-9592 |
| Email Address: mclellan.kate@gmail.com | | | Email Address: jselbin@lchb.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.*

# ATTACHMENT 2

Fitbit Terms of Use



## Terms of Service

### Terms Of Service

Date of Last Update: December 18, 2014.

Fitbit designs products and tools that track everyday health and fitness to empower and inspire users to lead healthier, more active lives. These Terms of Service ("Terms") govern your use of our personal fitness and electronic body monitoring products, our websites, including www.fitbit.com, the software embedded in Fitbit devices, the Fitbit Connect software, the Fitbit mobile applications, memberships and other Fitbit services (collectively, the "Fitbit Service").

You must accept these Terms to create a Fitbit account and to use the Fitbit Service. If you do not have an account, you accept these Terms by visiting www.fitbit.com (https://www.fitbit.com) or using any part of the Fitbit Service. IF YOU DO NOT ACCEPT THESE TERMS, DO NOT CREATE AN ACCOUNT, VISIT WWW.FITBIT.COM (https://www.fitbit.com) OR USE THE FITBIT SERVICE.

### These Terms May Change

These Terms will change over time. If we make minor changes to the Terms without materially changing your rights, we will post the modified Terms on www.fitbit.com. We will notify you by email, through the Fitbit Service, or by presenting you with a new Terms of Service to accept if we make a modification that materially changes your rights. When you use the Fitbit Service after a modification is posted, you are telling us that you accept the modified terms.

### Read Our Privacy Policy

Any information that Fitbit collects through your use of the Fitbit Service is subject to the Fitbit Privacy Policy (http://domain.com/privacy), which is part of these Terms.

### Who Can Use Fitbit?

You may use the Fitbit Service if you are over 13 years of age and are not barred from receiving services under applicable law.

### Creating an Account

Full use of the Fitbit Service requires that you create an account by providing us with a valid email address and strong password. You are responsible for all activity that occurs in association with your account. Fitbit is not liable for any loss or damages caused by your failure to maintain the confidentiality of your account credentials.

We may need to contact you about your use of the Fitbit Service. These communications are part of the Fitbit Service and you may not opt-out from receiving them. You can manage and opt-out from receiving other communications and keep your email address up-to-date from your account settings.

### Necessary Equipment

Full use of the Fitbit Service is dependent upon your use of a computer with adequate software or a supported mobile device and Internet access. The maintenance and security of this equipment may influence the performance of the Fitbit Service and it is your responsibility to ensure the equipment's functionality.

### Posting Your Content On The Fitbit Service

You may post photos, exercise regimens, food logs, recipes, comments, and other content ("Your Content") to the Fitbit Service. You retain all rights to Your Content that you post to the Fitbit Service. By making Your Content available on or through the Fitbit Service you grant to Fitbit a non-exclusive, transferable, sublicensable, worldwide, royalty-free license to use, copy, modify, publicly display, publicly perform and distribute Your Content only in connection with operating and providing the Fitbit Service.

You are responsible for Your Content. You represent and warrant that you own Your Content or that you have all rights necessary to grant us a license to use Your Content as described in these Terms. You also represent and warrant that Your Content and the use and provision of Your Content on the Fitbit Service will not: (a) infringe, misappropriate or violate a third party's patent, copyright, trademark, trade secret, moral rights or other intellectual property rights, or rights of publicity or privacy; (b) violate, or encourage any conduct that would violate, any applicable law or regulation or would give rise to civil liability; (c) be fraudulent, false, misleading or deceptive; (d) be defamatory, obscene, pornographic, vulgar or offensive; (e) promote discrimination, bigotry, racism, hatred, harassment or harm against any individual or group; (f) be violent or threatening or promote violence or actions that are threatening to any person or entity; or (g) promote illegal or harmful activities or substances.

You also agree that Your Content will comply with the following community guidelines:

1. Be respectful of the opinions of others. Even though you might not agree with someone, that doesn't mean they are wrong or deserve to be belittled. Remember that what works for you may not work for everyone else. Give everyone the same courtesy you would expect in return.

2. Do not post profane or explicit content.

3. Do not post profile pictures that might be considered inappropriate.

4. Do not post communications that could be interpreted as threatening or harassing.

FITBIT_HR_000012

5. Do not post, advertise, or promote products or services commercially.

## Fitbit's Rights

"Fitbit Content" includes any text, graphics, images, music, software, audio, video, works of authorship of any kind, and information or other materials that are posted, generated, provided or otherwise made available through the Fitbit Service to you. Except for Your Content, Fitbit Content, the Fitbit Service and its underlying technology are protected by copyright, patent, intellectual property, and other laws of the United States and foreign countries. You agree not to remove, change or obscure any copyright, trademark, service mark or other proprietary rights notices incorporated in or accompanying the Fitbit Service.

## What You Can Do On The Fitbit Service

The Fitbit Service is intended for your personal, non-commercial use.

Fitbit grants you a limited, non-exclusive, non-transferable, non-sublicensable license to (1) access and view the Fitbit Content, (2) access and use the software and mobile applications provided by the Fitbit Service, and (3) use the software that is embedded into Fitbit products as authorized in these Terms. This license is provided solely for your personal use and enjoyment of the Fitbit Service as permitted in these Terms.

You will not use, copy, adapt, modify, prepare derivative works based upon, distribute, license, sell, transfer, publicly display, publicly perform, transmit, broadcast or otherwise exploit the Fitbit Content, Fitbit Service or any portion thereof, except as expressly permitted in these Terms. No licenses or rights are granted to you by implication or otherwise under any intellectual property rights owned or controlled by Fitbit or its licensors, except for the licenses and rights expressly granted in these Terms.

## Things You Cannot Do On The Fitbit Service

Except to the extent permitted by law, you may not do any of the following while accessing or using the Fitbit Service: (1) use, display, mirror or frame the Fitbit Service or any individual element within the Fitbit Service, Fitbit's name, any Fitbit trademark, logo or other proprietary information, or the layout and design of any page or form contained on a page, without Fitbit's express written consent; (2) access or tamper with non-public areas of the Fitbit Service, Fitbit's computer systems, or the technical delivery systems of Fitbit's providers; (3) test the vulnerability of any Fitbit system or breach any security or authentication measures; (4) circumvent any technological measure implemented by Fitbit or any of Fitbit's providers or any other third party (including another user) to protect the Fitbit Service or Fitbit Content; (5) access the Fitbit Service or Fitbit Content through the use of any mechanism other than through the Fitbit Service or Fitbit API; or (6) modify, decompile, disassemble, reverse engineer, tamper with or otherwise attempt to derive the source code of any software that Fitbit provides to you or any other part of the Fitbit Service.

## Our Enforcement Rights

We are not obligated to monitor access or use of the Fitbit Service, Fitbit Content, or Your Content or to review or edit any Fitbit Content or Your Content, but we have the right to do so for the purpose of operating the Fitbit Service, to ensure compliance with these Terms, and to comply with applicable law or other legal requirements. We may consult with and disclose unlawful conduct to law enforcement authorities; and pursuant to valid legal process, we may cooperate with law enforcement authorities to prosecute users who violate the law. We reserve the right (but are not required) to remove or disable access to the Fitbit Service, any Fitbit Content, or Your Content at any time and without notice, and at our sole discretion, if we determine that the Fitbit Content, Your Content, or your use of the Fitbit Service is objectionable or in violation of these Terms. We have the right to investigate violations of these Terms and any conduct that affects the Fitbit Service.

