1   WILLIAM L. STERN (CA SBN 96105)
    WStern@mofo.com
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California  94105-2482
    Telephone:    415.268.7000
4   Facsimile:    415.268.7522

5   ERIN M. BOSMAN (CA SBN 204987)
    EBosman@mofo.com
6   JULIE Y. PARK (CA SBN 259929)
    JuliePark@mofo.com
7   KAI BARTOLOMEO (CA SBN 264033)
    KBartolomeo@mofo.com
8   MORRISON & FOERSTER LLP
    12531 High Bluff Drive
9   San Diego, California  92130-2040
    Telephone:    858.720.5100
10  Facsimile:    858.720.5125

11  Attorneys for Defendant
    FITBIT, INC.

12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15 KATE MCLELLAN, TERESA BLACK, DAVID URBAN, ROB DUNN, RACHEL SAITO, TODD RUBINSTEIN, RHONDA CALLAN, JAMES SCHORR, and BRUCE MORGAN, Individually and on Behalf of All Others Similarly Situated, | Case No. 16-cv-00036-JD |
| | **DECLARATION OF WILLIAM L. STERN IN SUPPORT OF DEFENDANT FITBIT, INC.'S RESPONSE TO PLAINTIFFS' STATEMENT ON THE STATUS OF ARBITRATION PROCEEDINGS** |
| 18          Plaintiffs, | |
| 19     v. | Date:  N/A |
| | Time:  N/A |
| 20 FITBIT, INC., | Ctrm:  11, 19th Floor |
| 21          Defendant. | The Honorable James Donato |
| 22 | Date Action Filed:     May 8, 2015 |
| 23 JUDITH LANDERS, LISA MARIE BURKE, and JOHN MOLENSTRA, Individually and on Behalf of All Others Similarly Situated, | Case No. 16-cv-00777-JD |
| 25          Plaintiffs, | |
| 26     v. | |
| 27 FITBIT, INC., | |
| 28          Defendant. | |

STERN DECL. ISO FITBIT'S RESPONSE RE: ARBITRATION ISSUES
Case Nos. 16-cv-00036-JD; 16-cv-00777-JD
sd-721030

1          I, William L. Stern, hereby declare as follows:

2          1.     I am an attorney admitted to practice law in the courts of the State of California

3   and am a member of the Bar of this Court.  I am a Senior Counsel at Morrison & Foerster LLP,

4   counsel of record for Defendant Fitbit, Inc. ("Fitbit") in the above captioned action.  I submit this

5   Declaration in Support of Fitbit's Response to Plaintiffs' Statement on the Status of Arbitration

6   Proceedings.  I have personal knowledge of the facts set forth herein, and if called as a witness, I

7   could and would testify competently thereto.

8          2.     Plaintiff Kate McLellan filed her complaint in this action on January 5, 2016.

9   Between approximately August 2016 and November 2017, Fitbit moved to compel arbitration as

10  to Ms. McLellan and eleven of her co-Plaintiffs who, like Ms. McLellan, agreed to Fitbit's Terms

11  of Service ("TOS") and declined to opt out of the TOS's arbitration provision.  Fitbit also asked

12  the Court to stay or dismiss the claims of the lone opt-out Plaintiff, Rob Dunn.

13         3.     On October 11, 2017, the Court granted Fitbit's motion to compel arbitration as to

14  Ms. McLellan and the eleven other non-opt-outs.  (Dkt. No. 114.)  The twelve (total) non-opt-out

15  Plaintiffs, the Court found, agreed to have questions of arbitrability—the scope and enforceability

16  of the arbitration agreement—decided by an arbitrator.  Plaintiffs moved for reconsideration on

17  November 5, 2017, but on January 24, 2018, the Court confirmed its prior order.  (Dkt No. 126.)

18         4.     Following the Court's arbitration orders, months passed without any indication

19  that the non-opt-out Plaintiffs intended to initiate arbitration to address their arbitrability

20  challenges.  Meanwhile, as detailed in a November 17, 2017 contested Joint Case Management

21  Statement (Dkt. No. 117), Plaintiffs took the position that Mr. Dunn was able to represent the

22  *entire* class, including those class members who would otherwise be required to arbitrate their

23  claims.  Mr. Dunn's Second Amended Consolidated Master Class Action Complaint ("SAC"),

24  filed February 20, 2018, confirmed Plaintiffs' position.  In it, Mr. Dunn continued to plead claims

25  on behalf of a class of purchasers (including Ms. McLellan) who agreed to arbitrate their claims.

