Elizabeth J. Cabraser (CA SBN 083151)
ecabraser@lchb.com
Kelly M. Dermody (CA SBN 171716)
kdermody@lchb.com
Kevin R. Budner (CA SBN 287271)
kbudner@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Jonathan D. Selbin (CA SBN 170222)
jselbin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Robert Klonoff (*pro hac vice*)
klonoff@usa.net
ROBERT H. KLONOFF, LLC
2425 SW 76th Ave.
Portland, OR 97225
Telephone: (503) 291-1570

Rosemary M. Rivas (CA SBN 209147)
rrivas@zlk.com
Adam C. McCall (CA SBN 302130)
amccall@zlk.com
LEVI & KORSINSKY LLP
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (866) 367-6510

Andrea Clisura (*pro hac vice*)
aclisura@zlk.com
Courtney E. Maccarone (*pro hac vice*)
cmaccarone@zlk.com
LEVI & KORSINSKY LLP
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Plaintiffs, individually and on behalf of all others similarly situated*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| KATE MCLELLAN, TERESA BLACK, DAVID URBAN, ROB DUNN, RACHEL SAITO, TODD RUBINSTEIN, RHONDA CALLAN, JAMES SCHORR, BRUCE MORGAN, and AMBER JONES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br> FITBIT, INC., <br> Defendant. | Case Nos. 16-cv-00036-JD; 16-cv-00777-JD <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF STATEMENT ON THE STATUS OF ARBITRATION PROCEEDINGS** <br><br> Date: TBD <br> Time: TBD <br> Ctrm: 11, 19th Floor <br><br> The Honorable James Donato |
| JUDITH LANDERS, LISA MARIE BURKE, and JOHN MOLENSTRA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br> FITBIT, INC., <br> Defendant. | |

Plaintiffs submit this reply brief in response to Fitbit, Inc.'s Response to Plaintiffs' Statement on the Status of Arbitration Proceedings.

At the last hearing, this Court expressed "grave[] concern[]" that Fitbit was trying to "shut down people's claims through games." May 31, 2018, Hr'g Tr. 13:22-14:5. Remarkably, in its submission, Fitbit cops to just that: it has been playing a "game of chess." Dkt. 148 at 1. But as Justice Frankfurter long ago admonished, "[l]itigation is the pursuit of practical ends, not a game of chess." *City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941).

For approximately two years Plaintiff Kate McLellan pressed her right to seek a very practical end: to hold Fitbit accountable—to herself and all those similarly-situated—for fraudulently marketing its PurePulse™ heart rate trackers. She did so first in court, and then, at Fitbit's insistence and upon this Court's orders, in arbitration before the AAA. But Fitbit, we now know, was merely playing games. It urged this Court to send all issues, including the threshold question of arbitrability, to arbitration because it knew that its customers' low-value individual claims were "not one[s] that any rational litigant would litigate." May 31, 2018, Hr'g Tr. 15:6-7. Yet, when Ms. McLellan insisted on arbitrating arbitrability, Fitbit acted to close the proceeding before it could even begin. It did so to deprive her (and those like her) of any forum in which that claim could be heard.

In its latest submission, Fitbit attempts to re-write the record so as to avoid any consequences for its gamesmanship. But that effort is contrary to plain facts, and makes no logical sense. Fitbit must be held accountable.

**I.    Fitbit Clearly Intended to Conclude the Arbitration.**

Fitbit argues that the "entire chronology" of this litigation created "significant ambiguity regarding the scope and intent of [Ms. McLellan's arbitration] demand" and somehow demonstrates that "Fitbit never intended to terminate Ms. McLellan's arbitration proceeding unilaterally." Dkt. 148 at 3. According to Fitbit, Ms. McLellan's arbitration demand was unclear because opt-out Plaintiff Rob Dunn took the "seemingly contradictory position" that he could represent a proposed class consisting of unnamed class members who had not opted out of arbitration. This is a red herring.

Contrary to Fitbit's assertions, Mr. Dunn's position was neither new nor unsupported. Almost two years ago, in their brief on the "Application of *Brennan v. Opus Bank* and 'Next Steps,'" Plaintiffs argued that Mr. Dunn could "represent the entire class, even if certain absent class members would otherwise be required to arbitrate their claims," and cited case law in support of that position. Dkt. 60 at 13-14. And while the Court ultimately granted Fitbit's motion to enforce the delegation clause as to the non-opt-out Plaintiffs, it did not stay Mr. Dunn's claims or reject his views on the appropriate "next steps" until the May 31 hearing. Thus, it should have come as no surprise to Fitbit that Mr. Dunn maintained the position he had taken throughout the entire litigation, while Ms. McLellan simultaneously followed the Court's direction to seek an arbitrability ruling in arbitration.

