UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATE MCLELLAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FITBIT, INC.,<br><br>Defendant. | Case No. 3:16-cv-00036-JD<br><br>**ORDER RE ARBITRATION PROCEEDINGS**<br><br>Re: Dkt. No. 146 |

When a party to an arbitration agreement is sued, it will lose the right to compel arbitration if it fails to pay the arbitrator's fees or otherwise participate in the arbitration. This order discusses the consequences for a party that starts down the path of non-participation but changes its mind.

Plaintiff Kate McLellan sued Fitbit for alleged misrepresentations about the accuracy of heart rate monitoring in its devices. Fitbit told the Court that the Terms of Service McLellan had agreed to required arbitration of her claims at the American Arbitration Association ("AAA"). Fitbit also said that McLellan's objections to the scope and enforceability of the agreement were delegated to the arbitrator for resolution. Fitbit succeeded on these arguments, but when the time to arbitrate came, it failed to pay its fees in a timely manner and told McLellan it had no intention of arbitrating her claims or the arbitrability issues. Fitbit reversed course and got the arbitration back on track after McLellan raised the matter with the Court at a hearing on another issue in the case.

Fitbit would like to treat this incident as a misunderstanding, but it is much more than that. It moved McLellan's claims out of court and then undertook a course of conduct intended to shut her out of arbitration as well. It abandoned that plan at an early stage only because McLellan was diligent in sounding the alarm, and the Court expressed its concerns in plain terms at the hearing.

Fitbit's conduct has multiplied the proceedings in this case for no good reason and at the expense of plaintiffs' and the Court's resources. It has also bolstered the perception that arbitration is where consumer lawsuits go to die. While the merits of that view can be debated, it's no surprise that many people, including judges, are skeptical about arbitration agreements in light of situations like this one. Fitbit's conduct undermines the public's confidence in getting a fair shake when arbitration is compelled.

McLellan has asked to be relieved of her arbitration agreement, and more broadly to strike down Fitbit's arbitration clause for all users. Although there is some equitable appeal in those requests, the record here does not support terminating the arbitration. Nevertheless, the Court finds that Fitbit and its counsel engaged in bad-faith tactics that warrant corrective action.

## BACKGROUND

This case began as a putative class action alleging that Fitbit misled consumers about the ability of its wristband devices to accurately monitor and track heart rates. *See McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018). Among other allegations, the complaint charged that Fitbit heavily promoted the ability of its devices to monitor heart rate, especially during intense activity, when in fact tracking was often off by a wide margin. *See* Dkt. No. 1.

Shortly after the complaint was filed, Fitbit moved to compel arbitration based on its Terms of Service incorporating AAA rules and procedures. Dkt. No. 88. Plaintiffs argued that the arbitration agreement was invalid and unenforceable. Since the AAA rules delegate to the arbitrator the authority to determine her own jurisdiction, the arbitrability of McLellan's objections became the main fight in the motion to compel arbitration. Fitbit filed 70 pages of argument in which it insisted that challenges to arbitrability were for the arbitrator to decide: "The arbitrator decides arbitrability. This is not even a close question." Dkt. No. 57 at 1; *see also* Dkt. Nos. 62, 87, 88, 94, 113, 118.

The Court accepted Fitbit's arguments and sent plaintiffs to arbitration. The focus of the order was on delegation, and under governing law, as Fitbit had argued, the Court found that "plaintiffs' challenges to the scope and enforceability of the arbitration clause" were to be resolved

by the arbitrator.  *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *5 (N.D. Cal. Oct. 11, 2017).  Plaintiff Robert Dunn remains in the federal action because he opted out of the arbitration agreement.