## Use The Fitbit Service At Your Own Risk

Our goal is to provide helpful and accurate information on the Fitbit Service, but we make no endorsement, representation or warranty of any kind about any Fitbit Content, information, services or recommendations.. We are not responsible for the accuracy, reliability, effectiveness, or correct use of information you receive through the Fitbit Service. Maps, directions, and other GPS or navigation data, including data relating to your current location, may be unavailable, inaccurate or incomplete. If you rely on any Fitbit Content or the Fitbit Service, you do so solely at your own risk.

## Consult Your Doctor Before Using The Fitbit Service

The Fitbit Service is not intended to diagnose, treat, cure, or prevent any disease. If you have a medical or heart condition, consult your doctor before using the Fitbit Service, engaging in an exercise program or changing your diet. If you experience a medical emergency, stop using the Fitbit Service and consult with a medical professional. We are not responsible for any health problems that may result from training programs, consultations, products, or events you learn about through the Fitbit Service. If you engage in any exercise program you receive or learn about through the Fitbit Service you agree that you do so at your own risk and are voluntarily participating in these activities. **If you start to experience redness or skin irritation on your wrist, remove your device. If symptoms persist longer than 2-3 days of not using your device, contact a dermatologist**.

## Use Common Sense

Use of the Fitbit Service should not replace your good judgment and common sense. Please read and comply with all safety notices that accompany your Fitbit product or service, including those located on our Wear and Care (http://domain.com/productcare) page.

## DMCA/Copyright Policy

Fitbit respects copyright law and expects its users to do the same. It is Fitbit's policy to terminate in appropriate circumstances account holders who repeatedly infringe the rights of copyright holders. Please see Fitbit's DMCA/Copyright Policy (http://domain.com/copyright-policy) .

## Additional Policies Apply To Product Orders

Fitbit's Terms of Sale (http://domain.com/terms-of-sale) and Return Policy and Warranty (http://domain.com/returns) apply to purchases made through the Fitbit store. All orders placed are subject to Fitbit's acceptance. We may accept, decline, or place limits on your order for any reason.

FITBIT_HR_000013

## Feedback And Submissions Policy

If you submit comments, ideas, or feedback to us, you agree that we can use them without any restriction or compensation to you. We do not waive any rights to use similar or related ideas or feedback previously known to us, developed by Fitbit, or obtained from sources other than you. Our Feedback and Submissions Policy (http://domain.com/feedback-policy) is also part of the Terms.

## Terms Specifically Related to Our Premium Fitbit Membership

Additional terms and conditions apply to the Premium Fitbit membership.

## Contests And Giveaways

Additional terms and conditions may apply to contests, giveaways and other promotions sponsored by Fitbit and its partners. It is your responsibility to carefully review those terms and conditions.

## You Agree to Receive Alerts And Notifications

As part of your use of the Fitbit Service, you may receive notifications, text messages, alerts, or emails. You agree to the receipt of these communications. You can control receipt of non-service related communications from your account settings. You are responsible for any messaging or data fees you may be charged by your wireless carrier.

## We Are Not Responsible For Third-Party Links On The Fitbit Service

The Fitbit Service contains links to third-party websites, apps, services and resources (collectively "Third-Party Services") that are not under Fitbit's control. We provide these links only as a convenience and are not responsible for the content, products or services that are available from Third-Party Services. You acknowledge sole responsibility and assume all risk arising from your use of any Third-Party Services.

## Fitbit Does Not Control Third-Party Services That You Link With Your Fitbit Account

The Fitbit Service may provide the opportunity for you to link your Fitbit account, Fitbit data, or the Fitbit Service with Third-Party Services. Although we offer this opportunity, you acknowledge that any Third-Party Services that you use in connection with the Fitbit Service are not part of the Fitbit Service. You acknowledge that these Terms and the Fitbit Privacy Policy do not apply to any Third-Party Services. You are responsible for reading and understanding the terms and conditions and privacy policy that applies to your use of any Third-Party Services.

## Changes To The Fitbit Service

Fitbit may change or discontinue, temporarily or permanently, any feature or component of the Fitbit Service at any time without notice. Fitbit is not liable to you or to any third party for any modification, suspension or discontinuance of any feature or component of the Fitbit Service. We reserve the right to determine the timing and content of software updates, which may be automatically downloaded and installed by Fitbit products without prior notice to you.

## Termination

If you violate these Terms, we reserve the right to deactivate your account or terminate these Terms, at our sole discretion, at any time and without notice or liability to you. Upon any such termination, we may delete Your Content and other information related to your account. You may cancel your account at any time by contacting Customer Support (http://help.fitbit.com/customer/portal/emails/new) . Upon any termination, discontinuation or cancellation of the Fitbit Service or your account, the following provisions of these Terms will survive: Posting Your Content On The Fitbit Service; Fitbit's Rights; Our Enforcement Rights; Consult Your Doctor Before Using The Fitbit Service; Termination; Disclaimers; Indemnity; Limitation of Liability; Dispute Resolution; and General Terms.

## Disclaimers

THE FITBIT SERVICE AND FITBIT CONTENT ARE PROVIDED "AS IS," WITHOUT WARRANTY OF ANY KIND. WITHOUT LIMITING THE FOREGOING, WE EXPLICITLY DISCLAIM ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, QUIET ENJOYMENT OR NON-INFRINGEMENT, AND ANY WARRANTIES ARISING OUT OF COURSE OF DEALING OR USAGE OF TRADE. We make no warranty that the Fitbit Service or Fitbit Content will meet your requirements or be available on an uninterrupted, secure, or error-free basis. We make no warranty regarding the quality, accuracy, timeliness, truthfulness, completeness or reliability of the Fitbit Service or any Fitbit Content. You acknowledge and agree that if you rely on any Fitbit Content or the Fitbit Service, you do so solely at your own risk.

## Indemnity

You will indemnify and hold harmless Fitbit and its officers, directors, employees and agents, from and against any claims, disputes, demands, liabilities, damages, losses, and costs and expenses, including, without limitation, reasonable attorneys' fees arising out of or in any way connected with (i) your access to or use of the Fitbit Service, (ii) Your Content, or (iii) your breach of any warranties made by you hereunder or your violation of any other provision of these Terms. We reserve the right to assume control of the defense of any third-party claim that is subject to indemnification by you, in which event you will cooperate with us in asserting any available defenses.