26  It appeared to me that Plaintiffs were using delay of the arbitration as a tactic in furtherance of a

27  strategy to avoid arbitration altogether.  The other tactic, it seemed to me, was to have on file a

28  SAC that would allow Mr. Dunn to proceed on behalf of all putative class members, which would

STERN DECL. ISO FITBIT'S RESPONSE RE: ARBITRATION ISSUES
Case Nos. 16-cv-00036-JD; 16-cv-00777-JD
sd-721030

1

1  render the Court's arbitration ruling inconsequential.  By this strategy, the Court's arbitration

2  orders wouldn't matter so long as the same claims remained in court.

3       5.     On April 3, 2018, I received an email from Kevin R. Budner, Esq. of Lieff

4  Cabraser Heimann & Bernstein LLP, counsel for the named Plaintiffs in this action, enclosing a

5  Demand for Arbitration and accompanying exhibits ("Demand") on behalf of Claimant Kate

6  McLellan.  According to Mr. Budner, the Demand had been submitted to the AAA that same day.

7  No other Plaintiff ordered to arbitration in the Court's October 11, 2017 and January 24, 2018

8  orders tendered an arbitration demand at that time or any time thereafter.  Ms. McLellan's

9  arbitration demand was, and still is, the only demand Fitbit or its counsel received on behalf of

10  any of the named Plaintiffs in this action.  A true and correct copy of Mr. Budner's email, with

11  Ms. McLellan's AAA demand form, is attached hereto as **Exhibit 1**.  For the sake of efficiency,

12  the exhibits to the demand are not included herein.

13       6.     On April 10, 2018, Mr. Dunn filed his opposition to Fitbit's previously filed

14  motion to strike Mr. Dunn's overbroad class allegations in the SAC.

15       7.     On April 25, 2018, I received a letter from the AAA acknowledging receipt of

16  Ms. McLellan's demand for arbitration and setting forth the parties' fee schedule.  A true and

17  correct copy of the AAA's April 25, 2018 letter is attached hereto as **Exhibit 2**.

18       8.     A true and correct copy of the AAA's Consumer Arbitration Rules, downloaded

19  from the AAA's website[1] on June 28, 2018, is attached hereto as **Exhibit 3**.  Rules 39 and 54,

20  discussed in Fitbit's statement, are bracketed for ease of review.  The AAA's Consumer

21  Arbitration Rules replaced the AAA's Supplementary Procedures for Consumer-Related

22  Disputes, which are expressly incorporated in Fitbit's TOS.  Pursuant to Consumer Arbitration

23  Rule R-1(a)(2), parties are deemed to have made the superseding Consumer Arbitration Rules a

24  part of their arbitration agreement where, as here, they "have specified that the Supplementary

25  Procedures for Consumer-Related Disputes shall apply, which have been amended and renamed

26  the Consumer Arbitration Rules."

27      [1] https://www.adr.org/sites/default/files/Consumer%20Rules.pdf.

28

1    9.    I reviewed Ms. McLellan's April 3, 2018 arbitration demand and considered it in

2  conjunction with the provision in Fitbit's TOS committing to attempt to resolve disputes

3  informally when possible.  I also tried to reconcile Ms. McLellan's individual arbitration claim

4  with the class claims that Mr. Dunn sought to pursue in court on her behalf and concluded, from

5  the face of the demand, that Ms. McLellan was seeking monetary compensation for her

6  "individual" claim.  As the AAA's April 25, 2018 letter stated, Fitbit's filing fees and

7  compensation deposit came to $4,200.

8    10.    In my judgment, nothing in AAA rules or the TOS precluded Fitbit from offering

9  to settle Ms. McLellan's claim.