Plaintiffs' position was also made clear by their argument that Fitbit's motion to strike Mr. Dunn's class allegations was premature because the arbitrability question had been submitted to an arbitrator. Dkt. 133 at 5. In other words, Plaintiffs contended that the arbitration of arbitrability should come *first*, and that any determination about the appropriate scope of the class Mr. Dunn could represent should occur only *after* the arbitration of arbitrability had concluded.

But even if Fitbit had somehow been confused about the "scope and intent" of Ms. McLellan's arbitration demand when she filed it, any confusion was cleared up on May 14, 2018, when Plaintiffs' counsel explained to Fitbit's counsel in a telephone conference and in a follow-up letter that "Ms. McLellan intends to enforce her right" "to have an arbitrator determine . . . whether the arbitration clause and class action waiver are enforceable and/or applicable to her claims." *See* Dkt. 146 at 6-7; *id.*, Ex. A ¶¶ 3-4, Attachment 6; *id.*, Ex. D ¶¶ 3-4. In response, Fitbit told Plaintiff's counsel it "never plan[ned] on getting to scope and enforceability with the arbitrator." *Id.*, Ex. C, Attachment 1.[1] It then informed AAA it "regard[ed] the matter as concluded," failed to submit its arbitration fees, and gave absolutely no indication that it ever intended to do so. *Id.* at 7. When Plaintiffs called out Fitbit's conduct in a sur-reply, Fitbit made no effort to clarify any purported confusion or misunderstanding—because there was none.

---

[1] Notably, Fitbit's counsel does not dispute the accuracy of Plaintiffs' detailed notes of the May 14, 2018 telephone conference. *See* Dkt. 148-1 ¶ 14.

1   Fitbit's newly-minted explanation that it never sought to conclude the arbitration
2   prematurely but was simply seeking "guidance" from AAA because it believed that the actions of
3   Mr. Dunn and Ms. McLellan "were at odds with one another," Dkt. 148 at 2, 9-10, is wholly
4   unsupported by the record. Fitbit's letter to AAA did not mention any "tension between Ms.
5   McLellan's individual arbitration and Mr. Dunn's attempt to represent a class that included Ms.
6   McLellan"; it did not claim any "confusion" about what Ms. McLellan sought in arbitration (there
7   could be none, as explained above); and it certainly did not invite any "guidance" from the AAA.
8   *See* Dkt. 146, Ex. A, Attachment 7. Instead, it said simply that Ms. McLellan rejected Fitbit's
9   settlement offer and that "Fitbit regard[ed] this matter as concluded." *Id.*

10  Fitbit's response on this point, moreover, directly conflicts with what its counsel told this
11  Court at the last hearing. There, Fitbit's counsel conceded—as he had to—that Fitbit told AAA
12  that it "regard[ed] the matter as concluded," and that it had no "further communications" with
13  AAA and had not "posted [its] fee with AAA." May 31, 2018 Hr'g Tr. 11:6-8. Fitbit's counsel
14  went on to say that "*[t]his isn't irreversible*. And I can visit and will revisit with the client
15  whether we want to ***reopen*** the arbitration." *Id.* at 14:24-15:1 (second emphasis added). There
16  would be no decision to reverse and nothing to reopen if Fitbit hadn't already decided—and
17  acted—to close the arbitration. Either Fitbit's counsel misled this Court at the hearing or Fitbit is
18  doing so now in its response. Like the rest of the record, these actions unambiguously show that
19  "Fitbit has forced this case out of court, and then has unilaterally refused to arbitrate it"—at least
20  until the Court warned of "potentially grave consequences," May 31, 2018 Hr'g Tr. 13:23-14:1—
21  and evince a pattern of Fitbit's (now admitted) gamesmanship.