When the time came to arbitrate, Fitbit turned to the "dark side."  *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005).  McLellan filed a demand for arbitration on April 3, 2018, and paid her share of the fees.  Dkt. No. 146-1 at ECF 7.[1]  On May 22, 2018, McLellan advised the Court that Fitbit had not paid its AAA fees and was not following through with arbitration.  Dkt. No. 137.  This notice came up in briefing on an unrelated motion set for a hearing a few days later on May 31.  Thinking that the matter would entail just a short discussion with the parties about arbitration scheduling and other housekeeping details, the Court took up the issue on short notice at the May 31 hearing.

Statements by Fitbit's attorney at the hearing disabused the Court of any notion that the arbitration problems were mere misunderstandings.  Fitbit confirmed that it still had not paid its arbitration fees as of May 31.  This was intentional because, in Fitbit's view, the arbitration demand sought only a refund of the $162 McLellan paid for her wristband device.  Counsel said Fitbit had offered her substantially more to settle and that "the Court ought to understand that a claim that is $162 -- an individual claim -- is not one that any rational litigant would litigate."  Dkt. No. 143 at 15.

The Court pointed out at the hearing that Fitbit and its lawyers could not seriously contend the arbitration was only about a refund.  The main issue in the order compelling arbitration was the delegation of McLellan's objections to the enforceability of the agreement and other arbitrability questions.  The dollar value of McLellan's device and a refund were never mentioned.  The Court then directed the parties to brief the status of the arbitration proceedings.

The material facts presented in the briefs are undisputed.  As the record shows, McLellan's April 3 demand for arbitration correctly described the issues: "Consumer fraud claims regarding Fitbit's alleged deceptive marketing of its activity trackers, as set forth in the complaint filed in the

---

[1] The ECF reference is to the ECF page number on the docket entry line at the top of each filed page.

1   United States District Court, Northern District of California (Exhibit 1; class claims not pursued in
2   arbitration). Exhibits 2 and 3 reflect court orders enforcing a 'delegation clause' in the arbitration
3   provision." Dkt. No. 146-1 at ECF 7. McLellan expressly requested an arbitrator with
4   "experience evaluating consumer claims contesting the scope and enforceability of the arbitration
5   agreement." *Id.* She paid her $200 filing fee. Dkt. No. 148-2 at ECF 6.

On April 25, 2018, AAA sent a letter to counsel for Fitbit and McLellan confirming receipt of the arbitration demand. *Id.* at ECF 5. AAA advised the parties that the arbitration would proceed under its Consumer Arbitration Rules and that Fitbit needed to pay its share of the fees by May 9, 2018. *Id.* at ECF 6.

On May 3, 2018, Fitbit wrote to McLellan's lawyers that it had "elected to pay the claim set forth in the demand" and tendered $2,814.75, a figure Fitbit came up with based on various additions to the $162 purchase price. *Id.* at ECF 53-54. The letter made no mention of the arbitrability disputes delegated to AAA by the Court's order, and it closed with the statement, "We consider the arbitration demand of Ms. McLellan resolved." *Id.* at ECF 54. On May 4, 2018, Fitbit addressed a similar letter directly to McLellan, again with the statement that "Fitbit regards this matter as closed." *Id.* at ECF 57-58.

On May 14, 2018, counsel for McLellan and Fitbit spoke on the phone. The conversation was not recorded, but a paralegal working for McLellan's counsel took real-time notes, and Fitbit does not contest their accuracy. Dkt. No. 148-1 at 4. During the call, McLellan's counsel said that she was not inclined to accept the settlement offer because "[t]here are threshold issues she'd like the arbitrator to decide." Dkt. No. 146-3 at ECF 5. Fitbit's counsel responded that Fitbit had "offered her everything and there is nothing more she could get from AAA. We'll enclose the letters and say we regard it as concluded. We never plan on getting to scope and enforceability with the arbitrator and are not going to seeking [sic] to file briefs on those matters." *Id.* McLellan's attorney again said that McLellan wanted to arbitrate the unresolved delegation issues, and added that the Court "granted your motion to compel arbitration and now you won't let us do it." *Id.*

That same day, McLellan sent Fitbit a letter confirming that she was declining to settle and intended to "have an arbitrator determine (1) whether the arbitration clause and class action waiver are enforceable and/or applicable to her claims, and (2) whether she can bring a claim for public injunctive relief on behalf of all members of the proposed class." Dkt. No. 148-2 at ECF 63.