## Limitation Of Liability

NEITHER FITBIT, ITS SUPPLIERS OR LICENSORS, NOR ANY OTHER PARTY INVOLVED IN CREATING, PRODUCING, OR DELIVERING THE FITBIT SERVICE WILL BE LIABLE FOR ANY INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOSS OF DATA OR GOODWILL, SERVICE INTERRUPTION, COMPUTER DAMAGE OR SYSTEM FAILURE OR THE COST OF SUBSTITUTE SERVICES ARISING OUT OF OR IN CONNECTION WITH THESE TERMS OR FROM THE USE OF OR INABILITY TO USE THE FITBIT SERVICE, WHETHER BASED ON WARRANTY, CONTRACT, TORT (INCLUDING

FITBIT_HR_000014

NEGLIGENCE), PRODUCT LIABILITY OR ANY OTHER LEGAL THEORY, AND WHETHER OR NOT FITBIT HAS BEEN INFORMED OF THE POSSIBILITY OF SUCH DAMAGE, EVEN IF A LIMITED REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

IN NO EVENT WILL FITBIT'S TOTAL LIABILITY ARISING OUT OF OR IN CONNECTION WITH THESE TERMS OR FROM THE USE OF OR INABILITY TO USE THE FITBIT SERVICE EXCEED THE AMOUNTS YOU HAVE PAID TO FITBIT FOR USE OF THE FITBIT SERVICE OR ONE HUNDRED DOLLARS ($100), IF YOU HAVE NOT HAD ANY PAYMENT OBLIGATIONS TO FITBIT, AS APPLICABLE.

THE EXCLUSIONS AND LIMITATIONS OF DAMAGES SET FORTH ABOVE ARE FUNDAMENTAL ELEMENTS OF THE BASIS OF THE BARGAIN BETWEEN FITBIT AND YOU.

## Dispute Resolution

You agree that any dispute between you and Fitbit arising out of or relating to these Terms of Service, the Fitbit Service, or any other Fitbit products or services (collectively, "Disputes") will be governed by the arbitration procedure outlined below.

Governing Law: The Terms of Service and the resolution of any Disputes shall be governed by and construed in accordance with the laws of the State of California without regard to its conflict of laws principles.

Informal Dispute Resolution: We want to address your concerns without needing a formal legal case. Before filing a claim against Fitbit, you agree to try to resolve the Dispute informally by contacting support@fitbit.com (mailto:support@fitbit.com) . We'll try to resolve the Dispute informally by contacting you through email. If a dispute is not resolved within 15 days after submission, you or Fitbit may bring a formal proceeding.

We Both Agree To Arbitrate: You and Fitbit agree to resolve any Disputes through final and binding arbitration, except as set forth under Exceptions to Agreement to Arbitrate below.

Opt-out of Agreement to Arbitrate: You can decline this agreement to arbitrate by contacting legal@fitbit.com (mailto:legal@fitbit.com) within 30 days of first accepting these Terms of Service and stating that you (include your first and last name) decline this arbitration agreement.

Arbitration Procedures: The American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes. The arbitration will be held in the United States county where you live or work, San Francisco, California, or any other location we agree to.

Arbitration Fees: The AAA rules will govern payment of all arbitration fees. Fitbit will pay all arbitration fees for claims less than $75,000. Fitbit will not seek its attorneys' fees and costs in arbitration unless the arbitrator determines that your claim is frivolous.

Exceptions to Agreement to Arbitrate: Either you or Fitbit may assert claims, if they qualify, in small claims court in San Francisco (CA) or any United States county where you live or work. Either party may bring a lawsuit solely for injunctive relief to stop unauthorized use or abuse of the Fitbit products or Fitbit Service, or infringement of intellectual property rights (for example, trademark, trade secret, copyright or patent rights) without first engaging in arbitration or the informal dispute-resolution process described above.

No Class Actions: You may only resolve Disputes with Fitbit on an individual basis, and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action. Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations aren't allowed under our agreement.

Judicial Forum for Disputes: In the event that the agreement to arbitrate is found not to apply to you or your claim, you and Fitbit agree that any judicial proceeding (other than small claims actions) will be brought in the federal or state courts of San Francisco County, California. Both you and Fitbit consent to venue and personal jurisdiction there. We both agree to waive our right to a jury trial.

Limitation on Claims: Regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to your use of the Fitbit products or Fitbit Service must be filed within one (1) year after such claim or cause of action arose, or else that claim or cause of action will be barred forever.

## General Terms

Except as otherwise stated herein, these Terms constitute the entire and exclusive understanding and agreement between Fitbit and you regarding the Fitbit Service, and these Terms supersede and replace any and all prior oral or written understandings or agreements between Fitbit and you regarding the Fitbit Service and Fitbit Content. If for any reason a court of competent jurisdiction finds any provision of these Terms invalid or unenforceable, that provision will be enforced to the maximum extent permissible and the other provisions of these Terms will remain in full force and effect.

You may not assign or transfer these Terms, by operation of law or otherwise, without Fitbit's prior written consent. Any attempt by you to assign or transfer these Terms, without such consent, will be null. Fitbit may freely assign or transfer these Terms without restriction. Subject to the foregoing, these Terms will bind and inure to the benefit of the parties, their successors and permitted assigns.

Any notices or other communications provided by Fitbit under these Terms, including those regarding modifications to these Terms, will be given: (i) via email; or (ii) by posting to the Fitbit Service. For notices made by e-mail, the date of receipt on the message will be deemed the date on which such notice is transmitted.

Fitbit's failure to enforce any right or provision of these Terms will not be considered a waiver of such right or provision. The waiver of any such right or provision will be effective only if in writing and signed by a duly authorized representative of Fitbit. Except as expressly set forth in these Terms, the exercise by either party of any of its remedies under these Terms will be without prejudice to its other remedies under these Terms or otherwise.

## Additional Terms May Apply

Additional terms may apply to certain products or services. In the event that there is a conflict between these Terms and any additional terms, the additional terms will control.

## Contact Us

FITBIT_HR_000015

**Please contact us if you have any questions about these Terms.**

Fitbit, Inc.
405 Howard Street
San Francisco, CA 94105
support@fitbit.com

Previous Website Terms and Conditions (http://domain.com/company/previousterms)

GET THE SKINNY ON ALL THINGS FITBIT

Enter your email address

f (http://domain.com/www.facebook.com/fitbit)     (http://domain.com/www.twitter.com/fitbit)     (http://domain.com/instagram.com/fitbit)
  (http://domain.com/www.pinterest.com/fitbit/)         (http://domain.com/www.youtube.com/user/FitbitOfficialSite)
       (http://domain.com/plus.google.com/+fitbit)   BLOG (http://domain.com/blog.fitbit.com/)

About Us (http://www.fitbit.com/about)

Investor Relations (http://investor.fitbit.com)

Careers (http://domain.com/jobs)

Retailers (http://www.fitbit.com/retailers)

Affiliates (http://domain.com/affiliates)

Corporate Wellness (http://www.fitbit.com/fitbit-

wellness)

API (https://dev.fitbit.com/)

Help ( http://help.fitbit.com )

United States (change (http://domain.com/countries) )

©2015 Fitbit Inc. All rights reserved.
Privacy Policy

(http://www.fitbit.com/privacy)

Terms of Service

(http://www.fitbit.com/terms)

Returns & Warranty

(http://www.fitbit.com/returns)

Wear and Care

(http://www.fitbit.com/productcare)

Recall & Safety Info

(http://domain.com/forcesupport/info)

FITBIT_HR_000016

# ATTACHMENT 3



1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043
Telephone: (856)435-6401

April 25, 2018

Jonathan D. Selbin, Esq.
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street
8th Floor
New York, NY 10013
Via Email to: jselbin@lchb.com

William L. Stern, Esq.
Morrison & Foerster, LLP
425 Market Street
34th Floor
San Francisco, CA 94105-2482
Via Email to: wstern@mofo.com

Case Number: 01-18-0001-3597

Kate McLellan
-vs-
Fitbit, Inc.