10    11.    On May 3, 2018, my office transmitted two letters to Ms. McLellan's counsel, one

11  directed to counsel and one directed to Ms. McLellan.  The letters conveyed Fitbit's offer to

12  resolve Ms. McLellan's claim.  The offer, in my view, was in keeping with Fitbit's commitment

13  to informal resolution and provided full relief that exceeded what Ms. McLellan requested.  True

14  and correct copies of the two letters my office sent to Ms. McLellan's counsel on May 3, 2018 are

15  attached hereto as **Exhibits 4 and 5**, respectively.[2]

16    12.    On May 10, 2018, I received an email from Mr. Budner acknowledging receipt of

17  Fitbit's letters and requesting a telephone conference to discuss them.  A true and correct copy of

18  Mr. Budner's May 10, 2018 email is attached hereto as **Exhibit 6**.

19    13.    On May 14, 2018, the parties held a telephone conference to discuss Fitbit's offer

20  to resolve Ms. McLellan's claim.  I, along with my colleague, Kai S. Bartolomeo, an associate at

21  Morrison & Foerster LLP, participated in the conference on behalf of Fitbit.  Mr. Budner,

22  Jonathan Selbin, Esq., and Max Blaisdell of Lieff Cabraser Heimann & Bernstein LLP

23  participated on behalf of Ms. McLellan.  During the call, the parties stated their respective

24  positions.  Mr. Budner asked whether it is Fitbit's position that Ms. McLellan is obligated to

25  accept Fitbit's offer to resolve her claims.  I responded that it was not Fitbit's position that

26

      [2] Exhibit 5 is dated May 4, 2018.  However, it was sent to Ms. McLellan's counsel on
27  May 3, 2018.

28

STERN DECL. ISO FITBIT'S RESPONSE RE: ARBITRATION ISSUES
Case Nos. 16-cv-00036-JD; 16-cv-00777-JD
sd-721030

3

1    Ms. McLellan was required to accept Fitbit's offer.  Rather, she was free to accept or not accept.

2    However, I noted that Fitbit felt that its offer represented all, and more, of the monetary relief that

3    Ms. McLellan could hope to recover in arbitration.  Mr. Budner stated that Fitbit's offer was too

4    low, and that it left certain issues unresolved, including issues relating to Fitbit's delegation

5    provision, the appropriate ratio for punitive damages, her desire to be in court, and her desire for

6    public injunctive relief.  Plaintiffs also took the position that Ms. McLellan's class claims were

7    still viable in arbitration, even though she agreed to a class action waiver.  I informed

8    Ms. McLellan's counsel that we intended to inform the AAA of Fitbit's offer and Ms. McLellan's

9    response, that Fitbit regarded the matter as concluded, and that we would await further instruction

10   from the AAA on next steps.  Ms. McLellan's counsel said they intended to seek guidance from

11   the Court.

12          14.     I have no reason to dispute the accuracy of the notes Mr. Blaisdell took during the

13   May 14 call.  (*See* Dkt. No. 146-3.)  However, I do dispute Plaintiffs' characterization of my

14   comments.  By saying Fitbit regarded the matter as concluded, I did not mean to suggest that

15   Fitbit refused to participate in the AAA proceeding.  In the first place, Fitbit doesn't have the

16   power under AAA rules to unilaterally terminate the proceedings.  AAA's Consumer Rule R-54

17   sets out specific procedures for terminating an arbitration in instances of nonpayment.  It requires

18   a request for relief, a chance for the party opposing the request to respond, and a decision by the

19   arbitrator.  The Consumer Rules provide that "a party shall never be precluded from defending a

20   claim or counterclaim."  The arbitrator may terminate only after first suspending the proceedings

21   if full payments have not been made.  Further Consumer Rule R-39 states that an arbitration

22   proceeding shall nevertheless advance in the event a party is absent.  None of the aforementioned

23   steps ever happened, and we never requested that AAA suspend the proceedings.  In the second

24   place, I simply meant to convey that Fitbit made an offer that it believed exceeded a "best-case

25   scenario" award in arbitration, and, because there was nothing more that arbitration could offer

26   her, Fitbit "regarded" the matter as "concluded," pending further guidance from AAA.  But, as I

27   said, she was free to decline Fitbit's offer.  In such unprecedented circumstances—these are, to

28   my knowledge, matters of first impression—I did not know how the AAA would respond or how

STERN DECL. ISO FITBIT'S RESPONSE RE: ARBITRATION ISSUES
Case Nos. 16-cv-00036-JD; 16-cv-00777-JD
sd-721030

4

1    it would direct the parties to proceed.  However, as I stated, Fitbit fully intended to present the

2    issue to the AAA and await word on next steps.  And so it did.