22  **II.   Fitbit's Counsel Conceded That Arbitration Is Irrational for *any* Rational Litigant.**

23  Fitbit attempts to reframe its counsel's concession at the May 31 hearing that "no rational
24  litigant" would arbitrate low-value claims individually, arguing that he was referring *only* to
25  Fitbit, and not to Ms. McLellan (or any other consumer). Dkt. 148 at 11-12, 19. The record
26  shows otherwise. Fitbit's counsel clearly stated that "a claim that is $162 -- an individual claim --
27  is not one that ***any*** rational litigant would litigate." May 31, 2018 Hr'g Tr. 15:5-7 (emphasis
28  added). It was a $162 claim for Ms. McLellan and a $162 claim for Fitbit, and as Fitbit's counsel

1584007.2                                -3-                    PLAINTIFFS' REPLY RE: STATEMENT
                                                                  RE STATUS OF ARBITRATION
                                                          CASE NOS. 16-CV-00036-JD, 16-CV-00777-JD

1  made clear, it would not be rational for *any* litigant—consumer *or* company—to pursue such a
2  claim in arbitration.  As set forth in Plaintiffs' Statement, Fitbit's concession shows that the
3  arbitration procedure it unilaterally imposed on consumers denies them any forum in which to
4  effectively vindicate their rights.  Dkt. 146 at 14-15.
5         But even if Fitbit's re-framing is to be credited, the implications are the same.  On this
6  point, a legal reporter hit the nail on the head:

> Here's the thing, though: Fitbit's comment about the irrationality of arbitrating small-dollar claims exposes the same truth regardless of whether the company's lawyers were talking about what makes sense for businesses or consumers. Paying $700 or $1700 to arbitrate a $162 claim isn't rational in almost any circumstance. So why would a rational company like Fitbit include a clause in its terms of service that, by the company's own description, would require the company to behave irrationally – paying hundreds of dollars in arbitration fees to resolve individual customer disputes in the forum it has unilaterally imposed on its consumers?
>
> I think we can all guess the answer. It's only rational to impose costly arbitration on your customers if you're pretty sure they're not going to call your bluff and bring a proceeding. That's the truth revealed in the Fitbit case. Its ugliness may [be] in the eye of the beholder – mandatory arbitration looks like George Clooney if you're a corporation – but that truth can't be denied.

Alison Frankel, *Fitbit in 'ugly truth' case: We meant to say arbitration is irrational for us, not consumers*, Reuters (July 3, 2018), available at https://www.reuters.com/article/legal-us-otc-fitbit/fitbit-in-ugly-truth-case-we-meant-to-say-arbitration-is-irrational-for-us-not-consumers-idUSKBN1JT2RU).  Whether arbitration is irrational for Fitbit, consumers, or both, Fitbit has now made clear that the procedure it foists on consumers is a scam.  Fitbit never intended for any arbitrations to occur; it planned simply to pay off the few "irrational" consumers who called Fitbit's bluff.  And when one of those consumers—Ms. McLellan—refused to be paid off and pressed her right to test arbitrability, Fitbit acted to unilaterally terminate the arbitration.

\* \* \*

Notwithstanding Fitbit's newly-minted attempts at explanation, the record is clear.  Engaging in a "game of chess," Fitbit unilaterally imposed an arbitration procedure that it knew no rational litigant would pursue, and then attempted to deprive Ms. McLellan of her right to challenge the arbitration clause in any forum.  Fitbit has no credible excuse and must be held to account.

Dated:  July 4, 2018    Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Jonathan D. Selbin*
      Jonathan D. Selbin

Jonathan D. Selbin (CA SBN 170222)
jselbin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Elizabeth J. Cabraser (CA SBN 083151)
ecabraser@lchb.com
Kelly M. Dermody (CA SBN 171716)
kdermody@lchb.com
Kevin R. Budner (CA SBN 287271)
kbudner@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Robert Klonoff (*pro hac vice*)
klonoff@usa.net
ROBERT H. KLONOFF, LLC
2425 SW 76th Ave.
Portland, OR 97225
Telephone:  (503) 291-1570

Rosemary M. Rivas (CA SBN 209147)
rrivas@zlk.com
Adam C. McCall (CA SBN 302130)
amccall@zlk.com
LEVI & KORSINSKY LLP
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (866) 367-6510

Andrea Clisura (*pro hac vice*)
aclisura@zlk.com
Courtney E. Maccarone (*pro hac vice*)
cmaccarone@zlk.com
LEVI & KORSINSKY LLP
30 Broad Street, 24th Floor
New York, NY 10004
Telephone:  (212) 363-7500
Facsimile:   (212) 363-7171

*Attorneys for Plaintiffs, individually and behalf of all others similarly situated*

-5-

PLAINTIFFS' REPLY RE: STATEMENT
RE STATUS OF ARBITRATION
CASE NOS. 16-CV-00036-JD, 16-CV-00777-JD

## CERTIFICATE OF SERVICE

I hereby certify that, on July 4, 2018, service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.

                                       */s/ Jonathan D. Selbin*
                                           Jonathan D. Selbin