Despite McLellan's plain statements about her expectations for the arbitration, Fitbit wrote to AAA on May 16, 2018, that it had made a money offer to McLellan and that she had rejected it. *Id.* at ECF 66. Fitbit again focused on the "irrationality" of proceeding with the arbitration. The "filing fee alone ($750) is almost five times her total out-of-pocket claim, were she to succeed. We believe Fitbit's total offer of $2,814.75 -- which is more than 17 times what she paid -- is many times more than what she could recover if she were to proceed to arbitration and prevail." *Id.* at ECF 67. The letter was silent on delegation issues, and Fitbit did not request any guidance from AAA on how to proceed next.

The next event was the May 31 hearing. In response to the Court's inquiry about the status of the arbitration, Fitbit's lawyer glossed over the delegation issues and emphasized yet again that arbitrating McLellan's claims would be irrational:

> We haven't posted our fee with AAA. . . . That decision is not irreversible, but what I understand Ms. McLellan wants . . . . is to have the arbitrator decide the remaining two formation issues that Your Honor didn't decide. . . . So when I'm hearing notions about she's been denied a right of due process, an opportunity to be heard, let's be clear on what that right is. What she is asking us to do is go to arbitration on a claim of $162; that we have to pay $750 just to get the arbitrator, in order to have her two formation defenses decided. At least, that's the first step. As I said, we felt no rational litigant would require that. The -- nothing in the Terms of Service says we have to do what no rational litigant would do; but on the other hand, it's not irreversible. We could -- after this hearing, we could -- I will consult with my client, who's in the courtroom today. And if we decide to change that, if it's important, we can do that.

Dkt. No. 143 at 11-12.

At the hearing, the Court expressed strong concern about Fitbit's conduct. The next day, on June 1, 2018, Fitbit paid the outstanding AAA fees in full. Dkt. No. 148-2 at ECF 69. It wrote to McLellan saying that it had never intended to avoid arbitration. *Id.* at ECF 73. On June 11,

5

2018, AAA advised the parties that "the filing requirements have been met." *Id.* at ECF 82. On June 13, 2018, AAA stayed its proceedings in light of the Court's May 31 call for briefing. *Id.* at ECF 93.

**DISCUSSION**

On these undisputed facts, McLellan contends that Fitbit has lost the right to arbitrate her claims by breaching or defaulting on the arbitration agreement. She also suggests Fitbit has conceded that no rational consumer would ever arbitrate a claim, and asks the Court to find the arbitration agreement unenforceable for all of Fitbit's customers.

It is well-settled that an arbitration agreement can be avoided by "a defense that would be available to a party seeking to avoid the enforcement of any contract." *Brown*, 430 F.3d at 1010. "These contract-based challenges are governed by applicable state law," which in this case is California. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008); Dkt. No. 146-1 at ECF 12. McLellan invokes the "bedrock principle of California contract law . . . that he who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed." *Brown*, 430 F.3d at 1010 (internal modifications, quotations, and citations omitted). Whether a party is in material breach of a contractual obligation is ordinarily a question of fact. *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011).

In *Brown v. Dillard's, Inc.*, our circuit applied these principles to conclude that Dillard's, Inc. could not compel arbitration of a former employee's wrongful termination action. Plaintiff Brown properly initiated arbitration under Dillard's mandatory "Fairness in Action" arbitration program, but Dillard's did not pay its fees and ignored multiple follow-up letters from AAA, which caused AAA to terminate Brown's demand. *Brown*, 430 F.3d at 1008-09. Brown spent months trying to get Dillard's to discuss its refusal to participate in arbitration. When she finally reached a Dillard's representative, she was told that "her complaint had no merit and that Dillard's refused to arbitrate." *Id.* at 1009. On these facts, the circuit had no trouble concluding that Dillard's was in material breach of its arbitration agreement and had lost the right to compel arbitration.