Dear Parties:

The claimant has filed with us a demand for arbitration. The American Arbitration Association ("AAA") has determined that this arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules ("Consumer Rules") apply to this dispute. The Consumer Rules may be found on our website at www.adr.org.

We note that the contract references the Commercial Arbitration Rules. According to R-1* of the Commercial Arbitration Rules, the AAA applies the Consumer Arbitration Rules to disputes arising out of consumer arbitration agreements.

We are in receipt of a court order compelling arbitration. Accordingly, we are proceeding on that basis.

Under California law (the Ethics Standards for Neutral Arbitrators in Contractual Arbitration), upon the appointment of an arbitrator in consumer arbitrations, the AAA is required to disclose certain information regarding cases we have administered. Also, pursuant to the California Code of Civil Procedure section 1281.96, the AAA must collect and make available to the public information regarding our involvement in, and outcome of, consumer arbitrations.

The AAA relies on the information provided by the parties to fulfill its obligations under California law. Therefore, we ask that you take the time to review party names in the case caption (located under the case number at the top of this letter) and immediately advise me if any changes need to be made.

Pursuant to section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees

and costs. This waiver of fees does not include arbitrator fees and compensation. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. A consumer meeting these requirements must submit to the AAA a declaration under of oath regarding monthly income and the number of persons in the consumer's household. Please email me if you have any questions regarding the waiver of administrative fees.

Under the Consumer Rules, the consumer pays a filing fee of $200 and the business pays a filing fee of $1,700. We have received the consumer's $200 portion of the filing fee So that the filing requirements are complete, **the business is requested to submit filing fees of $1,700 and the arbitrator's compensation deposit of $2,500, totaling $4,200**.

Please make the check payable to the American Arbitration Association and include a reference to the case number. Checks should be mailed to 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. In the event that payment is being made by a third party, such as an insurance company, please request that payment be sent directly to the business' representative. The business' representative should then forward payment to the AAA in accordance with the foregoing instructions.

The requested payment  should be received no later than **May 9th, 2018** and the AAA may decline to administer this dispute if the business does not timely respond. It should be noted that the consumer's satisfaction of the filing requirements triggers the business' obligation to promptly pay its share of the filing fees under the rules and the business may owe all or a portion of the filing fees even if the matter is settled or withdrawn. The AAA will refund any overpayments received from the consumer with the filing.

No answering statement or counterclaim is due at this time and the parties will be notified of the applicable deadlines upon satisfaction of all the filing requirements.

Please email ConsumerSpecialist@adr.org if you have any questions. The AAA appreciates the opportunity to assist you with your dispute resolution needs.

Sincerely,

Consumer Filing Team
ConsumerSpecialist@adr.org
Fax (877) 304-8457

# ATTACHMENT 4

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

May 3, 2018

Writer's Direct Contact
+1 (415) 268.7637
WStern@mofo.com

*Via e-mail and U.S. Mail*

Jonathan D. Selbin
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
jselbin@lchb.com

Kevin R. Budner
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
kbudner@lchb.com

Andrea Clisura
Levi & Korsinsky, LLP
30 Broad St.,
24th Floor
New York, NY 10004
aclisura@zlk.com

Robert Klonoff
Robert H. Klonoff, LLC
2425 SW 76th Ave.
Portland, OR 97225
klonoff@usa.net

**Re:    Demand for Arbitration**

Dear Counsel:

This letter confirms receipt of your email dated April 3, 2018, enclosing a demand for arbitration on behalf of Claimant Kate McLellan.  As set forth below, Fitbit has agreed to pay the claim set forth in Ms. McLellan's demand.

**Payment of Demand**

Fitbit has elected to pay the claim set forth in the demand in full, as follows:

1. A refund of the amount Ms. McLellan claims she paid for the Charge HR she purchased at Sports Chalet in Temecula, California on February 27, 2015 ($161.94 after tax), along with prejudgment interest on that amount;

2. Punitive damages calculated as the total amount in #1, above, times four.  We have followed the Ninth Circuit's lead that "a ratio of up to 4 to 1 serves as a good proxy

sd-717734

**MORRISON | FOERSTER**

Jonathan D. Selbin
Kevin R. Budner
Andrea Clisura
Robert Klonoff
May 3, 2018
Page Two

for the limits of constitutionality." *Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activists*, 422 F.3d 949, 962 (9th Cir. 2005)[1]; and

3. Reasonable attorneys' fees and costs associated with the arbitration in the amount of $1,750 (1,000 in fees, plus $750 in costs in accordance with the AAA's Standard Fee Schedule).

**<u>Letter to Ms. McLellan</u>**

Enclosed please find a letter addressed to Ms. McLellan, which details how her payment was calculated. Please feel free to give us a call if you have any questions regarding how Fitbit calculated these numbers.

In terms of payment, Fitbit will prepare a check for Ms. McLellan, subject to receipt of her W-9. Once we receive Ms. McLellan's W-9, we will send her check to you for transmittal. Fitbit will prepare a check payable to you upon receipt of counsel's W-9.

Pursuant to California Business & Professions Code § 6103.5 and California Rule of Professional Conduct 3-510(a), please forward this letter to Ms. McLellan. Note that under California Business & Professions Code § 6103.5, Fitbit is entitled to discover whether you have sent the letter to your client.

We consider the arbitration demand of Ms. McLellan resolved.

Sincerely,

William L. Stern

---

[1] The payment of punitives should not be construed as an admission that Ms. McLellan is entitled to punitive damages. Fitbit maintains that Ms. McLellan is not entitled to punitive damages but has agreed to pay punitives purely for purposes of compromise and repose.

**MORRISON | FOERSTER**

Jonathan D. Selbin
Kevin R. Budner
Andrea Clisura
Robert Klonoff
May 3, 2018
Page Three

cc:   Gloria Y. Lee
      Erin M. Bosman
      Julie Y. Park
      Kai S. Bartolomeo

# ATTACHMENT 5

199 Fremont Street, 14th Floor     info@fitbit.com
San Francisco, CA 94105            www.fitbit.com

May 4, 2018

**∴ fitbit**

*Via e-mail and U.S. Mail*

Kate McLellan
c/o Jonathan D. Selbin
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
jselbin@lchb.com

**Re:**   **Demand for Arbitration**

Dear Ms. McLellan:

This letter confirms receipt of your counsel's email dated April 3, 2018, enclosing your demand for arbitration.

Fitbit has elected to resolve this matter through payment to you and your counsel in the total amount of $2,814.75.  Once Fitbit receives from your counsel IRS Form W-9s for you and your counsel, Fitbit will prepare two checks.  The first, payable to you in the amount of **$1,064.75**, includes: (1) the total amount you paid, after tax, for the Charge HR you claim to have purchased at Sports Chalet in Temecula, California on February 27, 2015, plus interest on that amount; and (2) the maximum amount you could potentially recover as punitive damages, which we compute as four times actual damages (after including prejudgment interest at 10% per year).[1]  The second check, payable to your counsel in the amount of **$1,750**, includes reasonable attorneys' fees of $1,000 and reimbursement of their $750 associated with filing your demand for arbitration.