3        15.    Plaintiffs also claim that I said "we never plan on getting to scope and

4    enforceability."  Plaintiffs misinterpret my statement.  We did not plan to address arbitrability

5    *until* further word from the AAA.  Read in the broader context of Mr. Dunn's SAC, Fitbit needed

6    to understand the scope of Ms. McLellan's claims, individual or not.  The parties received that

7    guidance from the Court, rather than the AAA, at the May 31, 2018 hearing, and, in response,

8    Fitbit acted promptly to move the AAA proceedings along.

9        16.    Having stated their respective positions on the May 14 call, the parties were at an

10   impasse.

11       17.    Plaintiffs' counsel relayed Ms. McLellan's written rejection of Fitbit's offer later

12   that day.  A true and correct copy of Plaintiffs' counsel's May 14, 2018 letter is attached hereto as

13   **Exhibit 7**.

14       18.    On May 16, 2018, I wrote to the AAA to report on status and offered to speak with

15   the AAA to discuss any questions.  A true and correct copy of my May 16, 2018 letter to the

16   AAA is attached hereto as **Exhibit 8**.  For the sake of efficiency, the attachments to my letter—

17   Fitbit's May 3, 2018 letters offering to resolve Ms. McLellan's claim (Exhibits 4 and 5 hereto)

18   and Ms. McLellan's response (Exhibit 7 hereto)— are not included herein.

19       19.    In sum, neither Fitbit nor its counsel precluded Ms. McLellan from enforcing any

20   rights.  Fitbit did not terminate the arbitration and lacks the power to do so.  The parties met and

21   conferred.  As with any meet-and-confer, the parties stated their positions.  Plaintiffs decided to

22   take the matter up with the Court, which Fitbit regarded as a perfectly reasonable and ordinary

23   response where, at the conclusion of a meet-and-confer, the parties reach an impasse, as they did

24   here.

25       20.    On May 29, 2018, Mr. Dunn filed a "sur-reply" in connection with Fitbit's motion

26   to strike his class claims.  (Dkt. No. 139.)

27       21.    On May 31, 2018, Fitbit's motions to strike and to dismiss Plaintiffs' claims came

28   on for hearing.  I attended the hearing on behalf of Fitbit, along with Mr. Bartolomeo and

STERN DECL. ISO FITBIT'S RESPONSE RE: ARBITRATION ISSUES
Case Nos. 16-cv-00036-JD; 16-cv-00777-JD
sd-721030

5

1    Morrison & Foerster LLP partner Erin M. Bosman.  Fitbit's Associate General Counsel, Gloria

2    Lee, was also in attendance but did not make a formal appearance.  During the hearing, the parties

3    addressed Ms. McLellan's arbitration demand.

4          22.    Throughout their Statement, Plaintiffs accuse me of stating at the May 31 hearing

5    that "'no rational litigant' would arbitrate" Ms. McLellan's claims individually.  Plaintiffs

6    misinterpret my words.  It is clear from the context in each instance that I was not speaking about

7    Ms. McLellan.  Rather, I was referring to Fitbit specifically and defendants generally.  My point

8    was that in this case it didn't make sense to pay the fees required to arbitrate Ms. McLellan's

9    claim if she was demanding less than what those fees would amount to and would entertain an

10   offer to resolve her claims.  And because Fitbit felt it had offered more than Ms. McLellan's best-

11   case award at arbitration, it considered the matter as concluded pending further guidance from

12   AAA or the Court.  Further, in light of Mr. Dunn's contradictory position, Fitbit felt that settling

13   Ms. McLellan's monetary demands was the most rational strategy to determine the scope of her

14   claims.