Our circuit reached a similar outcome on the finding of a statutory default in *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197 (9th Cir. 2003). Under the Federal Arbitration Act ("FAA"), the courts "shall" stay a case pending arbitration provided that the "applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. "If a party defaults after an initial stay and reference to arbitration, that permits a district court to vacate the § 3 stay." *Sink*, 352 F.3d at 1201. The circuit affirmed the lifting of a stay by the district court where the defendant failed to pay fees after multiple notices and the arbitrator entered a default. *Id.* at 1199.

Other circuits have also found that a party can lose the right to compel arbitration through breach or default. The Tenth Circuit, for example, followed *Brown* and *Sink* to decline the enforcement of an arbitration agreement when AAA terminated its proceedings after sending several notices of unpaid fees. *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1289 (10th Cir. 2015).

Fitbit's change of heart after the May 31 hearing was enough to avert the application of these cases here. *Brown*, *Sink* and *Pre-Paid* found grounds to avoid a contractual obligation to arbitrate in situations where the arbitrator itself formally terminated proceedings because a party never paid its fees despite multiple notices and warnings. In this case, Fitbit got the message about the Court's concerns at the May 31 hearing and paid its AAA fees in full the next day, on June 1. As a result, AAA did not trigger the suspension and termination procedures for non-payment of fees as provided for in Rule 54 of the Consumer Arbitration Rules. AAA also sent only one letter to Fitbit, on April 25, 2018, about the unpaid fees. Dkt. No. 148-2 at ECF 6. Now that Fitbit has paid, albeit late, AAA is treating the matter as up and running. *Id.* at ECF 82.

This record distinguishes *Brown* and its companion cases, and McLellan has not shown that a slow payment of filing fees, as opposed to no payment at all, is sufficient grounds to foreclose arbitration. Such a proposition is doubtful under contract law. Aside from a special circumstance where the contract specifies that time is of the essence, a short delay in performance typically does not result in a material breach excusing the other side from its obligations. *See, e.g.*, *Adelphia Commc'ns Corp. v. Pauley Constr., Inc.*, No. A131078, 2012 WL 5936538, at *10 (Cal. Ct. App. Nov. 28, 2012); *Leiter v. Handelsman*, 125 Cal. App. 2d 243, 251 (1954)

7

(compliance within a reasonable time after due date suffices); *compare with Gold Mining & Water Co. v. Swinerton*, 23 Cal. 2d 19, 27 (1943) (failure to perform within specified time is material breach if time is of the essence). To be sure, McLellan was not required to make a "heroic" effort to save the arbitration before turning to the district court for relief. *See Cox*, 533 F.3d at 1124. But the undisputed facts show that no more than a few weeks passed between the initial fee deadline and Fitbit's actual payment, and AAA never suspended or terminated the proceedings. It is true that Fitbit's lawyer made comments about not briefing the arbitrability issues, but bluster is not breach, although it is relevant to bad faith. In these circumstances, a finding of material breach or default would be tantamount to a "defense that is only applicable to arbitration agreements," which the FAA does not permit. *Brown*, 430 F.3d at 1010.

McLellan suggests the "effective vindication" doctrine as a reason to decline arbitration, but it too does not fit well here. Effective vindication is a "judge-made exception to the FAA" that may "invalidate, on public policy grounds, arbitration agreements that operate as a prospective waiver of a party's right to pursue statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (internal quotations and citations omitted). It may apply where "filing and administrative fees attached to arbitration . . . are so high as to make access to the forum impracticable." *Id.* at 236.