---

[1] The payment of punitives should not be construed as an admission that you entitled to punitive damages.  Fitbit has agreed to pay this purely for purposes of compromise and repose.

199 Fremont Street, 14th Floor    info@fitbit.com
San Francisco, CA 94105           www.fitbit.com



The payment calculation is as follows:

| Alleged Purchase Price After Tax | Interest[2] | Punitive Damages | Attorneys' Fees and Costs | Total Payment[3] |
|---|---|---|---|---|
| $161.94 | ($161.94 x .10 x 3.15 years) = <u>$51.01</u> | $851.80 | $1,750 | $2,814.75 |

Fitbit regards this matter as closed.

Sincerely,

Gloria Lee

Gloria Y. Lee

cc:    Jonathan D. Selbin
        Kevin R. Budner
        Andrea Clisura
        Robert Klonoff

---

[2] Interest is calculated as follows: purchase price x 10% x time in years (date of purchase through present).

[3] Total Payment = Total Amount + Interest + Punitives + Attorneys' Fees & Costs.  Punitives include: (Purchase Price + Interest) x 4.  Fees and costs, payable to your counsel, include: $1,000 in attorneys' fees, plus $750 in costs in accordance with the AAA's Standard Fee Schedule.

# ATTACHMENT 6

**Lieff
Cabraser
Heimann&
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
t 415.956.1000
f 415.956.1008

May 14, 2018

Kevin R. Budner
Partner
kbudner@lchb.com

**VIA E-MAIL**

Will L. Stern
wstern@mofo.com
Morrison Foerster
425 Market Street
San Francisco, CA 94105

Erin M. Bosman
ebosman@mofo.com
Kai S. Bartolomeo
kbartolomeo@mofo.com
Julie Y. Park
juliepark@mofo.com
Morrison Foerster
12531 High Bluff Dr., #100
San Diego, CA 92130

RE:   *McLellan v. Fitbit, Inc.*, Response to Fitbit's Correspondence re Demand for
        Arbitration

Dear Counsel:

We have received your letters emailed on May 3, 2018, and relayed them to Ms.
McLellan.  As a threshold matter, we note that Fitbit's decision to unilaterally set the ratio of
compensatory to punitive damages is unsupported and that the specific ratio it offers does not
constitute full relief, even under the case law Fitbit cites.  *See Planned Parenthood of
Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 962 (9th Cir. 2005)
(holding that "where there are insignificant economic damages but the behavior was particularly
egregious, the single-digit ratio may not be a good proxy for constitutionality," and that "our
constitutional sensibilities are not offended by a 9 to 1 ratio").

Nevertheless, if the proposed resolution were offered to all members of the proposed
class that Ms. McLellan seeks to represent, and if it included public injunctive relief in the form

May 14, 2018
Page 2

of modified and corrective marketing and packaging, Ms. McLellan would accept the offer. Barring those modifications, Ms. McLellan declines the offer.

Ms. McLellan maintains that, as Fitbit has long argued and as Judge Donato ruled, she has the right to have an arbitrator determine (1) whether the arbitration clause and class action waiver are enforceable and/or applicable to her claims, and (2) whether she can bring a claim for public injunctive relief on behalf of all members of the proposed class. *See* Dkt. No. 114 at 9 ("The arbitrator will resolve [the non-opt-out] plaintiffs' challenges to the scope and enforceability of the arbitration clause."); *id.* at 8 (plaintiffs' arguments that "Fitbit procured the agreement to arbitrate by fraud" and that "the arbitration provision is unenforceable as applied to plaintiffs' claims for public injunctive relief . . . must be considered by the AAA arbitrator in the first instance"). Ms. McLellan intends to enforce her right to seek this determination.

Sincerely,

Kevin R. Budner

1557529.2

# ATTACHMENT 7

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

May 16, 2018

Writer's Direct Contact
+1 (415) 268.7637
WStern@mofo.com

VIA EMAIL AND FACSIMILE

American Arbitration Association
Consumer Filing Team
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043
Telephone: (856)435-6401
Facsimile: (877) 304-8457
ConsumerSpecialist@adr.org

**Re:**     *Kate McLellan v. Fitbit, Inc.*, **Case No. 01-18-0001-3597**

Dear Consumer Filing Team:

We are counsel for Fitbit, Inc., the respondent in the above-referenced matter.  We received
your letter of April 25, 2018 regarding Claimant Kate McLellan's demand for arbitration.
On May 3, 2018, Fitbit sent Claimant and her counsel a written offer to pay 100%-plus of her
claim.  Specifically, Fitbit offered Claimant:

- **Full refund plus interest.**  A refund of $161.94, which is the full amount Claimant
  alleges she paid for the device, along with 10% prejudgment interest on that amount
  ($51.01).  This is almost seven times what she paid.  In addition to a full refund of the
  purchase price, Ms. McLellan would get to keep her device;

- **Punitive damages**.  Punitive damages of $851.80, which reflect a 4-1 compensatory-
  to-punitive damages ratio, consistent with the law in the Ninth Circuit; and

- **Attorney's fees/costs.**  $1,000 in attorneys' fees plus reimbursement of $750 in costs
  (in accordance with the AAA's Standard Fee Schedule), for a total of $1,750.

Copies of Fitbit's letters communicating this offer are enclosed as Attachments 1 and 2.

On May 14, 2018, Claimant rejected Fitbit's offer.  On our telephone call, we asked counsel
what amount, in their view, would be acceptable, but counsel declined to give a number,
aside from non-monetary relief.  They required that Fitbit extend this offer "**to all members
of the proposed class that Ms. McLellan seeks to represent.**"  **This isn't so much a counter-**

MORRISON | FOERSTER

American Arbitration Association
May 16, 2018
Page Two

**offer as a demand that Fitbit rewrite her contract.**  You should know that there is an ongoing
class action case, *McLellan v. Fitbit, Inc.*, No. 16-cv-00036-JD (N.D. Cal.), and counsel told
us they plan to address their concerns to the district court.  Attached is her counsel's rejection
letter.  (Attachment 3.)

Fitbit's goal is customer satisfaction.  However, the filing fee alone ($750) is almost five
times her total out-of-pocket claim, were she to succeed.  We believe Fitbit's total offer of
$2,814.75—which is more than 17 times what she paid—is many times more than what she
could recover if she were to proceed to arbitration and prevail.

Fitbit regards this matter as concluded.

Please feel free to contact me should you have any questions.

Sincerely,

William L. Stern

cc:     Jonathan D. Selbin
        Kevin R. Budner
        Andrea Clisura
        Robert Klonoff
        Gloria Y. Lee
        Erin M. Bosman
        Julie Y. Park
        Kai S. Bartolomeo

# ATTACHMENT 8

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

June 1, 2018

Writer's Direct Contact
+1 (415) 268.7637
WStern@mofo.com

*Via E-mail and U.S. Mail*

Jonathan D. Selbin
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
jselbin@lchb.com

Kevin R. Budner
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
kbudner@lchb.com

Andrea Clisura
Levi & Korsinsky, LLP
30 Broad Street, 24th Floor
New York, NY 10004
aclisura@zlk.com

Robert Klonoff
Robert H. Klonoff, LLC
2425 SW 76th Avenue
Portland, OR 97225
klonoff@usa.net

**Re:    Demand for Arbitration**

Dear Counsel:

I write regarding Kate McLellan's demand for arbitration and to clarify Fitbit's offer to resolve Ms. McLellan's claim.  Unfortunately, that offer has been misinterpreted as an attempt to circumvent her agreement to arbitrate.  (*See* Dkt. No. 137.)  Fitbit intended nothing of the sort.