15         23.    Plaintiffs seize upon one instance in which my words were unfortunately

16   ambiguous.  I referred to a letter in which "[w]e told AAA that, in our view, a rational litigant

17   wouldn't litigate $162 claim where the filing fee, itself, is $750."  But even that statement is not

18   ambiguous in context.  Looking at what "we told AAA," which is Fitbit's May 16, 2018 letter

19   (Exhibit 8), clears up the apparent ambiguity.  "Litigant" in that letter clearly refers to Fitbit, not

20   Ms. McLellan.  My point was that a rational litigant in Fitbit's shoes—i.e., one that had already

21   litigated vigorously for two years and was faced with an opt-out Plaintiff who believed he could

22   represent every putative class member in federal court—would first attempt to resolve

23   Ms. McLellan's "individual" demand informally after balancing the total value of her claim

24   against the cost of further litigation.  Ms. McLellan, like any other claimant, would be free to

25   accept or decline that offer.

26         24.    Fitbit and its counsel take seriously the Court's strong admonishments regarding

27   what it perceived as gamesmanship and noncompliance with the Court's arbitration orders.  Fitbit

28   took immediate steps to dispel any gamesmanship concerns and to ensure that its actions were not

STERN DECL. ISO FITBIT'S RESPONSE RE: ARBITRATION ISSUES
Case Nos. 16-cv-00036-JD; 16-cv-00777-JD
sd-721030

6

1   misconstrued as an attempt at unilateral termination of Ms. McLellan's arbitration proceeding.

2   On June 1, 2018, the day after the hearing, Fitbit paid its administrative and arbitrator fees

3   ($4,200).  That same day, I wrote to Ms. McLellan's attorneys and apologized for the

4   misunderstanding:  "I apologize if there was a misunderstanding, but it was never Fitbit's intent

5   to preclude Ms. McLellan (or any Fitbit customer) of their right to proceed in arbitration."  And

6   that is still true today.  A true and correct copy of Fitbit's letter enclosing a check for full payment

7   of the AAA filing fees and arbitrator compensation deposit is attached hereto as **Exhibit 9**.  A

8   true and correct copy of my June 1, 2018 letter to Ms. McLellan's counsel is attached hereto as

9   **Exhibit 10**.

10          25.      Mr. Selbin responded to my June 1, 2018 letter on June 4, 2018.  A true and

11   correct copy of Mr. Selbin's June 4, 2018 letter is attached hereto as **Exhibit 11**.

12          26.      On June 7, 2018, Fitbit made a further payment to AAA to reimburse

13   Ms. McLellan's filing fee, pursuant to the arbitration provision in the TOS.  A true and correct

14   copy of my June 7, 2018 letter to the AAA enclosing this further payment is attached hereto as

15   **Exhibit 12**.  I understand that the AAA has since confirmed receipt of this payment and applied it

16   to the case.

17          27.      On June 11, 2018, I, along with all counsel, received a letter from Sophia Parra,

18   AAA's Manager of ADR Services.  The letter confirmed that "the filing requirements have been

19   met" and the case has been "assigned to me for administration."  It also established Fitbit's

20   deadline to answer Ms. McLellan's demand and discussed the process for conflict checks and

21   arbitrator selection.  A true and correct copy of Ms. Parra's June 11, 2018 letter is attached hereto

22   as **Exhibit 13**.

23          28.      However, on June 13, 2018, Ms. McLellan's counsel wrote to AAA to request that

24   the matter be stayed pending resolution of the current proceedings before the Court.  A true and

25   correct copy of Mr. Selbin's June 13, 2018 letter to the AAA is attached hereto as **Exhibit 14**.

26   For the sake of efficiency, the exhibits to Mr. Selbin's letter are not included herein.

27

28

1    29.    The AAA stayed proceedings that same day.  A true and correct copy of

2  Ms. Parra's June 13, 2018 email to the parties is attached hereto as **Exhibit 15**.  For the sake of

3  efficiency, the attachments to Ms. Parra's email are not included herein.

4

5    I declare under penalty of perjury under the laws of the United States that the foregoing is

6  true and correct.  Executed this 28th day of June, 2018, in San Francisco, California.

7

8                                        /s/ William L. Stern
                                         William L. Stern

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28