The specific concern about a fee barrier is not germane here. Fitbit's Terms of Service state that "Fitbit will pay all arbitration fees for claims less than $75,000. Fitbit will not seek its attorneys' fees and costs in arbitration unless the arbitrator determines that your claim is frivolous." Dkt. No. 146-1 at ECF 12. Under those terms, Fitbit has covered McLellan's $200 filing fee. Dkt. No. 148-2 at ECF 80.

More broadly, the record as it currently stands does not support a broad judicial exception to arbitration for all of Fitbit's customers. There is no doubt that Fitbit and its lawyers undermined arbitration in this one case, but the agreement in the Terms of Service does not inherently waive a consumer's right to pursue statutory remedies. If Fitbit were to pursue similar tactics in other cases, good grounds might arise for avoiding enforcement of arbitration by reason

of the vindication doctrine. That remains to be seen, and the door is open to further consideration of the question as circumstances might warrant.

While case law does not support termination of the arbitration, Fitbit and its lawyers at Morrison & Foerster must be held to account for their bad-faith litigation tactics. The conduct that necessitated this order amounts to an abuse of the judicial process and a needless waste of the parties' and the Court's resources. To make matters worse, Fitbit has been evasive and misleading in its explanations to the Court. For example, Fitbit says it properly declined to arbitrate because only the $162 price of the device was at stake. That assertion is completely untenable in light of the October 2017 arbitration order, as McLellan correctly stated in the May 14 phone conference with Fitbit. Fitbit also says that it held up arbitration to wait for "guidance" from AAA or the Court on next steps. The record, however, is devoid of any evidence that Fitbit ever asked AAA for instructions or guidance. It certainly never sought guidance from the Court. And Fitbit's contention that it can exempt itself from arbitration whenever it "rationally" prefers to settle is entirely unfounded. Interpreting Fitbit's Terms of Service to give it sole discretion over when it will arbitrate a claim would make it unconscionable and unenforceable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

This conduct cannot go unsanctioned. Federal courts are "vested, by their very creation," with the power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotations omitted). Pursuant to those inherent powers, courts may "assess attorney's fees against counsel . . . when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (internal quotations omitted); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).

Bad faith that justifies an assessment of fees "includes a broad range of willful improper conduct," such as "delaying or disrupting the litigation" or "hampering enforcement of a court order." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (citing *Chambers*, 501 U.S. at 46). Fitbit's conduct need not violate the law to fall well within the domain of the sanctionable. *See In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986). As the record has shown, Fitbit delayed and

impeded the arbitration on frivolous grounds, and was evasive and misleading after the matter was brought to the Court's attention. This is an "exceptional" case where for "dominating reasons of justice" a compensatory award of attorney's fees is appropriate. *Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 756 (9th Cir. 1986) (internal quotations and citations omitted).

## CONCLUSION

McLellan may submit within **14 days** a request for reasonable attorney's fees and costs incurred because of the misconduct at issue. *Goodyear*, 137 S. Ct. at 1186. Fitbit may respond **14 days** after that. An award of fees and costs is intended to compensate McLellan and not to impose a penalty on Fitbit.

To help ensure that Fitbit does not again impose "pointless and wasteful burden[s] on the supposedly summary and speedy procedures prescribed by the Arbitration Act," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 27 (1983), it is ordered to file a copy of this decision in all cases where it seeks to compel arbitration under its Terms of Service with consumers. This duty is imposed for a period of one year from the date of this order.

For the arbitration of McLellan's claims, the parties are directed to file a joint status statement every 90 days until the proceedings are completed. Further evidence of untoward delay or obstruction of the arbitration by Fitbit may result in restoration of McLellan's claims to the Court for resolution.

For all of the sanctions imposed by this order, the parties and their lawyers are advised that failure to comply may result in additional sanctions, including monetary sanctions, evidentiary or issue preclusion, and attorney discipline, and contempt proceedings.

**IT IS SO ORDERED.**

Dated: July 24, 2018

JAMES DONATO
United States District Judge