As discussed below, and as Fitbit will explain in its forthcoming submission to Judge Donato, its offer was a good faith effort to resolve what it understood to be Ms. McLellan's grievance.  Ms. McLellan rejected that offer, as is her right.  Fitbit will contact AAA with an update on the parties' discussions.  With the understanding that Ms. McLellan is not seeking to engage in individual monetary settlement discussions at this time, Fitbit intends to submit the formation issues to the arbitrator.

I hope the following explanation will further dispel any misunderstanding.

The Court issued its order granting Fitbit's motion to compel arbitration as to the twelve non-opt-out plaintiffs on October 11, 2017.  In that order, the Court stated that those twelve plaintiffs were to have their challenges to the scope and enforceability of the arbitration

MORRISON | FOERSTER

Jonathan D. Selbin
Kevin R. Budner
Andrea Clisura
Robert Klonoff
June 1, 2018
Page Two

clause resolved by the arbitrator.  For six months, Fitbit heard nothing further from any of the non-optout plaintiffs regarding their intent to pursue their claims before the AAA.  Then, on April 25, 2018, Fitbit received formal service of an arbitration demand from one of the twelve non-opt-outs:  Ms. McLellan.  Ms. McLellan's AAA demand is expressly styled as an "individual" demand.  On its face, it seeks monetary relief only:  $161.94 in monetary damages plus attorneys' fees, interest, costs, punitive damages, and "other."  It doesn't, for example, seek a determination as to "contract formation," and it makes no mention of the other eleven opt-outs who were also subject to the Court's October 2017 order.

Based on Ms. McLellan's demand, it appeared that:

- Ms. McLellan was demanding monetary relief for herself only, with the only question being the dollar amount.

- As for a determination about contract formation, we assumed that Plaintiffs decided not to present that question to the arbitrator via Ms. McLellan and instead might have been reserving that issue for one of the other eleven non-optouts (whose arbitration demands still have not been filed).

Fitbit's offer of full relief was based on the content of Ms. McLellan's demand and what Fitbit reasonably believed she was requesting to resolve her grievance.

To reiterate what I said at the hearing, Fitbit is dedicated to customer service.  The company has little interest in litigating against its customers when it appears there is a reasonable, mutually agreeable route to resolution.  Indeed, the Terms of Service (ToS) expressly say "We want to address your concerns without needing a formal legal case" and that Fitbit will "try to resolve the Dispute informally."  It was in that spirit that Fitbit extended, through counsel, its offer.  Ms. McLellan, of course, was within her rights to decline.

I apologize if there was a misunderstanding, but it was never Fitbit's intent to preclude Ms. McLellan (or any Fitbit customer) of their right to proceed in arbitration.  And that is still true today.

sf-3905708

**MORRISON | FOERSTER**

Jonathan D. Selbin
Kevin R. Budner
Andrea Clisura
Robert Klonoff
June 1, 2018
Page Three


We will contact AAA and proceed to the next steps in arbitration.

Sincerely,

William L. Stern

cc:   Gloria Y. Lee
      Erin M. Bosman
      Julie Y. Park
      Kai S. Bartolomeo

# ATTACHMENT 9

**Lieff**
**Cabraser**
**Heimann**&
**Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t  212.355.9500
f  212.355.9592

Jonathan D. Selbin
Partner
jselbin@lchb.com

June 4, 2018

**VIA E-MAIL AND U.S. MAIL**

William L. Stern
Morrison Foerster
425 Market Street
San Francisco, CA 94105-2482
wstern@mofo.com

RE:     3:16-cv-00036; *McLellan et al. v. Fitbit, Inc.*

Dear Will:

I write in response to your letter of June 1, 2018 regarding Ms. McLellan and arbitration.  Any claim now that Fitbit simply "misunderstood" Ms. McLellan's position until the hearing last week is patently false:  you (and Fitbit) well-knew she was not seeking merely individual monetary relief, but rather intended to seek the ruling on arbitrability for which Judge Donato ordered the case to arbitration.

That you knew of Ms. McLellan's intention to seek a ruling on arbitrability is supported, among other things, by the following undisputed facts, none of which your letter acknowledges.  First, we expressly informed you of her intention to do so in our telephonic meet and confer on May 14, 2018.  You acknowledged that intention and countered that you had no intention of permitting her to do so.  Second, we reconfirmed her intention in our May 14, 2018 follow-up letter declining Fitbit's offer.  Third, we reiterated her position in our May 22 sur-reply.  Yet, neither you nor your client ever sought to "correct" any supposed "misunderstanding" prior to—or even *at*—the hearing before Judge Donato until it became clear that Judge Donato had seen through what he aptly called your "gamesmanship."

Simply put, you do not get to rewrite the actual history and now pretend to have misunderstood Ms. McLellan's intentions.  Those intentions were plainly—and repeatedly—stated to you in advance of the hearing.  In light of that, we view your June 1 letter as yet another instance of your lack of candor and gamesmanship.

San Francisco          New York          Nashville          Seattle          www.lieffcabraser.com

William L. Stern
June 4, 2018
Page 2


We intend to present the full and accurate factual record to the Court as ordered by Judge Donato in our upcoming papers, including your belated attempt to conjure a false defense of "misunderstanding." Should the Court once again order Ms. McLellan to arbitration to decide arbitrability, she will (again) comply with that order. Until such time as Judge Donato rules, however, it is her position that Fitbit has waived enforcement of, defaulted on, and/or voided its arbitration clause as to her and all absent class members by its failure to participate as required by Court order and its own Terms of Service.

In the meantime, you state that your client is "dedicated to customer service" and "has little interest in litigating against its customers when it appears there is a reasonable, mutually agreeable route to resolution." If that is true, Ms. McLellan, and we, stand prepared—as we always have been—to mediate a mutually agreeable resolution that provides relief to the entire class of purchasers. If that is of interest please let us know. Otherwise we will await Judge Donato's ruling.

Very truly yours,

Jonathan D. Selbin

cc:    Erin M. Bosman
       Kai S. Bartolomeo
       Julie Y. Park
       Gloria Lee
       Robert H. Klonoff
       Kevin R. Budner
       Andrea Clisura

1567786.2

# ATTACHMENT 10



Western Case Management Center
Neil Currie
Vice President
45 E River Park Place West, Suite 308
Fresno, CA 93720
Telephone: (877)528-0880
Fax: (855)433-3046

June 11, 2018

Jonathan D. Selbin, Esq.
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street
8th Floor
New York, NY 10013
Via Email to: jselbin@lchb.com

William L. Stern
Morrison & Foerster, LLP
425 Market Street
34th Floor
San Francisco, CA 94105-2482
Via Email to: wstern@mofo.com

Case Number: 01-18-0001-3597

Kate McLellan
-vs-
Fitbit, Inc.

Dear Counsel:

This will acknowledge that the filing requirements have been met.  Your case is now assigned to me for administration.

The **Consumer Arbitration Rules** have been applied to this matter.

### Administrative Fees:

- Consumer is responsible for $200 as her share of the filing fee, which has been paid.
- Business is responsible for $1700 as their share of the filing fee, which has been paid as well as the arbitrator compensation of $2500, which has been paid.
- An additional administrative fee of $500 is payable by the Business when there is an evidentiary hearing process and telephonic or in-person hearings are held.

Pursuant to section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the Association a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the undersigned if you have any questions regarding the waiver of administrative fees.

**Arbitrator Compensation:**

- Arbitrators serving on a case with an in-person or telephonic hearing will receive compensation at a rate of $2500 per day.
- Arbitrators serving on a desk arbitration/documents only case will receive compensation at a rate of  $1500 per case.
- Deposits for arbitrator compensation must be received prior to the administrative appointment of an arbitrator or the AAA may decline to further administer this matter.

**Answer:**

- The Respondent has until June 25, 2018 to file an answer to the claim.  If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant.
- The case will move forward after 14 days regardless of whether an answer is filed.
- Answers received after the due date will still be provided to the arbitrator.
- Please reference the Rules if filing a counterclaim.
- Per Consumer Rule R-2(e) "If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant. The case will move forward after 14 days regardless of whether an answer is filed."

**Initial List of People Form**

- We ask that the enclosed Initial List of People Form be returned to the AAA by June 25, 2018. Further instructions are provided on the enclosed reference sheet.

**Hearing Type and Locale of In-Person Hearing:**

- If no disclosed claim or counterclaim exceeds $25,000, the matter shall be resolved by the Procedures for the Resolution of Disputes through Document Submission contained in the Consumer Arbitration Rules, unless a party asks for a hearing or the arbitrator decides that a hearing is necessary.
- If an in-person hearing is to be held, the requested hearing location is San Francisco, California. Please refer to the Consumer Arbitration Rules for information regarding the Fixing of Locale (the city, county, state, territory and/or country where the arbitration will take place).

**Next Administrative Step:**

- Upon receipt of the appropriate fees and receipt of the answer, or after the deadline for filing the answer, the AAA will administratively appoint an Arbitrator from the National Roster.  The parties will be provided with the arbitrator's completed appointment documents.

**Mediation**

- Mediation is available to the parties at any time prior to the issuance of the award. In Mediation, an impartial person (the mediator) helps the parties try to settle their dispute by reaching an agreement together. A mediator's role is to help the parties come to an agreement. A mediator does not arbitrate or decide the outcome. If you would like more information about the AAA 's mediation services please contact me or visit Mediation.org for more information.

**CA CCP §1282.4**

- The parties' attention is directed to California Code of Civil Procedure Section 1282.4, regarding representation by an attorney not licensed to practice in the State of California.  Please contact us if you need a certification form as described in the statute.

Please review the enclosed Consumer Arbitration Reference Sheet and Steps of the Consumer Arbitration Process as well as our website at www.adr.org for additional information regarding the administration process.

The AAA appreciates the opportunity to assist you with your dispute resolution needs.

Sincerely,
/s/
Sophia Parra
Manager of ADR Services
Direct Dial: (559)490-1907
Email: SophiaParra@adr.org
Fax: (855)433-3046

Supervisor Information: *Cathe Stewart, Assistant Vice President 559-490-1840* stewartc@adr.org

Enclosures
cc:    Kevin R. Budner, Esq.

**AMERICAN ARBITRATION ASSOCIATION**
**Initial List of People, Firms, Companies, and/or Groups Involved in the Arbitration**

In the Matter of the Arbitration between:

Case Number: 01-18-0001-3597

Kate McLellan
-vs-
Fitbit, Inc.

Sophia Parra, Manager of ADR Services
DATE: June 11, 2018

An Arbitrator serving on this case must know the names of all persons, firms companies or other groups involved in this arbitration in or to make proper disclosures of any interests or relationships. The arbitrator uses the information you provide below to check his or her records for any interests or relationships. Providing complete information on this document is also important because it lowers to possibility of having to remove the arbitrator because of an interest or relationship after he or she begins serving on the case.

The AAA does not give this list to the opposing party and the parties are not required to share this list with each other, although the parties may do so voluntarily. This list will be given to the arbitrator, together with the filing documents. The arbitrator will need to divulge any relevant information when making appropriate and necessary disclosures in accordance with the applicable arbitration rules.

This form will only be used to check for conflicts and is not a preliminary or final witness list.

**Please list all people, firms, companies, and/or groups involved in the arbitration, including, but not limited to, witnesses, consultants, attorneys, and all other interested parties. Subsidiary and other related entities of any person, firm, company or other group should also be included on this list.**

PLEASE CIRCLE ONE:    CONSUMER / BUSINESS

NAME                                AFFILIATION                        ADDRESS

## *CONSUMER ARBITRATION REFERENCE SHEET*

## APPLICATION OF CONSUMER RULES:

The AAA applies the Consumer Arbitration Rules to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The Consumer Rules and the Consumer Due Process Protocol may be found on our web site at www.adr.org.

In order to determine if the arbitration agreement substantially and materially complies with the due process standards of the Consumer Due Process Protocol, **the AAA reviews the parties' arbitration clause only**, and not the entire contract. The AAA's review of the arbitration clause is only an administrative review to determine whether the clause complies with the AAA's minimum due process standards in consumer arbitrations. However, the AAA's review is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable.

## CONSUMER FEE SCHEDULE:

Pursuant to the Consumer Rules Fee Schedule, the consumer pays $200 as their share of the filing fee and the business pays $1700 as their share of the filing fee and, if and when applicable, $500 for the hearing fee. Additionally, the business shall pay the arbitrator's compensation. Any payments submitted with the filing of the Demand will be applied to the filing party's portion of these fees. Please note that arbitrator compensation depends on the type of proceeding, either Desk Arbitration or an evidentiary hearing process. Please refer to the Consumer Rules, specifically the Costs of Arbitration section, for additional information.

Also note that should either party not pay their fees in accordance with the Consumer Rules, the opposing party has the option to do so, thereby allowing us to proceed with the administration of this case. That party may then request that the arbitrator assess these costs in the award.

Please send payments to the attention of the case administrator.  As a service to our users, you may make payments with a credit card online via AAA's WebFile. If you desire to do so, please login at www.adr.org and select File and Manage a Case. Please note registration is required to use AAA WebFile. If you are mailing the payment, please include the top portion of the invoice with payment. Checks should be made payable to the American Arbitration Association.

## INITIAL LIST OF PEOPLE FORM

The Initial List of People form requests parties to list those witnesses you expect to present, as well as any persons or entities with an interest in these proceedings. Please see the Initial List of People form for additional information.   The parties are to exchange copies of all correspondence except this Initial List of People form.

## DOCUMENTS-ONLY ARBITRATION (DESK ARBITRATION)

When no disclosed claim exceeds $25,000, the AAA expects to administer the dispute as a Documents-Only Arbitration, sometimes called Desk Arbitration, to be decided by the Arbitrator on the submission of documents only, unless any party requests an oral hearing, or the Arbitrator determines that an oral hearing is necessary. Upon the Arbitrator's appointment, a fair and equitable schedule for the submission of documents will be established by the Arbitrator. Should either party request an oral hearing they should confirm their request in writing no later than the deadline for the filing of an answer.

## LOCALE OF IN-PERSON EVIDENTIARY HEARING

Please review the Consumer Rules, particularly Rule R-11 below, and the Consumer Due Process Protocol regarding the locale of hearings.

**Rule R-11. Fixing of Locale (the city, county, state, territory and/or country where the arbitration will take place)**
If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the Consumer Due Process Protocol.

## COMMUNICATION:

The AAA will make maximum use of electronic mail when communicating in writing, and requests that the parties do the same. If you have not provided us with your email address, we ask that you do so at this time. If a party does not provide us with their email address, then that party will have to rely on receiving correspondence via regular mail.

This case will be administered by facilitating the exchange of appropriate written correspondence either through the AAA or directly to the arbitrator. To ensure the proper handling of case-related documents, the parties are asked to always copy the AAA and all other parties. The AAA will determine if wr itten communication was properly served to all participants and will provide that correspondence to parties or the arbitrator as needed.

## EXTENSION REQUESTS:

The AAA has a strict policy regarding requests for extensions. If you need to extend any deadline during the course of the administrative process, please try to obtain the other party's agreement prior to contacting the AAA. The AAA or the arbitrator may for good cause extend any period of time in these Rules, except as set forth in R-42. The AAA will notify the parties of any extension.

## AAA WEBFILE:

We invite the parties to visit our website to learn more about managing your case online. As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, such as filing additional claims; completing the Initial List of People form; viewing invoices and submitting payments; sharing and managing documents and review of case status and hearing dates and times. If the case does not show up when you log in, you may request access to the case through WebFile. Your request should be processed within 24 hours, if not, please contact your case administrator.

## MEDIATION:

The AAA provides mediation services for all cases. Mediation is a private, non-binding process under which the parties submit their dispute to a third-party mediator. The mediator may suggest ways of resolving the dispute, but does not impose a settlement on the parties; the parties attempt to negotiate their own settlement agreement. If you would like more information about the AAA's mediation services including our Fixed Rate Mediation Program for cases involving only two parties with claims under $75,000 for the flat rate of $850, please contact your case administrator or visit Mediation.org for more information.

## REFUND SCHEDULE:

In closing we wish to remind the parties that the AAA has a Refund Schedule found in the Costs of Arbitration section of the Rules. If the case is settled or withdrawn within 30 calendar days of the claimant having met their filing requirements the business is eligible for a 50% refund of the business's filing fees. However, no refund of the filing fee will be made once an arbitrator has been appointed and no refunds will be made on awarded cases.  If the matter is settled or withdrawn prior to receipt of filing fees from the business, the AAA will bill the business in accordance with this refund schedule.

If the parties enter settlement negotiations at any time after the AAA has opened its file, you should take into consideration the refund schedule in the Rules. The AAA will only refund filing fees as outlined in the Rules and does not refund arbitrator costs incurred when parties settle their dispute or withdraw their claims. We encourage parties to resolve their disputes as amicably as possible and this notice is just to alert you to this issue so that it does not become a concern in the future.

## CALIFORNIA STATUTORY REQUIREMENT:

Pursuant to the California Code of Civil Procedure section 1281.96, the AAA must collect and make available to the public information regarding our involvement in, and outcome of, all of our consumer arbitrations. The AAA's Consumer Arbitration Statistics are available on the consumer page of the AAA's website.

To fulfill our obligations under California law the AAA relies on the information provided by the parties. Therefore, we ask that you review the party names in the case caption and immediately advise your case administrator if any changes need to be made.

# ATTACHMENT 11

**Lieff
Cabraser
Heimann&
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t  212.355.9500
f  212.355.9592

June 13, 2018

Jonathan D. Selbin
Partner
jselbin@lchb.com

**VIA E-MAIL**

Sophia Parra
Manager of ADR Services
American Arbitration Association
45 E River Park Place West, Suite 308
Fresno, CA 93720
SophiaParra@adr.org

　　　　　RE:　　Case Number: 01-18-0001-3597; Kate McLellan -vs- Fitbit, Inc.

Dear Ms. Parra:

　　　　　We are in receipt of your June 11, 2018 letter, and write to update you on a number of developments regarding this matter.  Ms. McLellan respectfully submits that, for the reasons outlined below, this matter should be stayed pending further proceedings in the United States District Court.

　　　　　By way of background, Ms. McLellan and others filed a lawsuit against Fitbit, Inc. ("Fitbit") in the United States District Court, Northern District of California.  The Plaintiffs in that action raised a number of challenges to the scope and enforceability of the arbitration clause in Fitbit's Terms of Service.  United States District Judge James Donato ultimately decided that the Terms of Service contained a valid "delegation clause" that required the Plaintiffs who had not opted out of the arbitration clause to arbitrate these threshold "arbitrability" issues.

　　　　　Ms. McLellan filed her arbitration demand on April 3, 2018, and attached the relevant court orders as Exhibits 2 and 3 to that demand.  AAA then set a deadline of May 9, 2018 for Fitbit to submit its portion of the filing fees.  Fitbit decided not to pay its fees, and instead told Ms. McLellan and then AAA that it "regard[ed] this matter as concluded" because Ms. McLellan had not accepted Fitbit's settlement offer.  *See* May 16, 2018 letter from Fitbit's counsel to AAA.

　　　　　Ms. McLellan raised this issue with Judge Donato, and the parties discussed the matter with him at a hearing on May 31, 2018.  *See* Exhibit A (transcript of the proceedings).  As evidenced by the transcript, Judge Donato was not pleased with what he described as Fitbit's "absolutely unacceptable level of gamesmanship."  Ex A at 12:12.  He directed the parties to

Sophia Parra
June 13, 2018
Page 2

submit briefing detailing the sequence of events, and stated that the potential outcome of that briefing might include a finding of civil contempt or a reversal of his delegation order.  Ex A at 13:8-10.

After that hearing, Fitbit's counsel advised Ms. McLellan's counsel that there had been a "misunderstanding" and that—in direct contradiction to its words and actions—it did not intend to conclude the arbitration.   *See* Exhibit B.  Ms. McLellan's counsel explained in a responsive letter that Fitbit's alleged "misunderstanding" was demonstrably false and that further proceedings in arbitration would be inappropriate until Judge Donato rules on the matters that are currently being briefed and which may result in the invalidation of the delegation clause, among other things.  *See* Exhibit C.

We now understand that Fitbit has nevertheless tendered its filing fees.  For the reasons outlined above, however, Ms. McLellan submits that it would be premature to proceed until Judge Donato decides that Ms. McLellan is still obligated to pursue her claims and arbitrability defenses in arbitration.  If Judge Donato again directs Ms. McLellan to arbitration, she is prepared to proceed at that time.

Very truly yours,

Jonathan D. Selbin

CC:   William L. Stern
       Erin M. Bosman
       Kai S. Bartolomeo
       Julie Y. Park
       Robert H. Klonoff
       Kevin R. Budner
       Andrea Clisura

1573282.1